GREGORY F. AHRENS
BRETT A. SCHATZ
WOOD, HERRON & EVANS, L.L.P.
Attorneys at Law
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio  45202-2917
Telephone:  (513) 241-2324
Facsimile:  (513) 421-7269
gahrens@whepatent.com
bschatz@whepatent.com

Attorneys for Defendants
     Escort Inc.
     Beltronics USA, Inc.

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HOYT A. FLEMING, | ) | Case No. 1:12-cv-00066-BLW |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS', ESCORT INC. AND** |
| | ) | **BELTRONICS USA, INC., OPPOSITION** |
| vs. | ) | **TO PLAINTIFF'S MOTION FOR ENTRY** |
| | ) | **OF A PROTECTIVE ORDER AND** |
| ESCORT INC, BELTRONICS USA, | ) | **SANCTIONS (DKT NO. 81)** |
| INC., ET AL., | ) | |
| | ) | **FILED UNDER SEAL** |
| Defendants. | ) | |
| | ) | |

## I.       INTRODUCTION

In this case, the Parties agreed that they would produce information under the same terms that they had agreed to, and that were approved by the Court, in *Fleming v. Escort*, CV-09-105-BLW ("*Fleming I*"). In fact, it was at *Fleming's* insistence that the Parties use the same protective order in this case as in *Fleming I*, and Escort agreed. And, the Parties have been relying upon this agreement and have produced thousands of confidential business documents accordingly. Escort therefore requests that the Court enter a protective order reflecting the terms the Parties have already agreed to and have already relied upon. Fleming, on the other hand, would have this Court enter a protective order with terms that are dramatically different than what the Parties already agreed to and have already relied upon.

Fleming's Motion is also laden with incorrect representations and unjustified attacks on counsel for Escort. First, Fleming is demonstrably incorrect when he represents to the Court that Escort has produced no confidential information pertinent to a "prosecution bar." In fact, this Court has already determined that Escort has produced information that "is obviously highly sensitive trade secret material," and that a "Protective Order assures the Court that Escort's secrets will be protected." (*Fleming I*, Dkt. No. 78, at 4-5). Patent prosecution bars are standard provisions in such situations, and the Court previously determined that a prosecution bar was a necessary part of the Court's entry of a protective order in *Fleming I*. In fact, Fleming represented to the Court that he was not going to participate in any prosecution matters when he sought, and successfully persuaded the Court to grant him, access to Escort's trade secrets. And, contrary to Fleming's suggestion, Escort's highly sensitive trade secret material has not been

disclosed publicly.  Therefore, a prosecution bar is warranted, just as the Court determined in *Fleming I.*

Second, Fleming's suggestion that he should be able to review Escort's financial information is in direct conflict with this Court's prior orders.  This Court previously determined that "[a]s Fleming's counsel conceded at the informal conference, [Fleming] does not have the same critical need to see financial documents…".  Thus, the Court previously determined that Fleming failed to demonstrate need for access to Escort's financial information.  Fleming does nothing more than rehash the same arguments that were previously rejected by the Court.

Third, Fleming relies upon a multitude of inaccuracies surrounding the Parties' negotiation of a protective order to suggest that Escort and its counsel should be sanctioned.  Put simply, Fleming proposed that the Parties operate under the same protective order from *Fleming I.*  Escort agreed, and when Fleming later tried to change those terms, Escort consistently and repeatedly informed Fleming that Escort's position was that the terms of the protective order in *Fleming I* should apply *as had already been agreed, relied upon by the Parties, and insisted by Fleming*.  Given this history, it becomes clear that Escort did not undertake any of the improper conduct suggested by Fleming.

## II.     BACKGROUND FACTS

### A.     At Fleming's Insistence, The Parties Agreed That The Court's Protective Court Order In *Fleming I* Should Apply In This Case, And Should Include A Prosecution Bar

Fleming's Motion is surprising given that the Parties have already agreed, *at Fleming's insistence*, that the Parties' trade secrets and confidential research and development information

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS        2

should be protected in this case by the terms of the protective order from *Fleming I*.  Specifically, *Fleming* proposed the following to Escort in connection with this case:

> Given that there is no protective order entered in the case yet, please treat these documents under the terms of the protective order in the first Fleming v. Escort case.  Otherwise, please treat any document marked 'Confidential' as 'attorneys eyes only' until we get a protective order entered in the case.

(*See* Exhibit A, August 6, 2012 Dowler Email).

Fleming made this proposal more than one year ago, and necessarily did so after concluding that he would at least temporarily accept the terms of the protective order in *Fleming I*, and would not suffer any hardship thereby.  And, at no time did Fleming demand or even suggest that different terms were necessary.  Escort agreed, and the Parties have been relying upon and operating under these terms for protection of the Parties' trade secrets and confidential research and development information.  (*See* Exhibit B, May 30, 2013 Schatz Letter).

Against this backdrop, Fleming's suggestion that counsel for Escort refused to participate in good faith in the process of negotiating the terms of a protective order is demonstrably incorrect.  The Parties had already agreed to those terms, and did so without any complaint from Fleming.  After that time, and after Escort had relied upon the Parties' agreement and produced thousands of documents to Fleming, Fleming demanded that the terms of their agreement be changed.

Specifically, after the Parties agreed to operate under the terms of the protective order in *Fleming I*, Fleming effectively demanded that Escort be prevented from producing any documents in a manner that would protect their confidentiality.  (*See* Exhibit C, May 31, 2013 Dowler Email).  Escort timely responded, and confirmed that Escort had produced thousands of

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS        3

documents that were highly sensitive trade secret material, and that required protection. (*See* Exhibit D, June 5, 2013 Schatz Letter). At that same time, Escort confirmed that the Parties had already agreed to and relied upon the terms of a protective order, and that those terms were the same as agreed to and ordered in *Fleming I. Id.*

Fleming, apparently upset over having agreed to the terms of a protective order, then tenaciously and repeatedly demanded that Escort agree to a different protective order by which none of Escort's documents would be produced confidentially, or that Escort propose a new protective order that was different than what the Parties had already agreed upon. (*See* Exhibit E, June 5, 2013 Dowler Email). In view of the fact that the Parties had already agreed to a protective order, and relied upon it, and that Fleming had first provided a draft protective order in *Fleming I*, it could not have come as a surprise to him when Escort asked him to comply with their earlier agreement or propose a new protective order. (*See* Exhibit F, June 10, 2013 Schatz Email).

At that point, Fleming declared that he was no longer asking for a draft from Escort, and that he was going to raise the issue with the Court (apparently to seek relief from the protective order to which he earlier agreed). (*See* Exhibit G, August 12, 2013). Escort timely responded yet again, and once again explained that the Parties had already agreed to and relied upon a protective order. (*See* Exhibit H, August 14, Schatz Letter).

From this historical perspective, it is clear that (1) the Parties agreed to the terms of a protective order, (2) the Parties relied upon those terms and produced a vast number of documents based on their agreement, (3) Fleming changed his mind, and (4) Escort timely

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS        4

responded to all correspondence on this topic, and consistently maintained its position that the Parties had already agreed upon the terms of a protective order and should continue to operate accordingly.  Thus, Escort and its counsel did not delay and did not fail to respond.  Rather, Fleming is simply upset with his decision to insist that the Parties use the same protective order in this case as in *Fleming I,* and that Escort's position is that those terms should not be changed.[1]

### B.     Fleming's Track Record Of Gathering Information To Obtain Patents

Fleming touts the fact that he has a history of gathering information regarding companies and their products, and then filing patent applications, or seeking reissue patents, based on that information.  Indeed, Fleming has admitted that the patents that are asserted in this case were filed as a result of information gained in this manner.  (*See* Exhibit I, 6/18/12 Trial Tr. at 225-226; *see also* Exhibit J, Fleming Dep., at 43:5-1).  Fleming also admits that he has relied upon Escort's information in order to seek patent protection that would cover Escort's products, and in order to sue Escort.  (*See* Exhibit I, 6/18/12 Trial Tr. at 225-226).  These facts cannot be disputed and are another reason warranting a prosecution bar.

### C.     The Court Previously Determined That Escort Has Produced Highly Sensitive Trade Secret Information And Relied Upon A Prosecution Bar In Its Previous Rulings

In connection with a previous discovery dispute between the Parties, the Court evaluated

---

[1] As noted below in connection with Escort's response to Fleming's Motion for Sanctions, Fleming also spends nearly four pages discussing purported conduct of Escort from *Fleming I.*  (*See* Dkt. No. 81, at 9-12).  This purported conduct has nothing to do with Fleming's (incorrect) argument that Escort did not negotiate the terms of a protective order in good faith, and is yet another improper attempt by Fleming to cast a shadow on counsel for Escort.  Notably, these four pages have been cut and pasted from a motion he filed in *Fleming I.*  (*See Fleming I,* Dkt. No. 338, at 2-5).  Escort already responded and demonstrated that these arguments are also faulty.  (*See Fleming I,* Dkt. No. 350).  Fleming's arguments have no bearing here and are improper, duplicative arguments.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS          5

Escort's source code and evidence demonstrating that it is highly sensitive trade secret information. Specifically, Fleming sought access to source code for Escort's products, and Escort demonstrated in response that the source code is highly confidential and proprietary, and constitutes trade secret assets of enormous commercial value to Escort.  (*See Fleming I*, Dkt. No. 74, at 6, Ex. C).  After evaluating Escort's source code, and how valuable it is to Escort's business, the Court held that Escort's source code "is obviously highly sensitive trade secret material," and that a "Protective Order assures the Court that Escort's secrets will be protected." (*See Fleming I*, at Dkt. No. 78, 4-5). Thus, Escort has already made a particularized showing of compelling reasons to keep its source code confidential, and the Court has Ordered that its confidentiality is to be preserved.

Fleming then asked to personally view Escort's trade secrets, including Escort's source code. In order to convince the Court that he should be allowed access to Escort's source code, he represented to the Court that he "is no longer engaged in any patenting activity at the U.S. Patent Office concerning radar detectors." (*Fleming I*, Dkt. No. 70, at 2).  In other words, Fleming self-imposed a prosecution bar for the purpose of gaining access to Escort's trade secrets, and now that he has that information he wants to be relieved of the very thing that allowed him access in the first place.

Fleming's representations to the Court were the basis for the Court's decision to allow Fleming access to Escort's source code:

> The Court's analysis begins with the undisputed fact that the material Fleming wants to view is sensitive proprietary and trade secret material.  Originally, Fleming agreed to screen himself from viewing confidential material because he was pursuing a radar detector patent application in the United States Patent Office.  But Fleming has now represented that <u>all his patent prosecution activities came to a complete and permanent close on July 20, 2010.</u>  See Fleming Declaration Dkt. 70-2, at ¶ 8.  Due to

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS          6

this change of events, Fleming seeks to modify the Protective Order so that he is no longer subject to that ban [from Escort's trade secret material].

                     \*     \*     \*

Whatever risk existed when Fleming was pursuing a radar detection patent is now over since it is undisputed that Fleming has closed that pursuit. Moreover, after viewing the confidential information, Fleming cannot 'prepare, prosecute, supervise, or assist the prosecution of any patent application claiming radar detector technology within two (2) years from the disclosure of such technical information…' See Protective Order Dkt. 35.

(*Fleming I*, Dkt. No. 82, at 2-3) (emphasis added).

Put simply, Fleming now wants to avoid a prosecution bar, which is the precise thing that convinced the Court to allow him access to what is "undisputed…sensitive proprietary and trade secret material." Moreover, Fleming could be violating the Court's Protective Order in *Fleming I* if he fails to conform to a prosecution bar.

### D. Escort Agreed To Fleming's Proposal, Which Included A Prosecution Bar, And Relied Upon It When It Produced Trade Secret And Confidential Business Information

In reliance upon Fleming's earlier representations that "all his patent prosecution activities came to a complete and permanent close on July 20, 2010," and that Fleming proposed a protective order that included a prosecution bar, Escort has produced a vast amount of information in this case, including what they Court has already determined to be "undisputed…sensitive proprietary and trade secret material."

Contrary to Fleming's unsupported insinuation, Escort has never publicly disclosed its source code. With respect to the documents that are the subject of Fleming's Motion to Un-Seal (Dkt. No. 72), *i.e.*, ESC 17363 – ESC 17364, that source code has never been publicly disclosed and is kept strictly confidential with a few personnel at Escort. (*See* Exhibit K, Declaration of

Tim Coomer, at ¶¶ 4, 9).  Moreover, Fleming is simply wrong when he represents that ESC

17363 – ESC 17364 is the same source code that was produced during discovery in *Fleming I*.

*Id.* at ¶ 2.  Further, when Escort produced ESC 17363 – ESC 17364 (and all of its other source

code) to Fleming in connection with this lawsuit, Escort made sure it was designated "Attorneys'

Eyes Only" and subject to an agreement of confidentiality.  (*See* Exhibit A, August 6, 2012

Dowler Email; *see also* Exhibits B and D, May 30, 2013 and June 5, 2013 Schatz Letters).

Escort also notes that it has never publicly disclosed any of its source code, and made

sure that it was not disclosed during the trial of *Fleming I*.  For example, while Fleming correctly

notes that certain exhibits were admitted at trial, that was done prior to trial.  Moreover, none of

those complete versions of those Trial Exhibits were presented to a witness.  At most, all

Fleming could point to (he failed to do so in his Motion) is a few isolated references to extremely

limited portions of certain lines of code that were mentioned at trial.  Those were isolated

instances that did not include any discussion regarding a vast majority of the source code.  And,

Escort made sure that none of its competitors were present during those portions of the trial.

Even more fundamentally though, Escort relied upon Fleming's earlier representations that "all

his patent prosecution activities came to a complete and permanent close on July 20, 2010," and

that there was a prosecution bar in place when Escort presented its case at trial in *Fleming I*.

III.   **ARGUMENT**

   A.   **The Court Should Maintain The Prosecution Bar Insisted Upon By
        Fleming And Agreed To And Relied Upon By The Parties**

Given the history of the dispute between the Parties, including that the Parties in *Fleming

I* agreed to a Protective Order that included a prosecution bar, the Court approved that Protective

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS        8

Order, the Court relied upon a prosecution bar when allowing Fleming access to Escort's trade secrets, and the Parties agreed to and relied upon the same terms in this case, it is Fleming who seeks to amend those terms by eliminating a prosecution bar.  Therefore, Fleming "must show how the Protective Order would prejudice [his] case; in other words, to demonstrate the requisite 'good cause' to modify the order, [Fleming] must demonstrate actual prejudice."  *55 Brake, LLC v. Audi of America*, Case No. CV-08-177-BLW, 2011 U.S. Dist. LEXIS 75688, at * 6 (D. Idaho July 13, 2011) (Judge Winmill).

Entirely absent from Fleming's Motion is any mention of any prejudice that could possibly result from maintaining the agreed-upon prosecution bar.  Of course, there can be no prejudice because Fleming represented under oath that <u>all his patent prosecution activities came to a complete and permanent close</u>.  (*Fleming I*, Dkt. No. 82, at 2-3).  In such circumstances, where a party seeks to lift a prosecution bar from a protective order and fails to demonstrate good cause, its motion should be denied.  *55 Brake*, 2011 U.S. Dist. LEXIS 75688, at * 6.  In addition, given Fleming's history of prosecuting patent applications based on business information he has obtained, and the reexamination proceedings currently pending against his patents, Fleming obviously considered interaction with the United States Patent Office as a possibility when he insisted, in this case, on terms of a protective order that included a prosecution bar.  This in an additional reason why Fleming's Motion should be denied.  *Id.* at * 6-7 (denying motion to amend protective order and motion to lift prosecution bar).

As noted above, as a result of his access to Escort's "undisputed…sensitive proprietary and trade secret material" in *Fleming I*, Fleming is barred from "prosecution of any patent

application claiming radar detector technology within two (2) years from the disclosure of such

technical information." (*Fleming I*, Dkt. No. 82, at 2-3).  There is nothing that would justify

relieving Fleming of his obligations under the Court's previous orders.  In fact, because Fleming

insisted upon a protective order with a prosecution bar, and the Parties agreed to and relied upon

a protective order with a prosecution bar in connection with document production, a prosecution

bar is warranted.

   In circumstances involving individuals who prosecute patent applications, the Federal

Circuit and district courts, including this Court, have noted the following:

> [I]t is very difficult for the human mind to compartmentalize and
> selectively suppress information once learned, no matter how well-intentioned the
> effort may be to do so.

*In re Deutsch Bank*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *55 Brake*, 2011 U.S. Dist. LEXIS

75688, at * 6 (Judge Winmill).

   A number of other district courts have followed this reasoning as it relates to individuals

who are involved in patent prosecution, and at the same time seek confidential business

information during the course of litigation.  By way of example only, upon reviewing several

cases from across the country on this issue, the U.S. District Court for the Northern District of

Illinois noted as follows:

> We would expect patent prosecution counsel to be intimately involved in deciding
> how to shape the original application, or how later to revise it. It is that intimate
> involvement in the shaping and revision of patent applications that provides for
> the risk that patent counsel inadvertently will use information obtained from a
> party in patent litigation in shaping the application. As the *Motorola* court quite
> properly observed, this is not a criticism of the ethics of any particular attorneys or
> of the bar in general. Rather, it is a recognition of the limits of human beings to

completely compartmentalize the multiple sources from which they obtain information.

*Cummins-Allison Corp. v. Glory LTD*, Case No. 02-c-7008, 2003 U.S. Dist. LEXIS 23653, at * 23 (N.D. Ill. Dec. 31, 2003); *see also Mikohn Gaming Corp. v. Acres Gaming, Inc.*, Case No. CV-S-97-1383, 1998 U.S. Dist. 22251, at * 11 (D. Nev. April 15, 1998) (denying access and noting a special risk associated with individuals who prosecute patent applications that are not merely related to the patents-in-suit, but are the very core of the suit, and labeling such conduct as "intensely competitive").[2]

It follows that if an individual is substantially engaged in prosecution, this is a factor weighing strongly in favor of a prosecution bar. *In re Deutsch Bank*, 605 F.3d at 1379. Here, it is not disputed that Fleming was personally and primarily responsible for the prosecution of all of his patents involved in this case. It is also not disputed that he is personally involved in any reexamination proceedings. To that end, Fleming does much more than report office actions or file paperwork, or merely provide oversight. To the contrary, he is substantially engaged with prosecution, and personally makes strategic decisions on the type and scope of patent protection that might be available or worth pursuing for his alleged inventions. In fact, he admits and touts the fact that he personally reviews information regarding companies and their products, and then makes his own decisions regarding filing patent applications, or seeking reissue patents, based on

---

[2] Fleming attempts to cast blame on Escort by asserting that "Escort's purported concern about Mr. Fleming's misuse of its alleged confidential information is an unfortunate and misplaced attack on Mr. Fleming's character." (Dkt. No. 81, at 2). Fleming is wrong: "As the *Motorola* court quite properly observed, this is not a criticism of the ethics of any particular attorneys or of the bar in general. Rather, it is a recognition of the limits of human beings to completely compartmentalize the multiple sources from which they obtain information." *Cummins-Allison*, 2003 U.S. Dist. LEXIS 23653, at * 23. Escort is not attacking Fleming's character by asking him to comply with the terms of the protective order that he insisted upon.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS          11

that information.  The patents that are asserted in this case were filed as a result of information

gained in this manner.  (*See* Exhibit I, 6/18/12 Trial Tr. at 225-226; *see also* Exhibit J, Fleming

Dep., at 43:5-1).  These facts all weigh in favor of a prosecution bar because they demonstrate

that Fleming is a competitive decision maker.  *In re Deutsch Bank*, 605 F.3d at 1379.

> Further support for a prosecution bar is the already - decided fact that Escort's business

information "is obviously highly sensitive trade secret material," and that a "Protective Order

assures the Court that Escort's secrets will be protected."  (*See Fleming I*, at Dkt. No. 78, 4-5).

The source code that governs the operation of Escort's products, including the source code

designated ESC 17363 – ESC 17364, is an incredibly valuable aspect of Escort's products and

business.  (*See* Exhibit K, Declaration of Tim Coomer, at ¶¶ 2-3).  The source code provides

detailed information about how Escort's products operate, and how they operate more efficiently

and more successfully than the products of Escort's competitors.  *Id.*  According to the Federal

Circuit, this sensitive trade secret information poses a heightened risk of inadvertent disclosure

by those involved in prosecution activities. *In re Deutsch Bank*, 605 F.3d at 1381.

> The risk that Fleming will use information gained from Escort is no less real due to the

fact that he does not manufacture or sell radar detectors.  What is undeniable is that he uses

information he is able to gather to his advantage, and to the disadvantage of those he sues for

patent infringement.

**B.  The Court Previously Determined That Fleming Should Not Have
Access To Escort's Sensitive and Trade Secret Financial Information**

"The law…gives district courts broad latitude to grant protective orders to prevent

disclosure of materials for many types of information, including, but not limited to, trade secrets

or other confidential research, development, or commercial information." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).  This includes Escort's highly confidential financial information, vast amounts of which have been produced in reliance upon the terms of protection insisted by Fleming. For example, Escort has produced highly confidential cost, labor, sales, revenue, profit, and margin information for the products accused of infringement and other related products.  Escort has literally produced thousands of documents disclosing its highly confidential financial information.  This information is kept strictly confidential within Escort.

Based on these principles, the Court already rejected the same request Fleming makes here.  Specifically, the Court rejected Fleming's request to review Escort's financial information:

> [Escort's] argument picks up more strength when applied to financial documents.  Here Fleming has no special expertise to bring to bear.  As Fleming's counsel conceded at the informal conference, his client does not have the same critical need to see financial documents as he had to see infringement and prior art related documents.

(*Fleming I*, Dkt. No. 82, at 3).

Contrary to Fleming's unsupported insinuation, Escort has never publicly disclosed the vast amount of financial information it has produced.  For example, while Fleming correctly notes that certain financial information was discussed at the *Fleming I* trial, at most, all Fleming could point to (he failed to do so in his Motion) is a few isolated references to extremely limited portions of financial information.  Those were isolated instances that did not include any discussion regarding a vast majority of the financial information that has been produced.

Moreover, because Escort has shown that Fleming is attempting to access its trade secrets, and that disclosure will result in harm and prejudice,

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS        13

the burden shifts to [Fleming] to show that a disclosure is 'relevant and necessary' to the presentation of [his] case.

*Hartley Pen. Co. v. U.S. Dist. Court*, 287 F.2d 324, 328 (9th Cir. 1961).  In particular, Fleming must explain the specifics behind the documents he seeks to review, and the reasons why his review is "necessary":

> Yet, these arguments are not supported by specifics, and none of them explains why defendant must have access to plaintiff's proprietary information regarding the design, manufacture, etc., of plaintiff's satellite television programming system and its anti-piracy efforts to demonstrate that defendant's actions were not willful, defendant did not manufacture the devices for an unlawful purpose, and defendant had no knowledge of plaintiff's technological measures. Thus, defendant has not shown either its need for, or the relevance under Rule 26(b)(1) of, the requested information, and its motion to compel must be denied.

*DirectTV, Inc. v. Trone*, Case No. CV-02-5194-PA, 2002 U.S. Dist. LEXIS 25739, at * 15-16 (C.D. Cal. Aug. 14, 2002); *citing Hartley Pen. Co. v. U.S. Dist. Court*, 287 F.2d 324, 331 (9th Cir. 1961); *see also Pioneer Hi-Bred Int'l Inc. v. Holden's Found. Seeds, Inc.*, 105 F.R.D. 76, 82-82 (N.D. Ind. 1985) (general, conclusory assertions are insufficient to establish need for or relevance of trade secrets).

Fleming cannot satisfy his burden for several independent reasons.  First, as noted above, Fleming's counsel has not identified a single document that Fleming needs to review.  It necessarily follows that Fleming did not make an attempt to demonstrate why he has a need to review Escort's trade secrets.  Because Fleming has done nothing more make general, conclusory comments about some theoretical need to access documents, his Motion should be denied. *DirectTV*, 2002 U.S. Dist. LEXIS 25739, at * 15-16 (C.D. Cal. Aug. 14, 2002); *citing Hartley Pen.*, 287 F.2d at 331.

Second, Fleming has retained a financial expert to address the issues that may arise in this case.  Given that Fleming has an expert witness to review and provide opinions about the trade secret information that Escort has produced, and Fleming does not bring any specialized knowledge, Fleming has no need for access.  *UCC Ueshima Coffee Co. v. Tully's Coffee Corp.*, Case No. C06-1604RSL, 2007 U.S. Dist. LEXIS 98157, at * 5-6 (W.D. Wash. Mar. 5, 2007) ("The Court finds defendant has not established that restricting the list's disclosure to defendants' attorneys and experts will prejudice his case.  Even if its lawyers are not experts in the foreign coffee industry, defendant may hire outside experts to analyze the information.  For these reasons, the Court concludes that the risk of harm and prejudice to plaintiff outweighs defendant's need to use the information in preparing its case.").

It is important to note that Fleming did not offer any evidence supporting why his financial expert is not fully qualified to handle the issues arising from Escort's financial information.  For example, he did not offer any specific evidence as to why his particular education or other background renders him qualified to review such evidence, much less why his education or other background renders him more qualified that his expert.  In the same respect, Fleming's financial expert did not provide any evidence that he requires Fleming's assistance.  In short, there is nothing to suggest that Fleming is unable to fully prepare his case through his experts.

**C.    The Third Clause Fleming Seeks To Exclude From The Previously Agreed-Upon Protective Order Actually Protects His Interests**

Fleming's request that the Parties' agreement on the terms of a protective order be amended so that he may have more access is it odds with his request to remove from that

agreement terms that actually provide him with information.  That is, Fleming proposes to eliminate the following provision, which would provide him with the information he needs for fairly present his case, and then claims he does not have information sufficient to fairly present his case:

> This section shall not be construed to prevent counsel for either party from advising their client generally regarding the amount of damages likely to be at issue in the action, or the volume of sales likely to be impacted by this action, notwithstanding the fact that such advice may be based upon counsel's analysis of financial or business information designated ATTORNEYS' EYES ONLY.  In no event, however, shall counsel disclose the actual contents of any document labeled ATTORNEYS' EYES ONLY in rendering such advice, either directly or indirectly.

(*See Fleming I*, Dkt. No. 35, at ¶ 7.3(e)).

This provision, which the Parties agreed would apply in this case, provides Fleming with access to general advice regarding the amount of damages likely to be at issue in the action.  It also provides Fleming with general advice regarding the volume of sales likely to be impacted by this action.  And, Fleming may receive such information even if it is confidential trade secrets and is therefore based on information designated ATTORNEYS' EYES ONLY.  This provides Fleming with all the information he needs, and he has made no showing otherwise.

## IV.    FLEMING'S MOTION FOR SANCTIONS SHOULD BE DENIED

In a transparent and improper attempt to cast a shadow on Escort and its counsel, Fleming opens his argument in support of sanctions by regurgitating nearly identically four pages of argument from a brief he filed in *Fleming I*.  (*Compare* Dkt. No. 81, at 9-12 and *Fleming I*, Dkt. No. 338, at 2-5.)  These four pages of argument have nothing to do with Fleming's (incorrect)

argument that Escort did not negotiate the terms of a protective order in good faith.  In addition, Escort already responded and demonstrated (in *Fleming I*) that these arguments are faulty.  (*See Fleming I*, Dkt. No. 350).  Fleming's arguments have no bearing here and are improper, duplicative arguments.

It is also incredulous that Fleming would seek sanctions under these circumstances: (1) Fleming insisted on the terms of a protective order, (2) Escort agreed to the terms insisted upon by Fleming, (3) the Parties relied upon those terms and produced a vast number of documents based on their agreement, (4) Fleming changed his mind, and (5) Escort responded to all correspondence on this topic, and consistently maintained its position that the Parties had already agreed upon the terms of a protective order and should continue to operate accordingly.

In addition, it is simply incorrect for Fleming to argue that counsel for Escort delayed or evaded the topic of a protective order.  Specifically, after the Parties agreed to operate under the terms of the protective order in *Fleming I*, Fleming demanded no documents be designated confidential based on the false argument that all of Escort's business information was publicly disclosed at trial.  (*See* Exhibit C, May 31, 2013 Dowler Email).  Escort timely responded, and confirmed that Escort had produced thousands of documents that were highly sensitive trade secret material, and that required protection.  (*See* Exhibit D, June 5, 2013 Schatz Letter).  Escort also explained why Fleming was wrong – there was a vast amount of information produced by Escort that was not presented at trial.  *Id.*[3]  At that same time, Escort confirmed that the Parties

---

[3] It is facially absurd for Fleming to argue that all of the tens of thousands of documents produced by Escort during the litigation was publicly disclosed at the *Fleming I* trial.

had already agreed and relied upon the terms of a protective order, and that those terms were the same as agreed to and ordered in *Fleming I. Id.* Escort also responded to every correspondence from Fleming's counsel on these issues.

Fleming's Motion is unwarranted, and appears to stem from being upset over his earlier insistence that the Parties produce documents pursuant to the terms of the Protective Order entered in *Fleming I.* Despite the fact that *he* wanted the terms of the Parties' agreement to change, Fleming demanded that Escort (1) agree to a different protective order by which none of Escort's documents would be produced confidentially or (2) propose a new protective order that was different than what the Parties had already agreed upon. (*See* Exhibit E, June 5, 2013 Dowler Email). In view of the fact that the Parties had already agreed to a protective order, and relied upon it, and that Fleming had first provided a draft protective order in *Fleming I*, it could not have come as a surprise to him when Escort asked him to comply with their agreement or propose a new protective order. (*See* Exhibit F, June 10, 2013 Schatz Email). Escort timely responded to that effect. *Id.* In response, Fleming again demanded Escort provide a draft protective order, and Escort timely responded by maintaining its position that the Parties had already agreed to the terms of a protective order. (*See* Exhibit G, August 12, 2013 Dowler Email; *see also* Exhibit H, August 14, 2013 Schatz Letter).

From this historical perspective, it is clear that Fleming is simply upset with the fact that he previously insisted that the Parties use the same protective order in this case as in *Fleming I.* Escort and its counsel did not delay and did not fail to respond. Rather, Escort and its counsel did respond, and did so timely. Escort also consistently maintained its position that the Parties

had agreed to the terms of a protective order, and those terms were insisted upon by Fleming.

Fleming then became more upset because Escort (timely) notified him that Escort wanted to

maintain the terms of the protective order that the Parties had already agreed to and relied upon

in the production of confidential business information.

## V.        CONCLUSION

For these reasons, Escort respectfully requests that the Court adopt the Protective Order

utilized in *Fleming I* for this case, as has already been agreed to by the Parties, and deny

Fleming's Motion for Sanctions.

DATED this 18th day of October, 2013.

WOOD, HERRON & EVANS, L.L.P.

By:____/s/_____
          Brett A. Schatz, of the firm
          Attorneys for Defendants Escort Inc.
          And Beltronics USA, Inc.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS        19

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 18th day of October, 2013, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means with a sealed filing notification, as more fully reflected on the Notice of Electronic Filing.  I further certify that on such date I served an unsealed version of the foregoing via email on the following:

|  |  |
|---|---|
| Michael S. Dowler<br>Park, Vaughn, Fleming & Dowler LLP | mike@parklegal.com |
| Bradlee R. Frazer<br>Hawley Troxell Ennis & Hawley, LLP | bfrazer@hawleytroxell.com |
| Steven F. Schossberger<br>Hawley Troxell Ennis & Hawley, LLP | sschossberger@hawleytroxell.com |
| Brian P. Muething<br>Keating Muething & Klekamp PLL | bmuething@kmklaw.com |
| Rachael A. Rowe<br>Keating Muething & Klekamp PLL | rrowe@kmklaw.com |
| Brian J. Yoder<br>Keating Muething & Klekamp PLL | byoder@kmklaw.com |
| Keely E. Duke<br>Duke Scanlan & Hall, PLLC | ked@dukescanlan.com |

           /s/
        Brett A. Schatz

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR ENTRY OF
A PROTECTIVE ORDER AND SANCTIONS    20