IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>                    Plaintiff,<br><br>        v.<br><br>ESCORT, INC., et al.,<br><br>                    Defendants. | Case No.  1:12-CV-066-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it numerous motions.  The Court heard oral argument on the motion for preliminary injunction, and all the motions are fully briefed and at issue.  The Court will resolve each motion below.

## ANALYSIS

### Motion for Sanctions and to Terminate & Motion for Order to Show Cause

In an earlier-filed action (*Fleming I*), plaintiff Fleming claimed that defendant Escort manufactured and sold radar detectors that infringed Fleming's '038 and '653 patents.  A jury found that Escort had infringed a number of claims of both patents, and awarded Fleming $750,000.  *See Special Verdict Form (Dkt. No. 304)* in *Fleming v. Escort CV-09-105-BLW*.  Specifically the jury found that the following Escort products were infringing: GX65, Passport 9500i, Passport 9500ix, and Passport IQ.  The Court found that Escort's financial position was precarious and so directed Escort to place the $750,000 sum in escrow.  Escort complied with that Order.  Just recently, the Court filed

**Memorandum Decision & Order – page 1**

an Amended Judgment in that case, increasing the award to $1,454,404.56, based on

post-verdict findings that Fleming was entitled to pre- and post-judgment interest, and

including an award of attorney fees based in part on the vexatious conduct of Escort's

counsel.  The motion at issue charges the same counsel with new instances of vexatious

litigation.

Fleming filed this action (*Fleming II)* against Escort and twenty of its distributors

– referred to as the Customer Defendants – claiming that the radar detectors they sold

infringed Fleming's '038 and '653 patents, along with a third patent that was not litigated

in the earlier case, the '905 patent. This suit is referred to as a "customer suit" because it

is an action against the manufacturer's customers (as well as the manufacturer) who are

distributing the allegedly infringing devices. The Customer Defendants include

companies such as Amazon, Best Buy, and Sears. The earlier-filed action is known as a

manufacturer's suit – that is, it is an action solely against the manufacturer (Escort) of the

infringing devices.

Escort moved to dismiss Counts One and Two (the Counts alleging infringement

of the '038 and '653 patents) on the ground that the jury verdict in *Fleming I* had

essentially given Escort a paid-up license covering both past and future use of the

patented technology. The Court agreed with Escort as to the four devices actually

litigated in that case, specifically the GX65, Passport 9500i, Passport 9500ix, and

Passport iQ devices.  But the Court refused to extend its ruling to devices not litigated in

*Fleming I.*

**Memorandum Decision & Order – page 2**

Escort responded to that ruling by filing another motion to dismiss, alleging that one of its allegedly infringing devices – the Pro 500, named in both Count One and Count Two -- was identical to the GX65 and is entitled to be dismissed from these two Counts just as the GX65 was dismissed.  Fleming countered by pointing to differences between the two devices.  The Court found issues of fact that precluded dismissal.

The litigation over that motion is the source of much of the dispute that now occupies the Court.  To demonstrate that the Pro 500 was not the same as the GX65, Fleming compared the source code of the GX65 with the source code that ran the Pro 500 and found thousands of differences.

Fleming had identified the source code that ran the Pro 500 from, among other material, (1) Escort's First Amended Answer and Counterclaim and (2) Escort's Non-Infringement Contentions.  Escort's First Amended Answer and Counterclaim, filed on March 27, 2013, cites specific lines of source code that incorporate a technique known as "grid matching" that allegedly differentiated Escort's products from Fleming's patented inventions.  *See First Amended Answer and Counterclaim (Dkt. No. 35)* at pp. 15-18. About a month later – on May 6, 2013 – Escort filed its Non-Infringement Contentions, citing the source code contained in its discovery production at ESC17363 as providing a defense for all its accused devices.  On that same day, Escort physically produced ESC17363 to Fleming.  The source code lines cited by Escort in its Non-Infringement Contentions were identical to the source code lines cited by Escort as a defense to infringement in its First Amended Answer and Counterclaim.

**Memorandum Decision & Order – page 3**

The Court's Local Rules required Escort to produce the source code that operated the accused devices.  Escort produced ESC17363 as part of its obligation under this Local Rule.  The source code contained in ESC17363 was the only new source code produced by Escort, and the Pro 500 was the only product not previously litigated.  Escort's counsel told Fleming's counsel that all the source code had been produced.  The entire manner in which Escort produced ESC17363, and the allegations it made concerning ESC17363, constituted a representation that ESC17363 was the source code operating the Pro 500.

Yet the source code in ESC17363 was much different from the source code that ran the GX65.  Indeed, the differences were so profound and obvious that Escort's argument to the contrary appeared frivolous at best and fraudulent at worst.  Accordingly, Fleming filed a motion a motion for an order to show cause compelling Escort and its declarant – John Kuhn – to appear and explain why they should not be sanctioned for, in Fleming's words, a fraud upon the Court. That motion was filed on September 5, 2013.

Just over two weeks later – on September 23, 2013 – Escort filed its reply brief to its motion to dismiss and attached another declaration from Kuhn.  He represented – for the first time – that the source code at ESC17363 was not used to run the Pro 500.  *See Kuhn Declaration (Dkt. No. 80-1) at* ¶¶ 11-12.  Escort argued that Fleming's rush to charge Escort with fraud, and his failure to do discovery, led him to mistakenly assume that ESC17363 operated the Pro 500.  Escort argued further that because the Pro 500 was not operated by ESC17363, the differences in source codes were irrelevant.

Escort's argument raised more questions than it answered.  If ESC17363 did not operate the Pro 500, why did Escort disclose it under the Court's Local Rules requiring the production of all source code used to operate the accused devices?  Why had Escort represented in its non-infringement contentions that the source code contained in ESC17363 provided a defense for all its accused devices?  What source code did operate the Pro 500? Why had that source code not been disclosed?  If some undisclosed source code operated the Pro 500, why had Escort's counsel earlier represented that he had produced all the source code to Fleming?

Fleming sought answers to these questions from Escort.  Escort responded on September 30, 2013, by providing the source code that actually ran the Pro 500.  *See Letter (Dkt. No. 143-28).*  A few months later, Escort produced Product Compatibility Logs showing the source code used by each of the accused devices.  That Log demonstrated that ESC17363 was never used in any commercial version of Escort's products.

This absence of ESC17363 in the Log directly contradict Escort's earlier representation – discussed above – that the source code in ESC17363 provided a complete defense to Fleming's infringement allegations as to all of Escort's accused devices.  Fleming argues that because Escort never used ESC17363 in any of its commercially sold devices – as Escort's Product Compatibility Log represents – then Escort must have fabricated ESC17363, and Escort's earlier representations about it being a complete defense were false.

**Memorandum Decision & Order – page 5**

What motive would Escort have to produce false source code?  Fleming points out that the source code in ESC17363 uses a "grid matching technique" that Fleming had expressly disclaimed during the reexamination process before the Patent Office.  This is why Escort claimed earlier that ESC17363 provided a complete defense – the source code contained in ESC17363 used a "grid matching technique" that Fleming had represented was not used in his patented inventions.

Fleming finds suspicious the timing of the development and production of ESC17363.  The source code was developed on March 21, 2013, and just six days later was cited as a defense to infringement in Escort's First Amended Answer and Counterclaim.[1]  About a month later – on May 6, 2013 – Escort filed its Non-Infringement Contentions, citing ESC17363 as providing a defense for all its accused devices, and physically produced the source code to Fleming.  Fleming finds this timing suspicious because it comes just before a long-scheduled Ninth Circuit settlement conference set on June 11, 2013.   Fleming charges that

> defendants and their counsel orchestrated the preparation and advancement of their false evidence not only to manufacture defenses they did not legitimately have, but to intimidate and otherwise convince Mr. Fleming (before and after the settlement conference) that his case lacked merit.

---

[1] Among other filings, Escort's First Amended Answer and Counterclaim, filed on March 27, 2013, alleges that specific lines of source code – the identical lines contained in Escort's Non-Infringement Chart citing ESC17363 – incorporate the grid matching technique and provide a defense to infringement charges.  *See First Amended Answer and Counterclaim (Dkt. No. )* at pp. 15-18.

*See Fleming Brief (Dkt. No. 144)* at p. 13.  Escort denies the charge that it fabricated

ESC17363, and explains that while ESC17363 was never used in any commercially sold

products, it was used in a test version of the 9500ix product.  Steven Orr, who develops

products for Escort, stated that

> I personally loaded [ESC17363] into Escort's 9500ix product and evaluated
> the functionality of the 9500ix product with [ESC17363], as part of the
> process by which lines of source code are vetted for implementation into
> Escort's commercially sold products."

*See Orr Declaration (Dkt. No. 150-3)* at ¶ 16.  Escort argues that this actual use of

ESC17363 rebuts Fleming's charge that the source code was fabricated to cook up a

defense.  But if ESC17363's use was confined to testing – as Orr's statement above

indicates – then why did Escort earlier cite ESC17363 as a defense to infringement on all

their accused devices?

   To that question, Orr responds that in March 2013 – when Escort originally made

its representations that ESC17363 provided a defense – he felt "these lines of source code

were complete" and "would be further implemented into Escort's commercially sold

products."  *See Orr Declaration (Dkt. No. 150-3)* at ¶ 16.  In other words, Escort

produced ESC17363 on the expectation that it would later be used in the accused devices.

This explanation came more than a year after Escort had produced ESC17363 and alleged

that it provided a defense for all of Escort's accused devices.[2]  Orr explains further that

ESC17363 went through a number of modifications as Escort continued to test it into

---

[2] Escort originally provided ESC17363 (and made the allegations about it constituting a complete defense to infringement) on May 6, 2013.  Orr's declaration was filed on May 27, 2014.

November of 2013.  Although Escort says that it intended to use the modified source code to actually operate products sold commercially in January of 2014, they admit they failed to do so until about a month ago, in late August of 2014.  *See Peckman Declaration.*  Orr alleges that although ESC17363 was modified during its subsequent development, many of its lines of source code remain unchanged and continue to be used in the source code – ESC20466 – that is now used in its commercially sold products.  *See Exhibit C1 (Dkt. No. 150-3).*

 Taking Escort at its word, the following is undisputed:  (1) In March of 2013, Escort cited specific lines of source code from ESC17363 in its First Amended Answer and Counterclaim as a defense to infringement; (2) In May of 2013, Escort filed Non-Infringement Contentions – pursuant to Local Rule 3.4 that requires production of the source code operating the accused devices – citing ESC17363 as a defense to infringement and produced a physical copy of the source code to Fleming; (3) Escort's counsel represented to Fleming's counsel that all the source code had been produced; (4) Escort failed to explain in its production of ESC17363 that the source code was not being currently used in any Escort accused device being sold commercially, and that Escort only hoped to use it commercially – or some portion of it – in the future; (5) ESC17363 in its entirety has never been used in any commercially produced Escort product and was only used during tests of the 9500ix product; (6) Some lines of source code contained in ESC17363 eventually were used in commercial products by January of 2014 (and perhaps as early as November of 2013).

**Memorandum Decision & Order – page 8**

The Court will assume the truth of Escort's representations that it did not fabricate ESC17363, and that it intended to eventually use it to operate Escort's accused devices. To find otherwise would require an evidentiary hearing following discovery. While discovery may reveal fabrication – and support a renewed motion by Fleming at that time – the Court cannot now find, on the basis of this record, that Escort has fabricated the source code contained in ESC17363.

However, assuming ESC17363 was not fabricated does not resolve this motion in Escort's favor. Even with this assumption, Escort's production of ESC17363 was misleading and caused Fleming to waste considerable resources holding Escort to account.

Escort's production was misleading because it represented that ESC17363 was the current operating source code for the Pro 500 even though Escort was not using ESC17363 in the Pro 500. At the same time, Escort's counsel represented to Fleming's counsel that all the source code had been produced, when in fact that was not true. This constitutes misleading conduct by Escort's counsel.

This misleading conduct had expensive consequences. To rebut Escort's claim that the Pro 500 was the same as the GX65, Fleming was required to scour thousands of lines of source code (22,110 lines contained in 961 pages) contained in ESC17363. Escort's misleading conduct also required Fleming to file a number of motions to hold Escort to account. Moreover, the Court has been forced to spend countless hours to understand the scope of Escort's misleading conduct and its consequences. All of this could have been avoided if Escort had provided the source code that actually operated the

Pro 500 as required by Local Rule 3.4(a), instead of producing ESC17363 that Escort knew was not being used to operate any accused device.

An attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927. The Court also has the inherent power to sanction a lawyer for a "full range of litigation abuses" including for acting "vexatiously." *See Evon v. Law Offices of Sidney Mickell,* 688 F.3d 1015, 1035 (9th Cir. 2012). "Recklessness suffices for § 1927 sanctions but sanctions imposed under the district court's inherent authority require a bad faith finding." *Braunstein v. Arizona Dept. of Transp.,* 683 F.3d 1177, 1189 (9th Cir. 2012).

In this case, Escort's counsel represented that ESC17363 operated Escort's accused devices knowing that ESC17363 did not operate any accused device. This false representation was beyond reckless and was made in bad faith because Escort's counsel knew it was not true. The Court will therefore award attorney fees as sanctions under both § 1927 and the Court's inherent power. Thus, the Court will grant Fleming's motion for sanctions. Fleming asks the Court to go further and enter judgment against Escort, but the Court finds that more limited sanctions are the appropriate remedy. Fleming also seeks an order compelling Escort to show cause why they should not be sanctioned. The Court's award of attorney fees is a sufficient sanction at this stage of the proceedings. If

discovery reveals that source code was fabricated, as Fleming alleges, the Court will allow Fleming to renew its motion for an order to show cause.[3]

Despite the Court's ruling granting the motion for sanctions only in part and denying the motion for an order to show cause, Fleming filed both motions in a reasonable attempt to hold Escort to account for the misleading way it produced ESC17363. Thus, Escort's vexatious conduct caused Fleming and this Court to waste time resolving these matters. Accordingly, the Court will direct Fleming's counsel to provide a petition for the fees and costs he incurred in filing the following documents, and all the supporting documents associated with each of these documents: (1) Motion for Sanctions and to Terminate (docket no. 144) and reply brief (docket no. 151); (2) Motion for Request For Order to Show Cause (docket no. 71) and reply brief (docket no. 94) and response to request for sur-reply (docket no. 104); (3) motion for preliminary injunction (docket no. 145), and all supporting documents and reply brief (docket  no. 167); (4) motion to enforce Local Rule 3.4 and for sanctions (docket no. 107) and reply brief (docket no. 121); (5) motions to unseal documents (docket nos. 72, 95 & 117) and reply briefs (docket nos. 89, 115 & 128).[4]

---

[3] Escort has filed a motion to strike Fleming's reply brief or, in the alternative, to be allowed to file a sur-reply. Fleming does not object to the sur-reply request. Escort's seeks to strike the reply brief because it contains new arguments, but by allowing Escort to file a sur-reply, there is no need to strike Fleming's reply brief. Accordingly, the Court will deny Escort's motion to the extent it seeks to strike the brief and will allow Escort to file its sur-reply brief. That brief has already been filed and was examined by the Court.

[4] While one of these motions was rendered moot by Escort's filing of its Compatibility Chart, nevertheless Fleming was compelled to file the motion by Escort's misleading conduct.

The Court finds that these filings were directly caused by the misleading representations of Escort's counsel, and that the filings were a reasonable response to those misrepresentations.  The attorney fee award is to be paid by Escort's counsel Gregory Ahrens and Brett Schatz at the firm of Wood, Herron & Evans L.L.P.  Once Fleming's counsel submits his fee petition, the Court will determine the precise amount of fees to award.

## Motion to Compel ESI Information

Fleming seeks to compel Escort to answer questions regarding how it searched for electronically stored information.  Fleming also seeks sanctions for Escort's refusal to provide this information.

Although the allegations in this case cover events occurring more than 15 years ago, as well as events still occurring today, Escort has produced almost no e-mail in response to Fleming's 65 document requests and 12 interrogatories.  Escort argues that its emails are privileged.  But Escort has not filed a privilege log, and it is unbelievable that 15 years of emails are all privileged.

At any rate, if Escort is claiming its emails are privileged, it must have searched for and discovered specific emails in response to Fleming's requests.  Recognizing this, Fleming asked Escort three simple questions:  (1) What search terms did you use? (2) What computers or repositories did you search within? and (3) What was the time frame for your search?

When Escort refused to provide an answer to these three simple questions, Fleming was forced to file this motion to compel.  The Court will grant the motion.

**Memorandum Decision & Order – page 12**

There is no way that Fleming – and this Court – can evaluate Escort's claim that it has produced everything unless Escort answers the three questions.  This is especially true given Escort's fantastical claim that all the emails it discovered are privileged.  Escort's stonewalling is yet another example of vexatious conduct by its counsel Gregory Ahrens and Brett Schatz.

Accordingly, the Court will grant the motion to compel and require Escort to answer the three questions within 10 days.  The vexatious conduct of Gregory Ahrens and Brett Schatz warrants requiring them to pay the attorney fees of Fleming for the preparation of the motion to compel (docket no. 135) and reply brief (docket no. 141).  If the three questions are not fully and completely answered in 10 days, Fleming may file a new motion for sanctions.

## Motion for Preliminary Injunction

Fleming seeks to enjoin Escort from selling its Pro 500 and Passport Max products.  To be entitled to injunctive relief, Fleming must show each of the following: (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest.  *See Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008).  An injunction is an extraordinary remedy to be awarded only upon a clear showing that Fleming is entitled to such relief.  *Trebro Mfg., Inc. v. Firefly Equip.,* 748 F.3d 1159, 1165 (Fed. Cir. 2014).

Turning to the first requirement, Fleming argues that he is likely to succeed in proving that the Pro 500 and Passport Max infringe Claim 7 of the '038 patent.  Fleming

**Memorandum Decision & Order – page 13**

alleges that although neither product was litigated in *Fleming I,* both products infringe Claim 7 of the '038 patent in precisely the same manner as the four products found to infringe Claim 7 in *Fleming I.* Claim 7 of the '038 patent depends on Claim 1. In *Fleming I,* Fleming proved that Escort infringed claim 1 by showing how the source code for each accused product issues an alert when a signal is detected and the radar detector is located beyond a predetermined distance from a predetermined position, *i.e.,* a position where false signals have been previously encountered and "locked out" by the user. Fleming also proved in *Fleming I* that the accused products infringed Claim 7 because they generated an alert based on comparing the frequency of a received signal to the frequency of a stored signal. Fleming argues that both the Pro 500 and Passport Max operate in the same manner and hence infringe.

Escort responds that the Pro 500 is essentially the same product as the GX65, litigated in *Fleming I,* and that Escort therefore has a paid-up license to sell the Pro 500 because it has paid the jury verdict into escrow. The Court has held in earlier decisions that (1) Escort has a paid-up license with regard to the products litigated in *Fleming I* and (2) there are questions of fact whether the Pro 500 is the same product as the GX65. Given these two findings, the Court cannot hold at this point that Fleming has shown the sufficient likelihood of success on the issue whether the Pro 500 infringes Claim 7 of the '038 patent. The Court is not holding that it is unlikely that Fleming will succeed but only that the competing positions of the parties as to the Pro 500 are presently in equipoise.

**Memorandum Decision & Order – page 14**

With regard to the Passport Max, Escort claims that the source code it uses is different from that contained in Claim 7 of the '038 patent.[5]  The Passport Max was not litigated in *Fleming I* and has only recently been added to this case.  Fleming is asking the Court to compare complex segments of source code in dispute between the parties and make a finding about the likelihood of success at a very early stage of this litigation. The scant record simply does not allow the Court to make such a finding with any level of confidence.  Hence, the Court cannot find that Fleming has carried its burden as to the Passport Max to obtain an injunction against its sale.

The parties have argued over whether Escort's financial status warrants a finding of irreparable harm.  But the Court need not address this issue because the threshold element for the injunction – some likelihood of success – is not present.

An injunction halting all sales of the two products is an extraordinary remedy under the law cited above.  Fleming has not carried his burden of proving that an injunction should issue, and his motion will therefore be denied.

**<u>Motion to Supplement Patent Invalidity Contentions</u>**

Escort moves to supplement its patent invalidity contentions on the ground that the Court has granted Fleming's motion to add Escort's Passport Max to the list of accused devices.  It is standard procedure to allow such supplementation when a new product has been added to the case and accused of infringing the patents at issue.  F*rance Telecom,*

---

[5] At oral argument, Escort argued for the first time that the Passport Max was the same as the 9500ix litigated in *Fleming I,* and hence would be protected by the paid-up license Escort received.  The Court expresses no opinion on that argument as it is not necessary to resolve at this time.

*S.A. v. Marvell Semiconductor, Inc.*, 2013 WL 1878912 at *6 (N.D. Cal. May 3, 2013) (holding that after allowing amendment to infringement contentions, opposing party may amend its invalidity contentions).  This motion will be granted.

## Motion to Clarify Memorandum Decision

Fleming seeks to clarify the Court's Memorandum Decision staying the case against the customer defendants.  Fleming asks whether the Court intended to hold that the customer defendants will be bound by the resolution of patent infringement and validity issues between Fleming and Escort.  The answer is yes.  *See Spread Spectrum Screening LLC v. Eastman Kodak Co.,* 657 F.3d 1349, 1357-58 (Fed.Cir. 2011).  The customer defendants will not be permitted to re-litigate (1) whether Escort infringed Fleming's patents, and (2) whether Fleming's patents are invalid.  Fleming seeks no clarification beyond this, and the Court will give none.  As Fleming states, he has "not sought an order binding the customer defendants to every finding in the case" and this decision should not be interpreted as such.  It applies to the two issues set forth above.[6]

## Motions to Unseal Documents

Fleming seeks to unseal three recently filed motions.  All three contain documents that Escort produced during discovery in this case and designated as 'Attorney Eyes Only.''  More specifically they contain source code labeled ESC17363-17364.  This is the source code that the Court has discussed at length above.

---

[6] Fleming also argued that if his clarification was not granted, that the stay be lifted.  Because the Court is granting that clarification, the stay will not be lifted.

Fleming argues that the source code should be released publically because it operates the Pro 500, and Escort has argued that the Pro 500 is the same as the GX65, a product whose source code was admitted into evidence during *Fleming I* and not sealed or protected from public view in any manner.  Escort, however, now claims that the source code that Fleming wants to make public – ESC17363-17364 – does not operate the Pro 500 and was not publically revealed in *Fleming I*.  It is true that the source code that was revealed in *Fleming I* – ESC 10689, 13454, 13455, 13456, 13457, and 14914 – did not include the source code Fleming now seeks to make public.  Escort argues that ESC17363-17364 has never been publically revealed and is highly sensitive.

Escort's arguments are once again a source of frustration for both Fleming and this Court.  The three motions that Fleming has filed to unseal this source code were made in reliance on the misleading representations of Escort, discussed above, that this source code operated the Pro 500.  By retracting that representation, Escort has once again caused Fleming and this Court to waste its time.  Accordingly, the Court will include all three motions (and all its supporting documents) in the attorney fee sanction award.

But the fact remains that this source code has never been publically revealed.  *See Coomer Declaration (Dkt. No. 85-1)* at ¶ 3-4 (alleging that the source code has not been revealed and "provides Escort with actual economic advantages over its competitors").  While there is a presumption against confidentiality, there are compelling reasons to keep sealed a company's source code.  *Kamakana v. City of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).  This particular source code apparently ran no commercial product and was merely one iteration of a long line of source codes.  But it also appears that at least some of this

source code may have found its way into Escort's commercial products. *See Coomer Declaration (Dkt. No. 85-1)* at ¶¶ 2-10. In other words, if Escort's competitors obtained ESC17363-17364, they would have a part of the source code that is currently running Escort products and has never been publically revealed. That is sufficient to justify keeping this source code confidential. Of course, Fleming himself has access to the source code to adequately prepare his case under the Court's earlier ruling that he have access to technical information. But to make the source code available to the general public would damage Escort competitively, and so the Court will deny Fleming's motion at this time. This denial is without prejudice to Fleming's right to refile the motion if discovery throws new light on the Court's assumptions in reaching this result.

Fleming has also filed a fourth motion to unseal, seeking to unseal the source code that Escort now claims *does* operate the Pro 500, ESC 18683-18684. Fleming points out that Escort is arguing in this case that the Pro 500 source code is the same as the GX65 litigated in *Fleming I.* If that is true, the Pro 500 source code is already in the public domain because the source code that operates the GX65 was introduced into evidence in *Fleming I* without being sealed or protected in any manner by Escort.

"Unlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default." *Kamakana v. City of Honolulu,* 447 F.3d 1172, 1180 (9th Cir. 2006). If Escort is right that the two devices are operated by the same source code, Escort has no ground to object to disclosure because it failed to protect the source code in *Fleming I.* But Escort argues that some modifications have been made to the Pro 500 source code since *Fleming I,* and

so ESC 18683-18684 is slightly different from the source code admitted in *Fleming I*. But Escort is not withdrawing its argument that the two products are identical for infringement purposes.  Escort attempts to eat its cake and have it to, an impossible feat in the real world and a forbidden argument in the legal world.  The motion to unseal ESC 18683-18684 (along with the other material not objected to by Escort in docket no. 94) will be granted.[7]

**<u>Second Motion to Dismiss</u>**

Fleming seeks to dismiss a number of Escort's allegations in its affirmative defenses and counterclaims.  The Court will examine each.

Fleming challenges Escort's Third Affirmative Defense that raises an invalidity defense to all three patents.  Fleming recognizes that the '905 patent was not litigated in *Fleming I,* but argues that Escort lost its invalidity challenge in *Fleming I*  to the '038 and '653 patents and cannot relitigate those issues here.

There is no dispute that with regard to the claims actually litigated in *Fleming I* – claims 3, 5-7, and 25-28 of the '038 patent and claims 22, 24, 31-33, 38, and 41 of the '653 patent – the doctrine of claim preclusion applies to block relitigation of defenses concerning these claims.  *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co*., 719 F.3d 1367, 1371-72 (Fed.Cir.2013).  Accordingly, Escort's Third Affirmative Defense as it relates to these claims from these two patents will be dismissed.

---

[7] In a separate motion, Escort seeks to file a redacted version of a Court order.  The Court can find no reason to do so, and will deny that motion.

Fleming also seeks to dismiss invalidity defenses relating to claims not litigated in *Fleming I*. If Escort could have raised those invalidity defenses in *Fleming I* but failed to do so, they are now barred from litigating them in this action. *See Roche Palo Alto LLC v. Apotex, Inc.*, 526 F.Supp.2d 985, 997 (N.D.Cal.2007) (applying issue preclusion to earlier validity determination to prevent assertion of even un-asserted invalidity arguments). In *Applied Medical Resources Corp. v. U.S. Surgical Corp.,* 352 F.Supp.2d 1119 (C.D.Cal. 2005), a case similar to the present case, a defendant in the position of Escort tried to argue that it had retained an invalidity argument based on obviousness because the first jury only considered invalidity based on other grounds (such as best mode and public use). The court rejected the argument, applying claim preclusion and holding that "validity, in the patent context, is a single issue for purposes of collateral estoppel." *Id.* at 1126.

The analysis of these cases does not apply, however, when the claims at issue have not been subjected to an invalidity analysis in the first trial. In *Brain Life, LLC. V. Elekta Inc.,* 746 F.3d 1045, 1055 (9th Cir. 2014) – a similar case involving a second lawsuit on patents litigated in an earlier-filed lawsuit – the Circuit refused to apply claim and issue preclusion to validity challenges concerning patent claims that were not litigated in the first trial, even though validity challenges had been made concerning other claims of the same patent.

In the present case, Fleming withdrew certain claims during *Fleming I,* and Escort correspondingly withdrew its validity challenges to those claims. Thus, there was never an adjudication of the validity of the withdrawn claims in *Fleming I*. Pursuant to *Brain*

**Memorandum Decision & Order – page 20**

*Life,* Escort's invalidity challenges to the withdrawn claims in its Third Affirmative Defense cannot be dismissed under claim or issue preclusion.

In summary regarding the Third Affirmative Defense, the Court will grant only in part Fleming's motion to dismiss. The Court will grant that portion of the motion seeking to dismiss Escort's invalidity defense to the claims actually litigated in *Fleming I* – claims 3, 5-7, and 25-28 of the '038 patent and claims 22, 24, 31-33, 38, and 41 of the '653 patent. The motion will be denied in all other respects.

Turning to the Fourth Affirmative Defense, Escort alleges that Fleming is estopped by prior art and statements it made to the PTO during the patent reissue process. Once again, to the extent that this defense seeks to relitigate issues already resolved in *Fleming I,* the defense will be stricken. But part of the Fourth Affirmative Defense argues that Fleming is estopped by statements he made to the PTO after the *Fleming I* litigation. Those matters have not been previously litigated – and could not have been raised in *Fleming I* – and thus Fleming's motion to dismiss cannot be granted as to these allegations in the Fourth Affirmative Defense.

Fleming seeks to dismiss those allegations in the Fifth Affirmative Defense that Fleming is equitably barred by unclean hands, laches, and double patenting. Those matters were fully litigated and resolved in *Fleming I* with regard to claims 3, 5-7, and 25-28 of the '038 patent and claims 22, 24, 31-33, 38, and 41 of the '653 patent. The motion will be granted to that extent. The Fifth Affirmative Defense contains other allegations but Fleming is not seeking to dismiss them at this time. The same analysis

**Memorandum Decision & Order – page 21**

applies to Fleming's challenges to the Seventh, Eighth, and Tenth Affirmative Defenses and its Second and Third Counterclaims.

In conclusion, the Court will grant that portion of Fleming's motion to dismiss that seeks to dismiss the Third, Fourth, Fifth, Seventh, Eighth, and Tenth Affirmative Defenses, and Second and Third Counterclaims, as to their allegations regarding claims 3, 5-7, and 25-28 of the '038 patent and claims 22, 24, 31-33, 38, and 41 of the '653 patent.

**Fleming's Motion for Protective Order**

The parties have been unable to agree on a protective order in this case, and so it falls to this Court to resolve their disputes. Escort seeks a prosecution bar provision in the protective order that would bar Fleming from using anything he obtains in this case to prosecute a patent application before the PTO. It is well-established that Escort bears the burden of showing good cause to include a patent prosecution bar in the protective order. *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373, 1378 (Fed. Cir. 2010). Here, Fleming and his counsel represent that Fleming is not engaged in any patent prosecutions that "have anything to do with Escort's business." *See Fleming Reply Brief (Dkt. No. 108)* at p. 6; *see also Fleming Affidavit (Dkt. No. 81-2)* at ¶ 13. Escort offers nothing to cast doubt on Fleming's assertion. Having failed to put forward any reason why a prosecution bar should be placed in the protective order, Escort has failed to carry its burden and the Court will not order that it be included in the protective order.

Escort argues next that Fleming should be barred from viewing any sensitive financial information produced by Escort. Escort's finances were discussed in detail in

public testimony that was not sealed during *Fleming I*.  When Escort later sought to seal a portion of that testimony, the Court refused, holding that Escort allowed the testimony to be admitted during the trial without objection and that it was now in the public domain. *See Memorandum Decision in Fleming I (Dkt. No. 336)* at pp. 6-7.  Given this history, and Escort's failure to identify a single document produced in this case revealing sensitive financial information, the Court finds that Escort has failed to carry its burden of justifying a financial information ban on Fleming.

Finally, Escort seeks a provision that would allow counsel to discuss with Fleming Escort's finances in general but not show Fleming any specific document or discuss with him any specific financial information.  The analysis of this requested provision is the same as the complete bar just discussed above – Escort has not carried its burden of showing that this bar is justified and it will be rejected.

In conclusion, the Court will grant Fleming's motion for protective order along the lines set forth above.[8]

### Fleming's Motion to Add New 9500ix to Case

Fleming moves to add Escort's 9500ix radar detector to his infringement contentions.  The Court earlier dismissed Fleming's infringement claims against the 9500ix in this case because they had been fully litigated in *Fleming I*.  Fleming now offers evidence that the 9500ix was substantially modified by Escort after the trial in

---

[8] This motion also contained a request for sanctions.  The Court has ruled on sanctions while addressing other motions and so this portion of the motion is moot.

*Fleming I,* and is no longer the same product.  The result in *Fleming I* is given preclusive effect only if the new 9500ix product is "essentially the same" as the 9500ix product litigated in *Fleming I.  Acumed LLC v. Stryker Corp.,* 525 F.3d 1319, 1324 (Fed. Cir. 2008).  Fleming has made a threshold showing that the two products are quite different. The Court need not hold at this time that the two products are sufficiently different that preclusion would not apply.  On a motion to amend, the Court "should freely give leave when justice so requires."  *See Fed.R.Civ.P. 15(a).*  The Court need only find that the amendment would not be futile and would not cause undue prejudice.  *See Sanofi-Aventis v. Apotex Inc.,* 659 F.3d 1171, 1182 (Fed Cir. 2011).  Here, Fleming has offered evidence showing that the amendment would not be futile, and the Court can find no undue prejudice.  For all these reasons, the motion will be granted.  Because this ruling is based on the lenient standard of Rule 15, Escort retains the right at some later point to seek dismissal of the claim on the ground that the "new" 9500ix is essentially the same as the 9500ix litigated in *Fleming I.*

## Motion to Compel Privilege Log

Fleming has filed a motion to compel Escort to file a privilege log.  Escort agreed to file a log, and after negotiations, the parties agreed that the following items need not be logged because they were clearly privileged:

> 1. No communications between Mr. Fleming and his retained outside counsel concerning the Fleming v. Coverstone matter need to be logged.
> 2. No communications between Mr. Fleming and his retained outside counsel concerning Fleming v. Escort, et al. (Case No. 1:09-cv-105) need to be logged.

**Memorandum Decision & Order – page 24**

3. No communications between Mr. Fleming and his retained outside counsel concerning Fleming v. Cobra Electronics Corp., et al. (Case No. 1:12-cv-392) need to be logged.

4. No communications between Mr. Fleming and his retained outside counsel concerning Fleming v. Escort, et al. (Case No. 1:12-cv-0066) need to be logged.

5. No communications between Escort or Beltronics and its retained outside counsel concerning Fleming v. Escort, et al. (Case No. 1:09-cv-105) need to be logged.

6. No communications between Escort or Beltronics and its retained outside counsel concerning Fleming v. Escort, et al. (Case No. 1:12-cv-0066) need to be logged.

7. No communications between Mr. Fleming and his retained outside counsel concerning the reexamination proceedings for his patents need to be logged.

The parties were unable to agree on a number of other points, however. The Court will resolve each point below.

Escort argues that it should not be forced to log any communications between codefendants in this case. Escort cites cases supporting a privilege for such communications when there is a common interest among defendants. But Escort makes no specific argument that any particular document is protected by the "common interest" privilege. Moreover, Escort's argument is premature. Escort must list the "common interest" documents in a privilege log and then show specifically, as to each one, why the privilege exists. To absolve Escort from having to log these documents would be to give Escort the unreviewable right to determine privilege. That would be clearly improper. The Court rejects this argument of Escort.

Escort also seeks to avoid logging (1) discussions between non-lawyer employees of Escort that took place after the lawsuit was filed; and (2) discussions between Escort and its board members or investors. The same analysis applies. By not being compelled

to log and justify the assertion of privilege for each such document, Escort would have the unreviewable power to resolve privilege issues.  The Court rejects Escort's position for the same reasons set forth above.

The motion to compel privilege log will be granted.[9]

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for sanctions and to terminate (docket no. 144) and the motion for an order to show cause (docket no. 71) are GRANTED IN PART AND DENIED IN PART.  They are granted to the extent they seek as sanctions the attorney fees incurred by Fleming in preparing and arguing the following:  (1) Motion for Sanctions and to Terminate (docket no. 144) and reply brief (docket no. 151); (2) Motion for Request For Order to Show Cause (docket no. 71) and reply brief (docket no. 94) and response to request for sur-reply (docket no. 104); (3) Motion for Preliminary Injunction (docket no. 145), and reply brief (docket  no. 167); (4) motion to enforce Local Rule 3.4 and for sanctions (docket no. 107) and reply brief (docket no. 121); and (5) motion to unseal documents (docket no. 72) and reply brief (docket no. 89).  This award includes the attorney fees incurred in preparing all supporting documents for these filings as well.  The attorney fee award is to be paid by

---

[9] Escort also filed a motion to compel the filing of a redaction log, to force Escort to justify its redactions, that were based mainly on privilege.  Because the Court has now ordered the filing of a privilege log, Escort must justify its redactions as part of the privilege log.  Thus the motion to compel the filing of a redactions log is moot.

Escort's counsel Gregory Ahrens and Brett Schatz at the firm of Wood, Herron & Evans L.L.P.  Fleming shall submit a petition detailing the attorney fees and costs incurred in preparing these filings, and the Court will determine the precise amount of fees to award. The motion is denied in all other respects.

IT IS FURTHER ORDERED, that the motion to compel regarding electronically stored information and for sanctions (docket no. 135) is GRANTED.  Escort shall answer the three questions set forth above regarding the scope of its search for electronically stored information within 10 days from the date of this Order.  The Court sanctions Gregory Ahrens and Brett Schatz for vexatious conduct and requires them to pay the attorney fees of Fleming for the preparation of the motion to compel (docket no. 135) and reply brief (docket no. 141).  Fleming shall submit a petition detailing the attorney fees and costs incurred in preparing these filings, and the Court will determine the precise amount of fees to award.

IT IS FURTHER ORDERED, that the motion for preliminary injunction (docket no. 145) is DENIED.

IT IS FURTHER ORDERED, that the motion to strike, or in the alternative to file sur-reply brief (docket no. 101) is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent it seeks allowance to file a sur-reply brief.  It is denied to the extent it seeks to strike Fleming's brief.

IT IS FURTHER ORDERED, that the motion to enforce Local Rule 3.4 (docket no. 107) is DEEMED MOOT.

IT IS FURTHER ORDERED that the motion to supplement patent invalidity contentions (docket no. 76) is GRANTED and defendants shall file their supplement within twenty (20) days from the date of this Order.

IT IS FURTHER ORDERED, that the motion to clarify (docket no. 77) is GRANTED, and that the customer defendants will be bound by the resolution of the following two issues between Fleming and Escort: (1) whether Escort infringed Fleming's patents, and (2) whether Fleming's patents are invalid.

IT IS FURTHER ORDERED, that the Second Motion to Dismiss (docket no. 79) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to dismiss Escort's Third, Fourth, Fifth, Seventh, Eighth, and Tenth Affirmative Defenses, and Second and Third Counterclaims, as to their allegations regarding claims 3, 5-7, and 25-28 of the '038 patent and claims 22, 24, 31-33, 38, and 41 of the '653 patent. It is denied in all other respects.

IT IS FURTHER ORDERED, that the motion for protective order and sanctions (docket no. 81) is GRANTED IN PART AND DECLARED MOOT IN PART. The motion is granted to the extent it seeks approval of the protective order submitted by Fleming without a prosecution bar and without a restriction on his viewing financial information. It is deemed moot with regard to its request for sanctions.

IT IS FURTHER ORDERED, that the motions to unseal (docket nos. 72, 87 & 117) are DENIED.

IT IS FURTHER ORDERED, that the motion to unseal (docket no. 95) is GRANTED.

**Memorandum Decision & Order – page 28**

IT IS FURTHER ORDERED, that the motion to file redacted version (docket no. 105) is DENIED.

IT IS FURTHER ORDERED, that the motion to add the 9500ix (docket no. 86) is GRANTED.

IT IS FURTHER ORDERED, that the motion to compel privilege log (docket no. 124) is GRANTED.

IT IS FURTHER ORDERED, that the motion to compel redactions log and sanctions (docket no. 119) is DEEMED MOOT.

DATED: September 29, 2014

B. Lynn Winmill
Chief Judge
United States District Court