GREGORY F. AHRENS
BRETT A. SCHATZ
WOOD, HERRON & EVANS, L.L.P.
Attorneys at Law
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio  45202-2917
Telephone:  (513) 241-2324
Facsimile:  (513) 421-7269
gahrens@whepatent.com
bschatz@whepatent.com

Attorneys for Defendants
        Escort Inc.
        Beltronics USA, Inc.

## UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HOYT A. FLEMING, | ) | Case No. 1:12-cv-00066-BLW |
| | ) | |
| Plaintiff, | ) | **DEFENDANTS', ESCORT INC. AND** |
| | ) | **BELTRONICS USA, INC., OPPOSITION** |
| vs. | ) | **TO MOTION TO COMPEL (DKT NO. 183)** |
| | ) | |
| ESCORT INC, BELTRONICS USA, | ) | |
| INC., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.    INTRODUCTION

Mr. Fleming demands access to a huge swath of communications between Escort and its counsel concerning nearly every important topic in this case.  Mr. Fleming asserts that he is entitled to this relief because he believes that he has made out a "prima facie" case and that this Court has, or likely will, issue rulings concerning alleged fraud by Escort.  But Mr. Fleming relies on the wrong legal standard and ignores the Court's actual holdings in this case.  In doing so, Mr. Fleming fails to meet his burden to establish the crime-fraud exception and his motion should therefore be denied.

Mr. Fleming argues that that simply by making out a "prima facie" case of a fraud, the crime-fraud exception is met and outright disclosure is required.  But the Ninth Circuit and this Court required Mr. Fleming to do much more.  First, Mr. Fleming needed to establish, by a preponderance of the evidence that Escort was engaged in a criminal or fraudulent scheme.  Mr. Fleming did not do so, but instead simply recited the Court's prior holdings concerning source code and argued that none of Escort communications are privileged.  As shown below, this is insufficient to establish the first requirement under the crime-fraud exception and Mr. Fleming's motion should be denied on this basis alone.

Mr. Fleming also failed to meet the second requirement under the crime-fraud exception, which required him to show, by a preponderance of the evidence, that each of the potentially hundreds or thousands of communications he seeks are related to and were made in furtherance of a fraudulent or criminal scheme.  Mr. Fleming simply makes no effort to do so, which provides an independent reason to deny the relief sought.

1

II.     **ARGUMENT**

A.     **The Attorney-Client Privilege Is The Only Privilege At Issue**

Mr. Fleming states that Escort is withholding documents on the basis of the attorney-client privilege" and "the work product immunity" but then argues that "defendants waived that privilege/immunity under the crime-fraud exception" and that all withheld documents therefore should be produced in discovery.  This is an extreme request for relief.  In addition, the crime-fraud exception advanced by Mr. Fleming applies only to attorney-client communications and does not operate as a "waiver" to any privilege or the work product immunity.  *See* 24 Wright and Graham, *Federal Practice and Procedure*, § 5501 ("it is . . . important to distinguish between an 'exception' to the privilege and its waiver. In the case of waiver, the communication was once privileged but has lost that status through a voluntary act of the client that has permitted its disclosure. In the case of an 'exception,' the communication is unprivileged, or at least potentially unprivileged, by operation of law and irrespective of any disclosures by the client.").  Mr. Fleming makes no argument that Escort voluntarily permitted the disclosure of its attorney-client communications so there is no waiver.  Instead Mr. Fleming argues that communications between Escort and its counsel concerning disclosure of source code produced as ESC 17363 should not be privileged, because, according to Mr. Fleming, the advancement of that code was a fraud and it was fraudulently created.

Notwithstanding this, Mr. Fleming's motion makes it clear that he ultimately wants this Court to order disclosure of *all* privileged communications between Escort and its counsel on 11 broad topics that are at the core of this litigation, including non-infringement, damages, willfulness, design-around, source code, and settlement irrespective of whether they relate to

allegedly fraudulent source code or not.  (Dkt. No. 183, at 1).  Mr. Fleming's position ignores the well-recognized principle that these privileged communications are protected from discovery. Indeed, this Court has recognized the benefit and importance of maintaining this privilege, noting that "[t]he purpose of the privilege is 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'"  *Willnerd v. Sybase, Inc.*, No. 1:09-CV-500-BLW, 2010 WL 5391270, at \*3 (D. Idaho Dec. 22, 2010) (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).  Escort is no less entitled to "full and frank communication" with its attorneys regarding the issues at the core of this case.

### B.     Mr. Fleming Must Establish The Crime-Fraud Exception By A Preponderance Of Independent Evidence

Mr. Fleming relies on *In re Napster* to demand production of Escort's communications with its counsel concerning nearly every important topic in this case.  (Dkt. No. 183, at 2, 4). According to Mr. Fleming, *In re Napster* holds that "Mr. Fleming need only establish a prima facie case of fraud before waiver arises."  *Id.* at 2.  As explained above, Mr. Fleming's waiver argument is inapplicable.   Further, Mr. Fleming's apparent position that the crime-fraud exception can be established merely by a *prima facie* showing is supported neither by the holding in *In re Napster* nor by the decisions of this and other courts.

In *In re Napster*, the Ninth Circuit's discussion of the applicability of the "*prima facie*" standard to the crime-fraud exception notes that this formulation first arose in the Supreme Court's decision in *Clark v. United States*, 289 U.S. 1, 14 (1933).  *In re Napster*, 479 F.3d 1078, 1095 (9th Cir. 2007).  The Ninth Circuit explained that the *Clark* case did not concern disclosure

3

of attorney-client privileged communications, but rather the jury deliberation privilege and thus questioned its applicability in the attorney-client waiver context in the first instance, stating that "[i]t is not at all clear what the Court in *Clark* would have said if the attorney-client privilege had been at stake." The Ninth Circuit's discussion of the *prima facie* standard went on to note that "[a]s it relates to the crime-fraud exception, the *prima facie* standard has always been poorly defined, inconsistently interpreted and generally misunderstood." *Id.* (internal quotations omitted). Indeed, the Supreme Court itself acknowledged that its "use in [*Clark*]... of the phrase '*prima facie* case' to describe the showing needed to defeat the privilege has caused some confusion." *Zolin*, 491 U.S. at 563 n.7 (internal citations omitted).

In light of this confused state of affairs, the Ninth Circuit adopted a more exacting standard that a party seeking outright disclosure of privileged materials (as Mr. Fleming does here) must overcome. Specifically, the Ninth Circuit held that "in a civil case the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime-fraud exception should be preponderance of the evidence." *In re Napster*, 479 F.3d at 1094–95. This Court has likewise confirmed that the appropriate standard in these circumstances is preponderance of the evidence. *United Heritage Property v. Farmers Alliance Mutual Ins.*, Case No. CV 10-456-BLW, 2011 WL 781249, at *4 (D. Idaho Mar. 1, 2011)("The burden that [the movant] United Heritage must satisfy – to obtain outright disclosure of the documents – is to show by a preponderance of the evidence that FAMI retained and/or enabled Bailey to commit a fraud.") (citing *In re Napster*).

As this Court has held, this burden is "difficult to satisfy" because Mr. Fleming must prove the underlying facts in support of his position solely with independent evidence (*i.e.*, not

by relying on the sought after communications):

> While this burden may be difficult to satisfy by independent evidence, the [Ninth] Circuit explained that a challenging standard was "consonant with the importance of the attorney-client privilege . . . [which] is central to the legal system and the adversary process and thus deserving of unique protection in the courts."

*Id.* at *4; citing *In re Napster*, 479 F.3d at 1095.  Mr. Fleming failed to come forward with independent evidence to support the crime-fraud exception by a preponderance of the evidence.

### C.     Mr. Fleming Has Failed To Prove The Crime-Fraud Exception Applies

To establish the crime-fraud exception, Mr. Fleming must prove, by a preponderance of the evidence, two separate requirements.  First, Mr. Fleming must show that "the client [*i.e.* Escort] was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme."  *In re Napster*, 479 F.3d at 1090; *In re Grand Jury Subpoena*, 87 F.3d 377, 380 (9th Cir. 1996).  Second, Mr. Fleming must "demonstrate that the attorney – client communications for which production is sought are 'sufficiently related to' and were made 'in furtherance of the intended, or present, continuing illegality.'"  *In re Napster*, 479 F.3d at 1090.  As explained below, Mr. Fleming has not proven either of these requirements.

### 1.     Escort Was Not Engaged In Or Planning A Criminal Or Fraudulent Scheme

Mr. Fleming does not identify a criminal or fraudulent scheme that Escort was allegedly engaged in or planning.  Instead, he advances two theories concerning frauds supposedly committed by Escort.  The first concerns an allegation that Escort "advance[ed] source code they knew did not operate their accused infringing products" and second is that Escort "likely" committed a second fraud when creating that source code.  (Dkt. No. 183 at 1).  Mr. Fleming does not cite any independent evidence in support of his arguments, relying solely on this

5

Court's order at Docket No. 178 to advance his positions.  Neither of these theories is sufficient to prove the first requirement of the crime-fraud exception.

With respect to the first theory, the Court already considered Mr. Fleming's arguments that Escort was engaged in a fraudulent scheme.  The Court received and reviewed the affidavits provided by Escort employees who explained that

> when Escort originally made its representations that ESC17363 provided a defense – [Escort employee Steven Orr] felt "these lines of source code were complete" and "would be further implemented into Escort's commercially sold products." . . . .  In other words, Escort produced ESC17363 on the expectation that it would later be used in the accused devices. . . . Orr explains further that ESC17363 went through a number of modifications as Escort continued to test it into November of 2013. Although Escort says that it intended to use the modified source code to actually operate products sold commercially in January of 2014, they admit they failed to do so until about a month ago, in late August of 2014.

(Dkt. No. 178 at 7–8).  In the very next sentence, and on the basis of this evidence, the Court issued its holding concerning Mr. Fleming's argument that Escort had perpetrated a "fraud on the Court":

> **The Court will assume the truth of Escort's representations that it did not fabricate ESC17363, and that it intended to eventually use it to operate Escort's accused devices.** To find otherwise would require an evidentiary hearing following discovery. While discovery may reveal fabrication – and support a renewed motion by Fleming at that time – **the Court cannot now find, on the basis of this record, that Escort has fabricated the source code contained in ESC17363**.

(*Id.*at 8)(emphasis added).   Thus, the Court already concluded that Mr. Fleming failed to establish that Escort fabricated evidence and did not hold that Escort was either involved in a fraudulent scheme or that Escort sought its counsel's advice in furtherance of this scheme.

In his motion, Mr. Fleming failed to come forth with independent evidence that

contradicts or calls into question this Court's decision, but merely repeats the Court's previous decision and claims the requested communications should be produced.  Indeed, Mr. Fleming cites no new evidence at all.  Thus, the inquiry as to whether Escort was engaged in or planning a criminal or fraudulent scheme ends with the Court's acceptance of "Escort's representations that it did not fabricate ESC17363," such that there was no such fraud on the part of Escort.

Mr. Fleming repeatedly claims that Escort engaged in a "first fraud," by advancing false source code in an effort to mislead Mr. Fleming regarding the operation of its products.  (Dkt. No. 183).  According to Mr. Fleming, "the Court found [that] defendants knowingly advanced false source code in an effort to mislead Mr. Fleming regarding the operation of their accused infringing products . . . ."  (Dkt. No. 183, at 2).  But the Court's Order, in the passage that Mr. Fleming excerpts in his brief, states that the Court made a finding against Escort's attorneys, not Escort.  *Id.*; citing Dkt. No. 178, at 10.  This distinction is significant.  Contrary to Mr. Fleming's claim, the Court did not hold that Escort was engaged in or planning a fraud.  Instead, the Court sanctioned Escort's *counsel* for what it determined to be a reckless, false representation by Escort's counsel, but accepted the evidence showing that Escort advanced ESC17363 as a defense because Mr. Orr felt "these lines of source code were complete" and "would be further implemented into Escort's commercially sold products."  (Dkt. No. 178 at 7).

Mr. Fleming repeatedly tries to impute this conduct to Escort itself, attempting to recast the Court's findings as applying to Escort (*see, e.g.*, *Id.* at 2–3: "the Court found that defendants fraudulently disclosed and advanced source code"), but the law precludes Mr. Fleming from doing so.  Indeed, the very case that Mr. Fleming attaches to his brief establishes that the conduct of Escort's counsel cannot be relied upon to establish the loss of Escort's privilege: "The loss of

the privilege depends upon the wrongdoing of the party, not the conduct or knowledge of the lawyers." *Intellect Wireless, Inc. v. HTC Corp.*, Case No. 09-c-2945 (N.D. Ill. May 6, 2014); *see also United States v. Chen*, 99 F.3d 1495, 1504 ("[I]t is the client's knowledge and intent that are relevant."). Thus, Mr. Fleming has failed to establish that Escort was engaged in or planning a criminal or fraudulent scheme by a preponderance of the evidence. Instead, the record evidence establishes that Escort produced source code that it intended to use in its products and which ultimately was used in its products, as this Court has found. (Kuhn Declaration (Dkt. No. 80-1); Orr Declaration (Dkt. No. 150-3); *see also* Dkt. No. 178 at 7–8).

Mr. Fleming also claims that it is possible that Escort engaged in a "second fraud" allegedly pertaining to a fabrication of the ESC17363 source code. But, Mr. Fleming merely asserts that it was "likely" that Escort did so (Dkt. No. 183, at 1, 3) and does not cite any independent evidence that proves this argument by a preponderance of the evidence. As shown above, the Court already found to the contrary, stating that "the Court cannot now find, on the basis of this record, that Escort has fabricated the source code contained in ESC17363." (Dkt. No. 178 at 9).

Indeed, the independent evidence shows that the source code was not fabricated, as demonstrated by Escort's detailed history of the lines of source code at issue. (*See* Dkt. No. 149, at 7–11). As those filings and the evidence cited therein explain, the lines of source code Escort was accused of fabricating were identical or nearly identical throughout the entire vetting process, including through implementation into Escort's commercial products. *Id.* at Exhibit C, ¶¶ 16–24. These facts, and the other evidence submitted throughout the briefing process established that Escort did not fabricate source code. (*See generally*, Dkt. Nos. 149, 156, and

accompanying exhibits).   Notably, the Court invited Mr. Fleming to offer new evidence concerning the Court's holding as to fraud (Dkt. No. 178, at 9), but Mr. Fleming declined to do so.   Instead, Mr. Fleming's motion fails to establish by a preponderance of the evidence that Escort was engaged in a fraudulent or criminal scheme.[1]

Mr. Fleming also claims that his motion "makes at least a prima facie showing of a third instance of fraud" and "refers the Court to that motion to the extent it prefers to include that third fraud in its ruling on this motion."  (Dkt. No. 183, at 3, n.2).  Escort notes that it has not yet responded to this motion, that more than a prima facie showing is required and that Mr. Fleming's footnote referencing this pending motion is insufficient to establish that the crime-fraud exception applies.

> ## 2.  Mr. Fleming Fails To Show That The Attorney-Client Communications He Seeks Were Related To And Made In Furtherance Of A Fraudulent Scheme

Mr. Fleming asks that the Court order production of privileged communications concerning a broad swath of topics, including "(1) infringement of the GX65, Pro 500, 9500ix, and Passport iQ; (2) willfulness with respect to the GX65, Pro 500, 9500ix, and Passport iQ; (3) damages as they relate to the GX65, Pro 500, 9500ix, and Passport iQ; (4) settlement as it relates to the parties' Ninth Circuit and Federal Circuit mediations; (5) source code design and development for the GX65, Pro 500, 9500ix, and Passport iQ; (6) design-around efforts for the

---

[1]     Mr. Fleming claims that he need only establish a "*prima facie*" case of the alleged second fraud and, because Mr. Fleming asserts that he has done so, he has "raise[d] discovery issues that defendants cannot now block through claims of privilege/immunity." (Dkt. No. 183, at 3).  As explained above, Mr. Fleming must do more than merely allege a "*prima facie*" case of fraud to establish the exception.  He must instead set forth independent evidence establishing both requirements by a preponderance of the evidence.

GX65, Pro 500, 9500ix, and Passport iQ; (7) product testing; (8) compilation and installation of code; (9) production/disclosure of code to Mr. Fleming; (10) the briefing and supporting documents relating to Mr. Fleming's motions to show cause and for terminating sanctions; and (11) all communications concerning the preparation of correspondence, briefing, discovery responses, and/or contentions relating to any of these subject matters." (Dkt. No. 183, at 4).

But in order to obtain any communications on these highly sensitive topics, Mr. Fleming must first establish a fraud by Escort and then establish, by a preponderance of the evidence and without reliance on the communications themselves, that every single attorney-client communication sought was related to and made in furtherance of a criminal or fraudulent scheme.  Since Mr. Fleming failed to establish a criminal or fraudulent scheme engaged in by Escort, he cannot show a relationship between the communications in these eleven broad topics and any such scheme, because no such scheme has been shown.  Indeed, Mr. Fleming does not even attempt to do so, instead merely stating that he "requests an order compelling the immediate production of all documents and things relating to the adjudicated or prima facie fraud." (Dkt. No. 183, at 4).  No independent evidence is set forth explaining how the communications Mr. Fleming seeks are connected to any scheme.  Thus, Mr. Fleming has also failed to prove the second prong of the waiver test by a preponderance of the evidence.

However, even if Mr. Fleming could establish a fraudulent or criminal scheme to fabricate the source code at ESC17363 (which he failed to do), his request for nearly every communication in this case would be wildly overbroad.  Escort's discussions with its counsel on the topics set forth above (including, for example, non-infringement, damages, settlement, willfulness, design around, settlement, source code, product design and testing, as well as

10

briefing and document production) would encompass dozens of sub-topics and likely hundreds of communications that have nothing to do with advancing the ESC17363 source code. Yet Mr. Fleming demands that his attorney be given access to all of Escort's communications and legal strategies concerning nearly every important topic in this litigation, regardless of its connection to Mr. Fleming's theory of source code fabrication. There is simply no basis for this broad disclosure of Escort's privileged discussions with its counsel and the Court should reject Mr. Fleming's demands for these protected communications.

> **D.    Escort's Attempts To Understand Mr. Fleming's Position Were Good Faith Efforts To Resolve This Dispute And Were Not "Vexatious."**

Mr. Fleming claims that during the meet and confer process, "defendants refused to address the Court's first finding of fraud" and asserts that this was "vexatious." (Dkt. No. 183, at 2, n.1). An examination of the correspondence between the parties shows otherwise.

In his first email to Escort, Mr. Fleming asserted that "[t]he Court ruled . . . that fraud has been committed," that Escort had objected to Mr. Fleming's requests "based on privilege and/or work product," and that "[a]ll of those objections (as well as any made in the future) now are moot in light of the adjudicated fraud and the well-recognized crime-fraud exception." (Dkt. No. 183-2). Mr. Fleming did not set out the proper test for establishing the exception, nor how independent evidence would prove that either of its requirements had been met. Escort disagreed with Mr. Fleming's position and told him as much. Mr. Fleming then responded by stating that "[Escort] appear[s] to be taking issue with whether the Court found fraud. Do you dispute that? If so, please explain all reasons why." *Id.* Escort responded to this inquiry directly, stating that "[o]ur position is that the Court did not make an adjudication of fraud. The basis for our position is the Court's Order itself." *Id.*

11

Later, after Mr. Fleming asked Escort to "please point out those portions of the Order and why you believe they negate a finding of fraud" Escort pointed to particular passages in the Court's Order, unambiguously describing its position and citing *United States v. Chen*, 99 F.3d 1495 (9th Cir. 1996), the same decision Escort cites above. *Id.* Escort also noted that "[t]o date, you have not provided any authority as to how the exception would apply to this case." Instead of responding with a reasonable explanation of his position or how the facts applied to that position, Mr. Fleming filed his motion.

Thus, while Escort disagreed with Mr. Fleming's position, the exchange between the parties shows that Escort's disagreement was well-founded and that Escort explained its position to Mr. Fleming. The emails attached to Mr. Fleming's motion also show that Mr. Fleming refused to identify the authority he was relying on or how it applied to the facts at hand, which could have at least narrowed or clarified the areas of disagreement between the parties.

**E.      Mr. Fleming Is Not Entitled To Attorneys' Fees.**

Mr. Fleming asserts that Escort should pay Mr. Fleming's attorneys' fees, on the apparent theory that Mr. Fleming should not have had to expend the expense of filing this motion. In Mr. Fleming's view, this motion was not necessary because Escort should have agreed with Mr. Fleming's email request that Escort produce all of its privileged communications. But Mr. Fleming's email did not cite any legal authority and did not contain any analysis establishing that the crime-fraud exception applied. Indeed, even Mr. Fleming's motion does not attempt to set out the proper legal test for the crime-fraud exception (which was readily available in this Court's *United Heritage Property* decision) nor provide independent evidence establishing that this test was met. As such, Escort was well within its rights not to acquiesce to Mr. Fleming's

email request for its privileged communications and attorneys' fees should not be awarded to Mr.

Fleming.

## III.    CONCLUSION

For these reasons, Escort respectfully requests that the Court deny Mr. Fleming's Motion

to Compel.


DATED this 17th day of November, 2014.

WOOD, HERRON & EVANS, L.L.P.


By:____/s/_____
Brett A. Schatz, of the firm
Attorneys for Defendants Escort Inc.
And Beltronics USA, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of November, 2014, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Michael S. Dowler<br>Park, Vaughn, Fleming & Dowler LLP | mike@parklegal.com |
| Bradlee R. Frazer<br>Hawley Troxell Ennis & Hawley, LLP | bfrazer@hawleytroxell.com |
| Steven F. Schossberger<br>Hawley Troxell Ennis & Hawley, LLP | sschossberger@hawleytroxell.com |
| Brian P. Muething<br>Keating Muething&Klekamp PLL | bmuething@kmklaw.com |
| Rachael A. Rowe<br>Keating Muething&Klekamp PLL | rrowe@kmklaw.com |
| Brian J. Yoder<br>Keating Muething&Klekamp PLL | byoder@kmklaw.com |
| Keely E. Duke<br>Duke Scanlan& Hall, PLLC | ked@dukescanlan.com |

_____/s/_____
Brett A. Schatz

14