J. Walter Sinclair (ISB#2243)
E-mail: *jwsinclair@hollandhart.com*
Timothy P. Getzoff (*admitted pro hac vice*)
E-mail: *tgetzoff@hollandhart.com*
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Boise, ID 83702
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Attorneys for Defendants Escort, Inc. and Beltronics USA, Inc.

Gregory F. Ahrens *(admitted pro hac vice)*
E-mail: gahrens@whepatent.com
Brett A. Schatz *(admitted pro hac vice)*
E-mail: bschatz@whepatent.com
WOOD, HERRON & EVANS, L.L.P.
Attorneys at Law
441 Vine Street, 2700 Carew Tower
Cincinnati, Ohio 45202-2917
Telephone: (513) 241-2324
Facsimile: (513) 421-7269

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>    Plaintiff,<br><br>vs.<br><br>ESCORT INC, BELTRONICS USA, INC., ET AL.,<br><br>    Defendants. | Case No. 1:12-cv-00066-BLW<br><br>**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196)**<br><br>**REDACTED** |

**I.   INTRODUCTION**

In Plaintiff's latest motion to compel and for sanctions, Plaintiff begins by accusing Escort of "refusing" to produce "the actual code" used in Escort's accused products, and adds another request for sanctions.  By the end of his Motion, however, Plaintiff identifies no missing software code nor any refusal by Escort to produce code.  Instead, Plaintiff's eventual demand is to obtain a better explanation of how the already-produced source code and executable files correlate to each other, proposing a chart for Escort to fill out ostensibly for this purpose. Because Plaintiff already possesses the information he seeks, and Escort has already agreed to fill in any remaining gaps in Plaintiff's understanding of the code, Plaintiff's Motion is unnecessary and misplaced.  In addition, his latest demand for sanctions ignores several facts and circumstances on this issue and should be denied.

Foremost, Escort has in fact produced source code for all of the software that is used in its accused products, a process that began early in this case and continued through supplementation as Plaintiff added more accused products to its infringement contentions. Executable software files,[1] as the Court knows, are compiled from the source code, but typically are not produced in litigation because executable software is only machine readable and impractical for discerning how a device operates.  For this reason, Local Patent Rule 3.4(a) does not require the production of executable files, and it was not requested or produced in Fleming I.[2]

---

[1]   In its Motion, Plaintiff refers to "executable files" as "binary files."  Escort also refers to its executable files as "Hex Files."  *See* Escort's Processor Programming Tutorial in Dkt. 192 at 2-9.

[2]   *Hoyt A. Fleming v.  Escort, Inc.*, Case No. 1:09-cv-00105-BLW (D. ID)

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 1

Approximately six months ago, Plaintiff demanded production of executable files in this current matter, Fleming II—not for the purpose of assessing the functionality or infringement of the accused devices, but instead for Plaintiff to verify the authenticity of the source code produced by Escort. Escort agreed to this request, and in fact already had produced to Plaintiff its Product Compatibility Log that identifies the executable files associated with each product and version. Plaintiff raises no issue with the accuracy or completeness of the Product Compatibility Log, which gives Plaintiff the name of each executable file used for each version of every accused product. *See* Brief at 7-8 (Dkt. 196).

Over the last several months Escort has been gathering and producing to Plaintiff the actual executable files for all of the processors for each of accused products. Escort has also produced source files together with instructions as to how they may be compiled and the associated binary files and project files needed to compile them. That time-consuming production is now complete. Accordingly, Plaintiff possesses all the executable files, each of which are identified by a file name that can be tied to each accused products via the Product Compatibility Log. In addition, Plaintiff also possesses source code, project and library files that compile into the executable files produced with identifying information within the files themselves that tie to each executable file that may be compiled therefrom.

Indeed, Plaintiff already has performed the correlation between the source code and executable files that he is now demanding in his proposed chart, based on the code that Escort had previously provided. See Ex. 2 at 1, 3-9. Plaintiff omits from his briefing the fact that Escort's counsel already offered (and remains willing) to assist Plaintiff in completing his

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 2

existing chart, assistance that Plaintiff previously did not accept, in favor of filing the instant Motion.

At this point, Escort is unclear as to the precise nature of Plaintiff's complaint, a shortcoming that is exacerbated by the fact that Plaintiff declined to meet and confer on this issue prior to filing his motion, contrary to Local Rule 37.1 and the Court's meet and confer requirements. Reading his Motion, Plaintiff appears to be complaining about the manner in which the code files were Bates numbered, which ignores the fact that software code is produced in native format, which prohibits affixing a Bates number on an individualized basis like other documents. However, the executable files produced to Plaintiff were saved in a folder and each executable file name corresponds to the executable file name shown in the Product Compatibility Log. In response to Plaintiff's earlier raising of this issue, Escort has provided more recent production of source code file sets that were saved as individual ZIP files, with a ZIP file name that corresponds to the executable file name and/or version number listed in the Product Compatibility Logs. These Source Code files will compile to create the respective executable file when compiled as explained in the additional informational material that Escort provided to Plaintiff.

Secondarily, Plaintiff appears to complain about the manner in which Escort's source code ties to the executable files, although Plaintiff appears to understand how the files correlate to each other and has already mostly completed his own correlation chart. Although not clear from his Motion, Plaintiff's chart evidences a persistent belief that each product version should have a single source code file set and a single corresponding executable file. However, as Escort explained to Plaintiff previously, this is not how Escort's source code works or is created.

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 3

Rather, because Escort's source code is continually being updated and revised, a source code file set can be compiled to create multiple executable files, depending on the version of the code and the product at issue. A more detailed explanation as to how Escort's source code ties to the executable files is contained in Escort's Opposition (Dkt. 192 at 2-9) to Plaintiff's Second Motion for Terminating Sanctions.

The bottom line is that Plaintiff possesses all the source code at issue for all the accused products, and he further possesses all the information necessary to tie the produced source code files to the executable files and to compile the source code files to verify the executable files. To the extent Plaintiff needs further assistance in tying the source code to the associated executable files, or in performing a verifying compilation, Escort stands ready to provide that to him, as has been offered prior to the filing of the instant Motion. And, Escort is even willing to fill out the chart for Plaintiff, but given that Escort maintains source code in the ordinary course of business in a different manner than Plaintiff seeks by this chart, completing the chart may not satisfy Plaintiff. Possibly he can clarify that issue, knowing the information contained herein. Again, a meet and confer would help tremendously with this issue.

For the reasons set forth below, Plaintiff's Motion to Compel should be denied.

## II.    ARGUMENT

Plaintiff's claim that Escort refused to produce and identify source code, executable files and related software for the accused products is simply incorrect. Not only did Escort produce source code (human-readable files) for the accused products, it also provided Plaintiff with a "roadmap" via Escort's response to Interrogatory No. 13 that correlates source code files to each accused product. This production complied with the letter and spirit of Local Patent Rule 3.4(a).

Escort also produced Product Compatibility Logs identifying the executable files and associated software corresponding to each accused product.  And Escort produced all of the executable files (machine-readable files) and related compilable software for each accused device identified in the Product Compatibility Logs, so that Plaintiff has all of the files he claims were not produced.

More significantly, Escort offered to help Plaintiff prepare a document connecting Escort's production of source code and executable files with each accused product in the Product Compatibility Logs when the production was completed – the very relief Plaintiff seeks here. Plaintiff rejected Escort's offer to help (which he now apparently wants) and filed this Motion without following the Court's meet and confer requirements in Local Rule 37.1.  Since Escort offered to assist Plaintiff in understanding Escort's production; and, further, that Plaintiff again ignored the meet and confer requirement, his motion should be denied.

A. **Escort Produced Source Code and Correlation to Each Allegedly Infringing Product to Fleming By May 2014.**

Escort's devices contain processors that operate based on source code written by Escort programmers.  Escort's method of programming the processors is the same general approach used to program any processor: files are written by humans in a human readable programming language ("Source Code"), which are then compiled into other files that a processor can directly read, understand and execute ("executable files").  At issue here is Plaintiff's request for the source code and executable files for the Main and GPS processors in the accused devices.

Local Patent Rule 3.4(a) states in pertinent part, that a "party opposing a claim of patent infringement shall produce or make available for inspection and copying: . . . Source code . . . sufficient to show the operation of any aspects or elements of an Accused Instrumentality. . . ."

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page 5**

Pursuant to Local Patent Rule 3.4(a), between September 2013 and May 2014 Escort produced source code for each of the accused radar detector products and product versions.  As Plaintiff identified additional models and product versions as allegedly infringing, Escort supplemented its production.  Between December 2013 and March 2014, Escort produced Product Compatibility Logs for each of the accused products which identified the executable files loaded on each product and the date each software revision was initiated.  *See, e.g.*, Plaintiff Ex. 3 (Dkt. 196-3).  On May 28, 2014, Escort provided a roadmap for Plaintiff in its answer to Interrogatory 13 which identified by bates number the applicable Product Compatibility Log and Source Code for each accused product and product version.  *See* Ex. 1.

The parties corresponded extensively concerning Escort's source code maintenance practices in June 2014.  This correspondence consisted of letters from Plaintiff to Escort dated June 4 and June 9, 2014 and a letter from Escort to Plaintiff dated June 20, 2014.  *See* Exs. 5-7.  We have attached these letters for the Court's information since they were not attached with the Plaintiff's motion.

Plaintiff appeared to be seeking a separate set of source code files for each version of each product, because Interrogatory 13 asked Escort to "[s]eparately, for *each revision of each Accused Infringing Product* . . . identify the bates number(s) used to produce the *source code* that was compiled to generate the *software listed in the Product Compatibility Log* for each such revision."  *See* Ex. 1 at 3 (emphasis added).  Because the Product Compatibility Log only lists executable or Hex Files (not source code files) it appeared that Plaintiff was asking Escort to correlate "source code" to "software listed in the Product Compatibility Log" (Executable Files) for "each revision of each Accused Infringing Product."

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 6

Plaintiff's request, however, appears to be based on a misapprehension of the source code files themselves.  The manner in which Escort creates its Source Code for the main processors results in a relatively small number of source code files that can be compiled into more than a dozen different executable files, depending on the instructions in Source Code file used in the compilation process.[3]   A single source code file set can compile to create the software for multiple products and/or product versions, so that, in some instances Escort identifies the same source code file set for multiple products.

Escort explained to Plaintiff that "Interrogatory 13 embodies the assumption that 'the source code that was compiled to generate' particular software could be produced independently of any other source code, when in fact source code is created and maintained at Escort in the ordinary course of its business in common code base files and file sets which contain multiple compilable versions of code, any one of which can and may be compiled for a given firmware compilation effort."  Ex. 5 at 1-2, 4.  Escort further explained that Escort's source "code base files include not just one version of code but multiple versions," that these versions could be selected "via parameters which are set during the compilation process" and "the values of those parameters [are] shown in the Product Compatibility Log."  *Id.  See also* Dkt. 192 at 2-9.

After providing this explanation to Plaintiff, four months passed without Plaintiff raising any further questions or seeking to confer further on the issue.  Then, on October 15, 2014, Plaintiff filed his Second Motion for Terminating Sanctions, without making any effort to meet

---

[3]   Escort explains its practice for maintaining source code files in much greater detail in its Opposition to Plaintiff's Second Motion for Terminating Sanctions. [Dkt. 192 at 2-9.]

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 7

and confer.  *See* Escort's Opposition, Dkt. 192.  That motion has been fully briefed and is pending for this Court.[4]

### B. Escort Produced All Executable and Project Files Identified in the Product Compatibility Logs

As of May 28, 2014, Escort has produced all of the Source Code files which show how each version of each accused product operate, along with a roadmap with the bates number correlating the Source Code files and applicable Product Compatibility Log to each accused product.  Exs. 1, 5.  This is the information contemplated by LPR 3.4(a), not executable files.

The contents of executable files differ from Source Code because they are not readily understandable to a human operator and appear to be random strings of characters.  For example, one portion of the executable files produced to Plaintiff appears as follows:

*See* Grindon Declaration (Dkt. 192 at Ex. C).  These strings of letters and numbers are understandable only to the processors inside Escort's devices and are of little use to a human attempting to discern how the device operates.  It is these executable files – and not the Source

---

[4]  Although Plaintiff undoubtedly understands this, he persists in claiming that Escort did not produce all of the source code for the accused products since he did not receive a separately bates-numbered source code file for each product or version.  Alternatively he suggests that individual source code files were spoliated.  Dr. Grindon explains that he compiled an executable file from source code produced to Plaintiff by changing a setting in the source code to request compilation of a particular version and the result was identical – byte for byte – to the executable file in the Product Compatibility Log (and which executable file was produced to Plaintiff).  *See* Grindon Declaration, Dkt. 192 at Ex. C.  Thus, Dr. Grindon confirms that there was no data lost and no spoliation.

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 8

Code – which are actually loaded on Escort's products available to consumers in the marketplace.

In his letter of June 9, 2014, Plaintiff requested that Escort produce the executable files installed on each processor and other files needed to compile the already produced Source Code into the executable files. On June 20, 2014, Escort agreed to make these files available to Plaintiff for inspection in a controlled environment, which is a common practice approved by many courts for patent cases, including the Northern District of California. *See* the Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets at http://www.cand.uscourts.gov/model-protective-orders; Ex. 5 at 5; Fleming Ex. 4 at 196-4. Escort provided Plaintiff with the details for the proposed production in a controlled environment on August 1, 2014. Ex. 8.

During the exchange in June 2014, Plaintiff also insisted that Escort collect and catalog every version of software for every processor identified in the Product Compatibility Logs notwithstanding the irrelevance of most of this information to his infringement contentions here. By letters dated June 20, 2014 and June 26, 2014, Escort also agreed to make these software files available to Plaintiff in the controlled environment.

Plaintiff did not respond until late September – more than three months later – when he rejected production of the executable files and additional files in a controlled environment and demanded that Escort produce the files directly to him. Ex. 9.

In an attempt to avoid a dispute, Escort relented to Plaintiff's demands. On October 1, 2014, Escort "agree[d] to accommodate [Plaintiff] by producing [executable files, library files, and compiler compatibility files] directly to you. . . ." Ex. 10. Escort produced these files in five

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 9

installments – on November 10, 2014, November 21, 2014, December 1, 2014, December 12, 2014, and December 23, 2014.  *See* Ex. 11.[5]  To assist Plaintiff in reviewing the executable files and software files, Escort also "included informational content with the original source files, specifically to identify where there is a setting or other adjustment required for the source file to produce the corresponding [executable] file."  Ex. 3.  Escort believes it has produced all of the source code files, executable files and software files Plaintiff claims in his motion were not produced.

> **C.      Escort Offered to Assist Fleming to Prepare a Document Connecting Escort's Production With Each Product In The Product Compatibility Logs – The Relief Fleming Seeks Here**

After Escort produced its executable files on November 10, 2014, Plaintiff sent a spreadsheet to Escort on November 18, 2014, connecting Escort's executable file production with each accused product in the Product Compatibility Log which Plaintiff compiled from the files produced by Escort:

> [The spreadsheet] correlates each executable file (as identified in the Product Compatibility Logs) to the bates number we understand you contend constitutes the executable files.  The worksheets also identify the bates number you told us corresponds to the source code file(s) for each revision of each accused product.

Ex. 2.  Plaintiff's spreadsheet demonstrates that he understood Escort's production methodology.  *Id*. at 1, 3-9.

Escort made a second production of software files on November 21, 2014 (Ex. 11 at 2) and responded to Plaintiff on November 24, 2014, offering to work with Plaintiff to help him

---

[5]  Plaintiff appears to complains now that Escort produced too many files, yet he earlier demanded that Escort produce the software for *all* of the processors in the accused devices, including those (such as the Audio, Voice and USB processor software) that have nothing to do with the functionalities relevant to the patents-in-suit.

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 10

document the correlation of source code and executable files he needed when the production of the remaining source code files was completed – the very relief Plaintiff seeks here:

> If you would like a verification connecting the production we are making referencing the Product Compatibility Log, <u>we can work with you to determine a proper means to provide that, and include the appropriate cross-references when the production is completed</u>. Alternatively, if you would like to request an admission to a particular point or issue, please provide us with a request for admission as provided in the Federal Rules.

Ex. 3 (emphasis added). At that point, Escort believed that Plaintiff was either waiting for Escort to complete its production of software files (which is now complete) and help him complete his chart; or, Plaintiff was preparing a request for Escort to admit the information he compiled in his own chart, from the information produced to him. Escort made a third production of software files on December 1, 2014. Ex. 11 at 3-4.

On December 6, 2014 (three days before filing this Motion), Plaintiff rejected Escort's offer to work with him (when the production of files was complete) as "plainly vexatious." Ex. 4. Plaintiff's email requested a time on December 11 to "have a final 'meet and confer' since Plaintiff intends to approach the Court on all of these issues." *Id*. However, Plaintiff then filed the instant Motion on December 9th, two days before his proposed "meet and confer" day.

Escort remains ready, willing and able to work with Plaintiff to complete the chart set forth in his motion to compel – just as it was before Plaintiff filed his motion – now that Escort has finished its production of executable files and related software files. Indeed, Plaintiff is asking for relief which Escort offered to provide and Plaintiff rejected as "plainly vexatious" before he filed this motion. This said, however, Escort is concerned as to whether this motion is solely or even primarily directed to the filling out of a chart; rather, Plaintiff has indicated at several points the belief that the manner in which Escort maintains its source code files

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page 11**

constitutes spoliation and/or renders the produced versions of those files "false". Escort believes that the apparent request here, i.e., merely filling out a chart, is simply a set-up designed by Plaintiff to lead to more motions practice. If Plaintiff's goal is to assert falsehood or spoliation based upon the code and information Plaintiff already possesses, that issue should be resolved now, rather than in some subsequent motion practice that would consume still more of the Court's time on matters outside of the merits of this case.

### D. Plaintiff's Request For Sanctions Should Be Denied.

Plaintiff's failure to meet and confer warrants denial of Plaintiff's Motion, and particularly warrants denial of his request for sanctions. As this Court's rules state, "Judge Winmill requires the parties to strictly comply with the meet and confer requirements of Local Rule 37.1." Chief District Judge B. Lynn Winmill Discovery Disputes, http://www.id.uscourts.gov/district/judges/winmill/ Discovery_Disputes.cfm (last visited December 31, 2014). Rule 37.1 explains that Plaintiff's letter (which Escort responded to) was insufficient to meet this Court's "confer" requirement:

> To confer means to speak directly with opposing counsel or a self-represented litigant in person or by telephone, to identify and discuss disputed issues and to make a reasonable effort to resolve the disputed issues. The sending of an electronic or voicemail communication does not satisfy the requirement to "confer."

Local Rule Civ 37.1. Plaintiff filed this motion on December 9, 2014 without complying with the meet and confer requirements in Local Rule 37.1. Indeed, Plaintiff acknowledged his duty to meet and confer before filing this motion in his email to Escort on December 6th, yet filed this motion two days *before* the date he suggested in the email for the meet and confer. *See* Ex. 4.

Not only did Plaintiff again ignore the Court's meet and confer requirements (*see, e.g.,* Escort's Opposition to Plaintiff's Second Motion for Terminating Sanctions, Dkt. 192 at 17-18),

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 12

but weeks before Plaintiff filed his motion, Escort offered to help him complete a chart connecting Escort's production with the accused products – the relief he seeks in his motion. *See, e.g.*, Ex. 3.  Accordingly, Plaintiff's Motion should be denied.


DATED: January 9, 2015                    */s/* J. Walter Sinclair
                                          J. Walter Sinclair
                                          Timothy P. Getzoff
                                          HOLLAND & HART, LLP
                                          800 W. Main Street
                                          Suite 1750
                                          Boise, Idaho  83702
                                          T:  (208) 383-3928
                                          F:  (208) 514-0691
                                          E:  jwsinclair@hollandhart.com

                                          and

                                          Gregory F. Ahrens
                                          Brett A. Schatz
                                          WOOD HERRON & EVANS LLP
                                          2700 Carew Tower
                                          441 Vine Street
                                          Cincinnati, Ohio 45202
                                          T:  (513)-241-2324
                                          F:  (513)-241-6234
                                          E:  gahrens@whe-law.com
                                          E:  bschatz@whe-law.com


                                          Counsel for Defendants
                                          Escort, Inc. and Beltronics USA, Inc.


**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 13

CERTIFICATE OF SERVICE

       I hereby certify that on January 9, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means with a sealed filing notification, as more fully reflected on the Notice of Electronic Filing. I further certify that on such date I served an unsealed version of the foregoing via email on the following:

| | |
|---|---|
| Michael S. Dowler<br>Park, Vaughn, Fleming & Dowler LLP<br>mike@parklegal.com | Brian P. Muething<br>Keating Muething & Klekamp PLL<br>bmuething@kmklaw.com |
| Steven F. Schossberger<br>Hawley Troxell Ennis & Hawley, LLP<br>sschossberger@hawleytroxell.com | Rachael A. Rowe<br>Keating Muething & Klekamp PLL<br>rrowe@kmklaw.com |
| Bradlee R. Frazer<br>Hawley Troxell Ennis & Hawley, LLP<br>bfrazer@hawleytroxell.com | Brian J. Yoder<br>Keating Muething & Klekamp PLL<br>byoder@kmklaw.com |
| Keely E. Duke<br>Duke Scanlan & Hall, PLLC<br>ked@dukescanlan.com | |

                                                                             */s/* J. Walter Sinclair
                                                                               of Holland & Hart, LLP

**DEFENDANTS' ESCORT INC. AND BELTRONICS USA, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL (DKT NO. 196) page** 14