Michael S. Dowler
Park, Vaughan, Fleming & Dowler LLP
5847 San Felipe, Suite 1700
Houston, TX  77057
Telephone:  713.821.1540
Facsimile:  713.821.1401
Email:  mike@parklegal.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>　　　　　Plaintiff,<br>v.<br><br>ESCORT, INC., ET. AL,<br><br>　　　　　Defendants. | Case No. 1:12-cv-0066-BLW<br><br>PLAINTIFF'S SECOND MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE |

　　　　The Court recently found that defendants and certain defense counsel committed fraud in this case.  Specifically, the Court found that defendants and counsel conspired to procure a false verdict by advancing non-infringement defenses based on source code they knew the accused products never used.  (Dkt. Nos. 178 and 208.)

　　　　Mr. Fleming now has discovered that defendants' efforts to conceal their infringement did not stop with their fraudulent advancement of fake source code.  Specifically, Mr. Fleming has discovered that—during the pendency of this case—defendants destroyed source code they installed in the accused 9500ix product ten days after the jury (in the parties' first case) found prior versions of that product infringed Mr. Fleming's patents.  In other words, desperate to not lose another infringement case, defendants intentionally destroyed some of the exact evidence that would prove defendants' continuing infringement.

　　　　Defendants' actions are so inexplicable, improper, and devastating to Mr. Fleming's

infringement proofs that Mr. Fleming requests spoliation sanctions in the form of a directed verdict of infringement on each accused 9500ix product subject to defendants' spoliation, as well as an award of his attorney fees and costs associated with this motion.

## FACTUAL BACKGROUND

Mr. Fleming filed this case on February 13, 2012 (Dkt. No. 2), and he served his infringement contentions pursuant to Dist. Idaho Loc. Patent R. 3.1 on August 6, 2012 (Exh. 1). Mr. Fleming's complaint and infringement contentions identify the Passport 9500ix as one of several products alleged to infringe Mr. Fleming's patents.  (Dkt. No. 2 at ¶¶ 52, 59, and 66; Exh. 1 at p. 2.)

Each accused product contains one or more microprocessors whose internal code controls the operation of the microprocessor and, therefore, the operation of the product itself.  As a consequence, a product's code often is some of the best evidence of infringement in a patent case.  Indeed, as the Court may recall, trial of the parties' first case involved extensive testimony by both parties regarding the accused products' code.

The Court's Local Patent Rules confirm the importance of an accused product's code by requiring—in all patent cases—that the defendant produce the code for each accused product, and that the defendant further identify the produced code by production number.  (Dist. Idaho Loc. Patent R. 3.4(a).)  Specifically, Local Patent Rule 3.4 states:

> With the "Invalidity Contentions," the party opposing a claim of patent infringement shall produce or make available for inspection and copying:
>
> (a)   Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its [infringement contentions].
>
> \* \* \* \* \* \* \* \* \* \*
>
> The producing party shall separately identify by production number which

documents correspond to each category.

(Dist. Idaho Loc. Patent R. 3.4.) This production and identification of code is to be made independent of the parties' discovery requests (Dist. Idaho Loc. Patent R. 2.5), and made forty-two days after Mr. Fleming served his infringement contentions (Dist. Idaho Loc. Patent R. 3.3), which means defendants were obligated to identify and produce all the code actually used by all the accused products approximately 2.5 years ago.

The Court has similarly acknowledged—in this case—defendants' obligation under Rule 3.4, when holding: "[t]he Court's Local Rules required Escort to produce the source code that operated the accused devices". (Dkt. No. 178, Order at p. 4; *see also id.* at pp. 9-10 ("All of this could have been avoided if Escort had provided the source code that actually operated the Pro 500 as required by Local Rule 3.4(a), instead of producing ESC17363 that Escort knew was not being used to operate any accused device.").)

Despite defendants' obligation under the Court's Rules to have identified and produced its code years ago, defendants' repeated failures to do so have been beyond shocking. For example, the Court recently found that defendants and certain defense counsel committed fraud in their pleadings, Local Patent Rule disclosures, discovery responses, and party correspondence by pleading and knowingly producing false source code (at bates label ESC17363) as the basis for all of defendants' non-infringement contentions.

> In this case, Escort's counsel represented that ESC17363 operated Escort's accused devices knowing that ESC17363 did not operate any accused device. This false representation was beyond reckless and was made in bad faith because Escort's counsel knew it was not true. The Court will therefore award attorney fees as sanctions under both § 1927 and the Court's inherent power.

(Dkt. No. 178, Order at p. 10; *see also*, Dkt. No. 208, Order at p. 4 ("[t]his is just the type of fraud that opens up all communications related to ESC17363 to discovery").)

3

Nor is this the only time that defendants sought to fraudulently procure a favorable jury verdict by advancing false source code. Specifically, Mr. Fleming has discovered a second instance of defendants producing still more false code in an effort to fraudulently avoid an infringement verdict. As Mr. Fleming's motion papers show, the accused GX65 product generates a directional arrow as shown in the photograph below. (Dkt. No. 182, Motion at pp. 7-13.)[1]



That arrow is a telltale sign that the GX65 infringes the portion of Mr. Fleming's asserted patent claims calling for "generating a visual indication…" (*Id.*) Nevertheless, the code files defendants produced as allegedly corresponding to that product (ESC18692) do not generate that directional arrow. Defendants now admit in their opposition papers that the GX65 code they produced (ESC18692) to Mr. Fleming was *never* commercially used and was *doctored* to remove the infringing functionality before it was produced. (Dkt. No. 198, Reply Br. at pp. 4-10.)

As shocking as it may be, this still is not the end of defendants' all out effort to conceal their infringement and procure a fraudulently induced jury verdict. For example, defendants recently admitted they failed to preserve physical specimens of the accused products.

> You asked if Escort retains a physical specimen of each revision of each accused product. It does not appear that Escort possesses an individual radar detector for each of the prior software versions that have been released.

(Exh. 2, party correspondence.) As shown in Mr. Fleming's motion papers on this issue, defendants despoiled their accused products in an effort to preclude Mr. Fleming from using them to prove infringement and to cut him off from using the products to prove defendants

---

[1] The Court has not yet ruled on Mr. Fleming's motion.

produced still more false source code, as he did in connection with the GX65 described above. (Dkt. No. 221, Plaintiff's Motion for Sanctions Due to Spoliation of Evidence and Fraud.)[2]

Now, most recently, Mr. Fleming has discovered defendants' latest effort to conceal their infringement. Specifically, Mr. Fleming has learned that defendants despoiled the code that runs the 9500ix product. As described below, we know exactly what that code is from defendants' Product Compatibility Logs, which the Court has recognized are logs defendants keep that identify which code has been installed in which commercial product. (Dkt. No. 178, Order at p. 5 ("Escort produced Product Compatibility Logs showing the source code used by each of the accused devices.").)

The Product Compatibility Logs for the 9500ix show that on July 13, 2012—ten days after the jury in the parties' first case held that prior versions of the 9500ix infringed Mr. Fleming's patents—defendants updated the software in the 9500ix. (Exh. 3, July 3, 2012 Jury Verdict.) Specifically, on July 13, 2012, defendants loaded revision T of the 9500ix with main processor code file-named "9500ix_main_v6_63_b6.hex". (Exh. 4, Product Compatibility Log: 9500ix, at Revision T.) Similarly, on July 13, 2012, defendants loaded revision E of the 9500ix (Red) with main processor code file-named "9500ix_main_v7_63_b6.hex". (Exh. 5, Product Compatibility Log: 9500ix Red, at Revision E.) The parties understand and agree that the nomenclature for these code files is more simply referred to as main processor code Version 63.

All subsequent revisions of the 9500ix also use main processor code Version 63. (Exh. 4, Product Compatibility Log: 9500ix, at Revisions U-AA; Exh. 5, Product Compatibility Log: 9500ix Red, at Revisions F-L.) None of this is disputed, nor could it be since all of it is reflected in defendants' own documents, as the above citations show.

---

[2] The Court has not yet ruled on Mr. Fleming's motion.

Three other critical issues are not disputed. First, defendants have refused/failed to produce main processor code Version 63 to Mr. Fleming. Second, instead of producing code Version 63 for the 9500ix, defendants have produced code Version 62 and code Version 64. (Exh. 6 at Response to Interrogatory No. 13.) Third, code Versions 62 and 64 have *never* been used commercially in any 9500ix product. (Exhs. 4-5.) As it stands, the whereabouts of the code actually used in the 9500ix—code Version 63—is a mystery defendants have vexatiously refused to address.

Specifically, Mr. Fleming has corresponded with defendants for many, many months regarding Version 63 and other code files. Prior defense counsel were never willing to explain why they would not produce Version 63. (Exh. 7.) With the recent appearance by replacement counsel in this case, Mr. Fleming hoped there would be a change of approach. Thus, Mr. Fleming's counsel spent approximately one hour on the phone explaining the problems associated with missing Version 63 and many other missing code files. Mr. Fleming's counsel followed that phone call up with detailed spreadsheets, again explaining the problems with defendants' code production, including missing files. (Exh. 8.)

Several days later, defense counsel doubled-down by claiming defendants had produced "all" code files for all accused products.

> I confirm that Escort has produced all Source Code and Binary Code, to the best of their knowledge and belief, that you inquired about in your letter of June 9, 2014 and your Motion to Compel (Dkt 196). If there is anything missing, it is unknown to me (or anyone I have discussed this with), but if you become aware of anything you believe may be missing, please let me know and I will follow up immediately.

(Exh. 9.) Shocked, Mr. Fleming's counsel responded as follows:

> Two days ago, I spent an hour on the phone with you (and Tim) explaining the missing code files. I followed up by sending you a detailed spreadsheet specifically pointing out all the deficiencies we presently know about in Escort's production of code files. In that timeframe, you cannot possibly have investigated

6

> each of the missing files as identified in that spreadsheet, and yet we are in receipt of your email below saying "Escort has produced all Source Code and Binary Code".  <u>The easiest example demonstrating the incorrectness of your claim is Revision 63 of the main processor code for the 9500ix, which we specifically discussed during our call.  Where is that in Escort's production?</u>  As I explained on the phone and as set forth in the spreadsheet we sent, we have specifically identified a number of additional missing files and false productions.
>
> Finally, you telling us that Escort has produced all code files "to the best of their knowledge and belief", respectfully, is not good enough.  As it was with your production of organization charts, Mr. Fleming is not merely entitled to production of the few documents Escort decided to retain during the pendency of this case (giving rise to its claim that "we've produced everything we have").  Mr. Fleming is entitled to production of "all" original code files and organization charts, which should have been preserved in response to a properly issued litigation hold.  While it is clear to us that did not happen and we will litigate that issue with the Court, we're disappointed that you appear to be taking the position that "nothing is wrong because Escort has produced everything it has".

(Exh. 9 (emphasis added).)  Defense counsel responded by refusing to address any of the issues—including the whereabouts of Version 63—outside a "conference" with the Court.  (*Id*. ("[W]e are in agreement with your conclusion and believe a Status Conference and/or Voluntary Case Management Conference would be an excellent format to address these and any other issues which exist between the parties.").)  Mr. Fleming's counsel responded as follows:

> We note your refusal to point out Revision 63 or address any of our other concerns set out in the spreadsheet.  We view this as a violation of Local Patent Rule 3.4, defendants' obligation to preserve evidence, and your obligation to meet and confer.

(*Id*.)  Defense counsel once again steadfastly refused to address any of the code problems, including the whereabouts of Revision 63.  (*Id*.)  As such, Mr. Fleming is filing this motion as a last resort and in response to defendants' obvious spoliation and their vexatious refusal to address that issue with Mr. Fleming.

## **LEGAL BACKGROUND**

Spoliation of evidence is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable

7

litigation." *Apple, Inc. v. Samsung Electronics Co., Ltd.,* 888 F.Supp.2d 976, 989 (N.D. Cal. 2012) (*citing Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir. 2001)). "The obligation to preserve evidence arises when the party reasonably should know the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* at 990. Evidence of spoliation may be grounds for sanctions. *Id*. at 989 (*citing Akiona v. U.S.,* 938 F.2d 158, 161 (9th Cir. 1991)).

Spoliation of evidence raises the presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it. *Id*. at 998 (*citing Hynix Semiconductor v. Rambus,* 591 F.Supp.2d 1038, 1060 (N.D. Cal. 2006), *vacated on other grounds* in *Hynix Semiconductor v. Rambus,* 645 F.3d 1336 (D.C. Cir. 2011)). In the Ninth Circuit, "a party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions." *In re Napster, Inc. Copyright Litigation,* 462 F.Supp.2d 1060, 1066 (N.D. Cal. 2006) (*citing Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir.1993)). The Ninth Circuit has instructed that district courts may impose sanctions even against a spoliating party that merely had "simple notice of 'potential relevance to the litigation.'" *Glover*, 6 F.3d at 1329 (*quoting Akiona v. United States,* 938 F.2d 158, 161 (9th Cir. 1991)).

While the Court has the discretion to impose sanctions, "the sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999). To decide which specific spoliation sanction to impose, courts generally consider three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice

8

suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple*, 888 F.Supp.2d at 992. Prejudice is determined by evaluating whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoliating party to rely on incomplete and spotty evidence. *In re Hitachi,* 2011 WL 3563781 at *6 (*citing Leon v. IDX Systems Corp.,* 464 F.3d 951, 959 (9th Cir. 2006)).

This Court is well aware of a litigant's obligation to preserve evidence. In *United States v. Fed. Res. Corp.,* the Court held:

> [I]f a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.

2012 U.S. Dist. LEXIS 65430, *8 (D. Idaho 2012) (Winmill, J.). Likewise, in *Scentsy, Inc. v. B.R. Chase, L.L.C.,* the Court held:

> The Court has serious concerns with Scentsy's retention policy and litigation hold process. Generally not deleting documents, and orally requesting certain employees to preserve relevant documents concurrently with filing a lawsuit, is completely inadequate. It is very risky – to such an extent that it borders on recklessness.

2012 U.S. Dist. LEXIS 143633, *20 (D. Idaho 2012) (Winmill, J.).

## **ARGUMENT—EVIDENTIARY SANCTIONS**

This is a patent infringement case where the structure, function, and operation of the accused infringing products will determine the outcome of the case. As such, it is beyond dispute that defendants should have preserved the code actually used by the 9500ix, *i.e.,* the code defendants loaded into the 9500ix ten days after a jury found that prior versions of that product infringed Mr. Fleming's patents. Indeed, the fact that defendants despoiled the exact code at issue in this case is so inexplicable that its impropriety rivals defendants' earlier, fraudulent disclosure of knowingly false source code associated with all the accused products. (Dkt. Nos.

178 and 208, Orders finding fraud.)  Because defendants' destruction of evidence is so improper and devastating to Mr. Fleming's case, Mr. Fleming requests spoliation sanctions in the form of a directed verdict of infringement on each accused 9500ix product that is controlled by the destroyed source code.

Defendants' duty to preserve the 9500ix code arose at least as early as March 2009, when the parties' first case was filed accusing defendants' radar detectors of infringement.  (*Fleming v. Escort, et al.,* Case No. 1:09-cv-105-BLW at Complaint.)  Since the Product Compatibility Logs for each accused 9500ix product show each was manufactured after 2009 (Exhs. 4-5; *infra* at p. 12), defendants were under a duty to preserve all code for those products.  *United States v. Fed. Res. Corp.,* 2012 U.S. Dist. LEXIS 65430, *8 (D. Idaho 2012) (Winmill, J.) ("[I]f a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.").

Defendants do not dispute that they despoiled code Version 63 for the 9500ix, despite doing their best to vexatiously avoid all such inquiries and disingenuously averring that they have produced "all" code they possess.  Accordingly, because Version 63 is the only code that operates the main processor in the accused 9500ix products, defendants have despoiled some of the exact evidence Mr. Fleming needs prove his case.  (Dkt. No. 178, Order at p. 4 ("[t]he Court's Local Rules required Escort to produce the source code that operated the accused devices"; *see also id.* at pp. 9-10 ("All of this could have been avoided if Escort had provided the source code that actually operated the Pro 500 as required by Local Rule 3.4(a), instead of producing ESC17363 that Escort knew was not being used to operate any accused device.").)  Indeed, as the Court will recall, both parties relied heavily on the accused products' code files during their first case.

Defendants' argument that their production of code Versions 62 and 64 is somehow good enough lacks any merit whatsoever and appears to be a cover-up for their on-going efforts to conceal their infringement.  First, defendants' production of Versions 62 and 64 unwittingly acknowledges they despoiled Version 63 under exceedingly compromising circumstances, *i.e.*, Version 63 is the code defendants loaded into the 9500ix ten days after the jury found prior versions of that product infringed Mr. Fleming's patents.  (Exhs. 3-5.)  Second, it is undisputed that no commercial version of the 9500ix (or any other commercial product) ever used Versions 62 or 64.  (Exhs. 4-5; *see also*, Dkt. No. 178, Order at pp. 8-12 (finding fraud for defendants' production of, and reliance on, non-commercial code).)  Third, Versions 62 and 64 obviously say nothing about the substance of Version 63 for the same reason the second version of this motion looks nothing like its first or third version—key facts, arguments, and legal positions have changed from version to version.  Indeed, without Version 63, it is impossible even to say what the differences are between that Version and Versions 62 and 64.

Defense counsel's recent refusal to even discuss these issues, much less produce Version 63, outside a "status conference" with the Court is plainly vexatious and a waste of everyone's time.  No one needs a status conference to get defendants to produce Version 63 in compliance with Patent Local Rule 3.4, nor does anyone need a status conference for defendants to address their spoliation of that code or their production of "substitute" code that irrefutably is both different and unused by any commercial product.  Worse, defense counsel's claim to the effect that "all is fine because defendants produced all the code they possess" is at best disingenuous because it so plainly ignores defendants' obligation to preserve the code files actually used by the 9500ix. (Dkt. No. 178, Order at pp. 9-10 ("All of this could have been avoided if Escort had provided the source code that actually operated the Pro 500 as required by Local Rule 3.4(a),

instead of producing ESC17363 that Escort knew was not being used to operate any accused device.").) In the end, as the Court already has found in this case, Mr. Fleming is entitled to the code that was actually used in the accused 9500ix products, and the simplicity with which defendants could have complied with their preservation obligation belies any excuse they now have for violating that obligation.

Finally, where, as here, spoliation is shown, the burden of proof shifts to defendants to show that no prejudice resulted from their spoliation. *Apple*, 888 F.Supp.2d at 998; *In re Hitachi*, 2011 WL 3563781 at *6. As explained above, all of the evidence shows Mr. Fleming's dire need for Version 63. No evidence shows otherwise. As such, defendants' spoliation has usurped Mr. Fleming's ability to prove infringement and counter certain of defendants' defenses, such as non-infringement and non-infringement due to license (because the 9500ix accused in this case allegedly is impermissibly similar to the 9500ix in the parties' first case). The only reasonable remedy in these circumstances is for the Court to direct a verdict of infringement as to the products subject to defendants' spoliation, which consist of those in the chart below.

| Product | Revisions |
|---|---|
| 9500ix Red | E, F, G, H, I, J, K, and L |
| 9500ix | T, U, V, W, X, Y, Z, and AA |

### ARGUMENT—MONETARY SANCTIONS

Monetary sanctions may be imposed where one party has wrongfully destroyed evidence. *See, e.g., Scentsy, Inc. v. B.R. Chase, L.L.C.,* 2012 U.S. Dist. LEXIS 143633, *25 (D. Idaho 2012) (Winmill, J.); *National Ass'n of Radiation Survivors,* 115 F.R.D. 543, 558-59 (C.D. Cal. 1987); *Personalweb Technologies, LLC v. Google, Inc.,* 2014 U.S. Dist. LEXIS 116132 (N.D. Cal. 2014).

Here, defendants admit they despoiled code Version 63, and defendants' dealings with

Mr. Fleming on the issue have been blatantly vexatious.  Because defendants have violated the most basic tenant of litigation (to preserve evidence), and because that violation has caused Mr. Fleming to incur the cost and expense of investigating and proving it, Mr. Fleming also requests that he be made whole through an order compelling defendants to reimburse all of Mr. Fleming's associated costs and legal fees, as is customary in such situations.  (*See e.g.,* Dkt. No. 208, Order awarding fees for defendants' fraud and vexatious conduct.)  Indeed, as this Court has previously ruled:

> The spoliation issue is a bit different.  While it is unlikely that relevant documents were destroyed, we can never be certain.  That uncertainty, which can only be attributed to Scentsy's inadequate retention policies and litigation hold, is very troubling to the Court.  Moreover, the Court views spoliation as a very serious matter with potentially serious consequences for the parties.  Accordingly, the Court has, in essence, sanctioned Scentsy by requiring it to pay the deposition costs as outlined above, and by giving Scentsy a shot across the bow that if there is evidence that spoliation occurred, future consequences will be harsh.

*Scentsy,* 2012 U.S. Dist. LEXIS 143633, *25 (D. Idaho 2012) (Winmill, J.).


February 4, 2014					Respectfully Submitted

						        /s/
						Michael S. Dowler
						Park, Vaughan, Fleming & Dowler, LLP
						5847 San Felipe, Suite 1700
						Houston, TX 77057
						(713) 821-1540
						(713) 821-1401 (facsimile)

						Attorneys for Plaintiff Hoyt A. Fleming

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 4th day of February 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing. To the extent any of the foregoing was filed under seal, each of the following parties or counsel was served by email.

| | |
|---|---|
| Brian P. Muething<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202<br><br>J. Walter Sinclair<br>Holland & Hart LLP<br>800 West Main Street, Suite 1750<br>Boise, ID 83702<br><br>Timothy P. Getzoff<br>Holland & Hart LLP<br>800 West Main Street, Suite 1750<br>Boise, ID 83702 | Bryce J. Yoder<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202<br><br>Rachael A Rowe<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202<br><br>Keely E. Duke<br>Duke Scanlan Hall PLLC<br>1087 W. River Street, Suite 300<br>Boise, ID 83702<br><br>Robert B. White<br>Givens Pursley LLP<br>601 West Bannock Street<br>Boise, ID 83702 |

/s/
Michael S. Dowler