IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>    Plaintiff,<br><br>    v.<br><br>ESCORT, INC., et al.,<br><br>    Defendants. | Case No.  1:12-CV-066-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it two motions to compel and for sanctions filed by plaintiff Fleming. The motions are fully briefed and at issue. For the reasons explained below, the Court will grant the motions to compel but deny the request for sanctions.

## LITIGATION BACKGROUND

Fleming filed this action (*Fleming II*) against Escort and twenty of its distributors – referred to as the Customer Defendants – claiming that the radar detectors they sold infringed Fleming's '038, '653, and '905 patents. This action follows an earlier action (*Fleming I*) in which a jury found that Escort had infringed certain claims of the '038 and '653 patents, and awarded Fleming $750,000. The Court later increased that award to $1.4 million, a sum that included a sanction against Escort's counsel for vexatious conduct in discovery. The Federal Circuit affirmed those rulings, *see Fleming v. Escort,* 2014 WL 7332614 (Fed.Cir. Dec. 24, 2014), and the *Fleming I* case has now been closed.

This action – *Fleming II* – is referred to as a "customer suit" because it

Memorandum Decision & Order -- 1

is an action against the manufacturer's customers (as well as the manufacturer) who are allegedly distributing the allegedly infringing devices. The Customer Defendants include companies such as Amazon, Best Buy, and Sears.

During the discovery phase of this action, Fleming asked Escort to turn over any indemnity agreements between itself and its customers, and any product descriptions such as owner's manuals, user guides, and videos. When Escort did not produce the material to which Fleming felt entitled, Fleming filed the two motions to compel now at issue. The Court will consider each in turn, starting with the motion to compel the indemnity agreements.

## ANALYSIS

### Motion to Compel Indemnity Agreements

Fleming is asking Escort to produce all indemnity agreements in which Escort agreed to indemnify its customers for their losses if their sales of Escort products were found to be infringing. Escort has refused Fleming's request, claiming that any such agreements, if they exist, are protected by the attorney-client privilege. Fleming responded by filing the motion to compel now before the Court.

The Court begins its analysis by finding that the indemnity agreements constitute "discovery [that] appears reasonably calculated to lead to the discovery of admissible evidence." *See Rule 26(b)(1)*. One of Fleming's claims is that Escort induced the Customer Defendants to infringe Fleming's patents. The indemnity agreements are relevant to this claim because they may have been granted by Escort to induce the Customer Defendants to sell the allegedly infringing products. *See MEMC Electronic*

Memorandum Decision & Order -- 2

*Materials, Inc. v. Mitsubishi Materials,* 420 F.3d 1369, 1378-79 (Fed.Cir. 2005) (stating that indemnity agreement may provide some evidence of an intent to induce infringement).

Escort argues, however, that any indemnity agreements are protected by the attorney-client privilege – more specifically by the joint defense privilege.  The Ninth Circuit has long recognized that the joint defense privilege is "an extension of the attorney-client privilege."  *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).  The privilege arises out of a joint defense agreement between "persons who share a common interest in litigation" and the privilege is designed to allow them "to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *Id.* at 978.  No written joint defense agreement is required, and it can be inferred "from consultation among clients and counsel allied in common legal cause . . . ." *Id.* at 979 (summarizing with approval the holding in *In re Regents of Univ. of Cal.,* 101 F.3d 1386, 1389 (Fed.Cir.1996) ).

A party claiming the joint defense privilege bears the burden of showing "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Fidelity National Title Insurance Co. v. Castle,* 2014 WL 3945590 at *3 (N.D. Cal. Aug. 11, 2014).  A joint defense or common defense privilege "protects only those communications that are part of an on-going and joint effort to set up a common defense strategy." *Id.*

**Memorandum Decision & Order -- 3**

In *Gonzalez,* the party asserting a joint defense privilege filed the declaration of his counsel stating generally that he and his client had consulted with another defendant and her attorney "for the purpose of preparing a joint defense strategy and . . . shar[ed] . . . confidential information." *Gonzalez,* 669 F.3d at 979. This, along with some similar deposition testimony, was sufficient to infer the existence of a joint defense agreement and the privilege that accompanies that inference. *See also Holmes v. Collection Bureau of America Ltd.,* 2010 WL 143484 (N.D.Cal. Jan. 8, 2010) (finding joint defense privilege where "counsel for both defendants submitted sworn declarations that they agreed to pursue a joint defense strategy . . .and to communicate with each other regarding their shared legal interests").

In contrast, Escort has refused to provide any evidence that a joint defense agreement exists. Escort has filed no affidavits, produced no privilege log, and requested no *in camera* inspection. In response to Fleming's discovery requests, Escort stated that "we decline your request for details regarding whether any such agreements exist, and details such as the parties, signatories, and date entered." *See Letter (Dkt. No. 140-6).* It is true that in its briefing here, Escort does assert that it "has cooperated with the other named defendants, and taken the lead, in furtherance of their common legal goal of defending against Fleming's claims." *See Brief (Dkt. No. 140).* But this single sentence in a brief is hardly sufficient to satisfy Escort's burden of raising an inference that the parties have communicated with each other and are pursuing some common strategy. *See In re Rivastigmine Patent Litigation,* 2005 WL 2319005 at *1 (S.D.N.Y. 2005) (refusing in a patent case to find a joint defense privilege where the proponent failed to file "any

**Memorandum Decision & Order -- 4**

affidavit or deposition testimony describing any such strategy"). And even if that lone sentence can be taken as some evidence of an agreement, Escort quickly retreats from that inference in its very next sentence: "Any indemnification agreements that exist . . . ." *Brief, supra,* at p. 7. By refusing to acknowledge even the existence of such agreements, Escort fails to raise an inference that they exist.

For these reasons, The Court will grant Fleming's motion to compel production of the indemnity agreements. The Court cannot find that sanctions are warranted and will deny that portion of Fleming's motion.

**Motion to Compel Product Descriptions**

Fleming has requested Escort to turn over all owner's manuals, user's guides, videos, and other instructional literature concerning the allegedly infringing Escort products. Escort responded that it has already turned over "representative examples" of this material and therefore satisfied its discovery obligation. Fleming then filed the motion to compel that is now pending before the Court.

The Court begins its analysis by finding that owner's manuals, user's guides, videos, and other instructional literature constitute "discovery [that] appears reasonably calculated to lead to the discovery of admissible evidence." *See Rule 26(b)(1).* Escort uses this product literature to instruct customers on how to operate its devices – those instructions may be relevant to Fleming's claim that Escort induced its customers to infringe Fleming's patents. *See EON Corp, V. LFO TV Inc.,* 2013 WL 5882005(D.Del. July 18, 2013) (compelling production of "operation manuals, owner manuals and the like" after finding they were relevant to claim for inducement of infringement).

**Memorandum Decision & Order -- 5**

Escort argues, however, that Fleming's request is cumulative and burdensome. Under the proportionality provisions of Rule 26(b)(2)(C), discovery otherwise allowed might be limited because the burden or expense of its production outweighs its likely benefit, or because the discovery sought is unreasonably cumulative.

To support its burdensome claim, Escort submitted the affidavit of Timothy Coomer, Escort's Vice President of Product Development, who states as follows:

> In order to produce "all" responsive documents, unlimited as to time, Escort would have to search its entire records of two separate facilities. Escort would also have to request several different employees to search all of their records. These employees would have to search both paper files, and electronic files on their computers. Producing "all" "owner's manuals, user's guides, videos, and other instructional literature" would also require several Escort employees to search Escort's historical records, including those saved via Escort's servers. These efforts would amount to a significant burden on Escort. I estimate that at least five different Escort employees would have to spend several hours each searching for such information.

*See Coomer Affidavit (Dkt. No. 155-9) at ¶¶ 2-5.* In other words, Escort would need to expend about 15 man hours to locate the product literature. That is, at best, a moderate burden, easily outweighed by the benefit that the discovery might provide in proving the required mental state for inducing infringement. *Microsoft Corp. v. DataTern, Inc.,* 755 F.3d 899, 905 (Fed.Cir. 2014) (holding that "[p]roviding instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement").

The Court would also note Coomer overstated the burden because he assumed that Fleming's request was "unlimited as to time." In fact, the request is limited to the allegedly infringing products sold "between the time of Fleming's complaint and trial." *See Fleming Brief (Dkt. No. 163) at p. 9.*

**Memorandum Decision & Order -- 6**

Escort also argues that it has already provided a "representative sample" of the product literature, and that any additional production would be unnecessarily cumulative. Yet how could Escort know that their sample is "representative" when they have not searched through two separate facilities where these records may be kept, according to Coomer? The Court can find no merit in this argument.

For all of these reasons, the Court will grant the motion to compel the product literature. Once again, the Court cannot find that sanctions are warranted.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to compel (docket no. 137) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to compel Escort to answer Fleming's discovery requests for all indemnity information. It is denied to the extent it seeks sanctions.

IT IS FURTHER ORDERED, that the motion to compel production of product descriptions (docket no. 146) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks to compel Escort to answer Fleming's discovery requests for all owner's manuals, user's guides, videos, and other instructional literature concerning the allegedly infringing Escort products. It is denied to the extent it seeks sanctions.



DATED: February 13, 2015

_____
B. Lynn Winmill
Chief Judge
United States District Court

Memorandum Decision & Order -- 8