IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING, | |
| Plaintiff, | Case No.  1:12-CV-066-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ESCORT, INC., et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it two motions filed by Fleming (a second motion for terminating sanctions and a motion to compel and for sanctions) and three motions filed by Escort (a motion for protective order, a motion for an order to show cause and for sanctions, and a motion for a hearing).  The motions are fully briefed and at issue.  The Court will (1) grant in part Fleming's motions, and (2) grant Escort's motion for a hearing, and deny its motion for protective order and motion for an order to show cause and for sanctions.  The Court's analysis is set out below.

## ANALYSIS

### Escort's Motion for Protective Order

Escort has moved for a protective order to prohibit Fleming from seeking any discovery concerning Fleming's claim that Escort fabricated source code ESC17363.  In the Court's earlier decision, the Court found that Escort misled Fleming in the production of ESC17363 – source code allegedly used to operate the Pro 500 device – and awarded

**Memorandum Decision & Order – page 1**

attorney fees to Fleming.  *See Memorandum Decision (Dkt. No. 178)* (holding that Escort misrepresented that certain source code identified as ESC17363 operated the Pro 500 device); *Memorandum Decision (Dkt. No. 208)* (awarding $341,649 to Fleming in attorney fees for Escort's misrepresentation regarding the source code operating the Pro 500 device).  In reaching that result, the Court reasoned as follows:

> The Court will assume the truth of Escort's representations that it did not fabricate ESC17363, and that it intended to eventually use it to operate Escort's accused devices.  To find otherwise would require an evidentiary hearing following discovery. While discovery may reveal fabrication – and support a renewed motion by Fleming at that time – the Court cannot now find, on the basis of this record, that Escort has fabricated the source code contained in ESC17363.  However, assuming ESC17363 was not fabricated does not resolve this motion in Escort's favor. Even with this assumption, Escort's production of ESC17363 was misleading and caused Fleming to waste considerable resources holding Escort to account.

*See Memorandum Decision (Dkt. No. 178)* at p. 9.  The discovery process concerning the fabrication issue, contemplated in the Court's decision quoted above, is now underway. Fleming has propounded discovery requests to Escort on the fabrication issue, and Escort has responded to that request.

Escort now argues that "[t]hrough those discovery responses,  . . . Escort demonstrated that Escort and its counsel did not 'fabricate' lines of source code . . . [a]nd there could be no mistake about this because Escort's discovery responses show that these lines of source code actually operate Escort's products."  *See Escort Brief (Dkt. No. 170)* at p.1.  By this argument, Escort is seeking summary judgment in the guise of a request for a protective order.  The Court rejects this attempt.

**Memorandum Decision & Order – page 2**

Escort argues next that Fleming is not entitled to discovery on this issue because whether it fabricated ESC17363 is irrelevant. The Court has fully addressed this argument in a prior decision, *see Memorandum Decision (Dkt. No. 208)* and will not repeat that full discussion here. It is enough to say that Escort has made fabrication an issue by asserting that lines of code in ESC17363 operate Escort's products and provide a defense to infringement. Fleming is entitled in discovery to test the validity of that defense. Moreover, Escort has opened the door to Fleming's charge of fabrication by committing misrepresentations about ESC17363 discussed in the Court's earlier decisions, cited above.

Finally, Escort argues that Fleming has abandoned its argument that ESC17363 was fabricated. However, Fleming's response brief shows clearly that it has not abandoned this issue.

For all of these reasons, the Court will deny Escort's motion for protective order. The proper course is to allow a period of time for discovery and then resolve the issue by motion. The Court will set up a schedule to resolve this issue at the hearing that is discussed below.

## Escort's Motion for Sanctions & Request for Order to Show Cause

In this motion, Escort basically repeats the arguments it made in its motion for protective order, just discussed. For the same reasons, the Court will deny this motion.

## Fleming's Second Motion for Terminating Sanctions

In this motion, Fleming claims that Escort has committed a new misrepresentation almost identical to the one just discussed regarding the source code responsible for

**Memorandum Decision & Order – page 3**

operating the Pro 500 device.  In this new claim, Fleming asserts that Escort produced in discovery certain source code that it misrepresented operated the GX65 device.  Fleming asks the Court to find that this misrepresentation warrants entering judgment in Fleming's behalf.  Escort responds that the facts are much different this time.

This dispute began when Fleming asked for the source code that operates Escort's GX65 device, and Escort responded by producing a CD labeled with the bates number ESC18692.  That CD contained source code labeled Version 3.46, yet Escort had earlier represented to Fleming in its Product Compatibility Log that the GX65 was operated by Version 2.46.  Indeed, that Log contained a full list of the source code iterations that operated Escort's devices and Version 3.46 was not on that list, meaning that it never operated any of Escort's commercial products.

Moreover, Version 3.46 is an updated version of Version 2.46.  While the older version – Version 2.46 – displays an arrow on the driver's screen that identifies the location of the radar, the updated version – Version 3.46 – does not display an arrow.  That difference is crucial:  One of Fleming's claims is that the arrow display infringes his '905 patent.

There is nothing nefarious about a company updating its source code to drop an element that might be infringing.  But Fleming alleges that Escort has (1) committed a fraud by attempting to pass off the source code contained in the CD (ESC18692) as the source code that operates the GX65; (2) committed spoliation by destroying the Version 2.46 source code that actually operates the GX65; and (3) caused Fleming to incur substantial fees and costs to uncover the deceitful production of ESC18692.

**Memorandum Decision & Order – page 4**

The Court finds first that Escort has not attempted to mislead counsel or the Court about the source code that actually operates the GX65. Before producing the CD (ESC18692), Escort revealed in its Log that the GX65 was operated by Version 2.46. Moreover, the CD itself contains Version 2.46 embedded in Version 3.46. *See Dr. Grindon Declaration (Dkt. No. 192-4)* at ¶¶ 16-17 (explaining how to transform Version 3.46 on the CD into Version 2.46). Although there are serious problems with Escort's production of the CD – which will be discussed below – Escort has never attempted to conceal the fact that the GX65 was operated by a version of the source code that displayed the allegedly infringing arrow. *See also Escort Letter to Fleming of June 20, 2014 (Dkt. No. 192-1)* at p. 3 (wherein Escort tells Fleming that the "Log . . . shows that [Version 2.46] is what has been compiled into each production unit GX65 shipped by Escort"). Moreover, Escort cannot be guilty of spoliation because Version 2.46 exists, both on the CD (embedded in Version 3.46), and in a stand-alone version (as revealed by Escort's expert Dr. Grindon, to be discussed further below). The Court will therefore deny that part of Fleming's motion that seeks a finding that Escort committed fraud, produced false evidence, or committed spoliation.

But Fleming is on much stronger ground in arguing that Escort needlessly forced it through a wasteful discovery process. Escort produced the CD representing that it contained the source code used to operate the GX65 but failed to tell Fleming that it would have to modify the Version 3.46 on the CD to obtain Version 2.46. This forced Fleming to examine 20,000 lines of code searching for Version 2.46.

**Memorandum Decision & Order – page 5**

Fleming eventually figured out that modification of some lines of code in Version 3.46 would produce the allegedly infringing arrow.  But this was far from being able to reproduce Version 2.46.  Fleming complained in a letter to Escort that he did not understand how the CD could contain the source code that operated the GX65:  "The source code produced at ESC18692 cannot generate a [Version 2.46] . . . ."  *See Fleming Letter to Escort Dated June 4, 2014 (Dkt. No. 192-1)* at p. 3.

Escort claims that it responded to Fleming's complaint by explaining how to transform Version 3.46 into Version 2.46 in a letter dated June 20, 2014.  But that letter contains no such explanation.  Escort did produce a full explanation but not until responding to the motion now at issue.  In that response, Escort filed the Declaration of its expert, Dr. Grindon, who explained how to transform Version 3.46 into Version 2.46. His explanation is not remotely similar to anything in the letter of June 20, 2014.

But this entire discussion is a red herring.  Escort had a duty to produce Version 2.46, not to produce something else, leaving it up to Fleming to figure out how to transform it into what Escort should have produced in the first place.  Escort's claim that Version 2.46 could only be produced in a single format – that is, embedded in Version 3.46 – is false.  *See Escort's June 20, 2014 Letter, supra,* at p. 2 (wherein Escort claims that "it was not possible to produce a source code file to you that would contain only a single version of source code").  Escort's own expert, Dr. Grindon, testified that Escort provided him with a stand-alone Version 2.46 that was not embedded in Version 3.46. *See Grindon Declaration (Dkt. No. 192-4)* at ¶¶ 11-13. Regardless, if the transformation

was as easy as Escort alleges, Escort should have completed the transformation *before* producing the source code.

Once again, Escort has caused Fleming to undergo needless and wasteful discovery expenses.  Consequently, the Court will once again award attorney fees to Fleming to reimburse it for these unnecessary fees and expenses.

In conclusion, the Court will grant in part and deny in part Fleming's second motion for terminating sanctions.  The Court will grant that part of the motion seeking attorney fees and costs Fleming incurred because of the manner in which Escort produced ESC18692.  The remainder of the motion is denied.

## Escort's Motion for a Hearing

Escort has moved for a hearing on Fleming's second motion for terminating sanctions.  The Court will grant that request.  At the hearing, both parties may ask the Court to reconsider its ruling above.  The Court will not award any precise amount of fees and costs until it hears the arguments of counsel at that hearing.  The Court will direct Fleming to file within ten days an affidavit of the fees and costs it incurred in attempting to obtain Version 2.46 from ESC18692.  At the hearing, in addition to arguments seeking reconsideration, the Court will hear any argument concerning Fleming's affidavit of fees and costs.

## Fleming's Motion to Compel & for Sanctions

Fleming has filed a motion to compel Escort to identify for each revision of each accused product the binary code, source code and project files actually loaded into the main processor and the GPS processor of each product.  Fleming has prepared a chart for

Escort to complete by providing all of this information. *See Fleming Brief (Dkt. No. 196)* at pp. 10-11 (containing Fleming's chart). In its response brief, Escort states that it "remains ready willing and able to work with [Fleming] to complete the chart set forth in his motion to compel . . . ." *See Escort Brief (Dkt. No. 210)* at p. 11. The Court will therefore grant Fleming's motion and direct the parties to work together to complete the chart. While Fleming requests sanctions, the Court cannot find sanctionable conduct here, and will therefore deny that part of the motion.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Fleming's second motion for terminating sanctions (docket no. 182) is GRANTED IN PART AND DENIED IN PART. It is granted to the extent it seeks attorney fees and costs incurred in attempting to obtain Version 2.46 from ESC18692. It is denied in all further respects.

IT IS FURTHER ORDERED, that Escort's motion for protective order (docket no. 158) is DENIED.

IT IS FURTHER ORDERED, that Escort's motion for an order to show cause and for sanctions (docket no. 162) is DENIED.

IT IS FURTHER ORDERED, that the motion for hearing (docket no. 206) is GRANTED, and counsel shall contact the Court's Clerk Jamie Gearhart (334-9021) to obtain a date.

IT IS FURTHER ORDERED, that Escort's motion to compel and for sanctions (docket no. 196) is GRANTED IN PART AND DENIED IN PART. It is granted to the

extent it seeks to compel Escort to fill out the chart discussed above.  It is denied in all other respects.

DATED: February 19, 2015

B. Lynn Winmill
Chief Judge
United States District Court