J. Walter Sinclair (ISB#2243)
E-mail: *jwsinclair@hollandhart.com*
Timothy P. Getzoff (*admitted pro hac vice*)
E-mail: *tgetzoff@hollandhart.com*
Brian C. Wonderlich (ISB#7758)
E-mail: *bcwonderlich@hollandhart.com*
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Boise, ID 83702
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Attorneys for Defendants Escort, Inc. and Beltronics USA, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING, | Case No. 1:12-cv-0066-BLW |
| Plaintiff, | **DEFENDANTS' RESPONSE TO** |
| v. | **PLAINTIFF'S MOTION FOR** |
| | **SANCTIONS DUE TO** |
| ESCORT, INC., ET AL., | **SPOLIATION OF EVIDENCE** |
| | **AND FRAUD (DKT. NO. 221)** |
| Defendants. | |

TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. BACKGROUND ................................................................................................2

   A.  Plaintiff Requested Production of Accused Infringing Products, Which He Defined in his Infringement Contentions as Passport 9500i; Passport 9500ix; Passport iQ; GX65; Pro500, Passport Max, and Passport Max2 ............................................................2

   B.  The Demand For Production of a Physical Sample of Every Possible Hardware and Software Update is Unnecessary Due to the Infringement Claims at Issue and is Inconsistent With the Parties' Prior Litigation ......................................................3

   C.  Product Samples Are Not Relevant Because They Cannot Be Decoded .............................5

   D.  Escort Timely Implemented a Litigation Hold in 2009 When Litigation Was Reasonably Contemplated with Plaintiff ...................................................................6

III.   ARGUMENT .....................................................................................................7

   A.  Plaintiff's Spoliation Motion Fails Because Escort Properly Preserved All Relevant Evidence ........................................................................................................7

   B.  Terminating Sanctions Requested by Plaintiff Are Not Justified In This Case Because There is No Evidence of Willful or Bad Faith Conduct by Escort ......................10

      1.  The Court Should Exercise Restraint in Awarding Sanctions Under its Inherent Authority ..................................................................................................10

      2.  There is No Basis for an Award of Terminating Sanctions Against Escort as Requested By Plaintiff ..............................................................................11

         a)  There is No Evidence of Willfulness, Fault, or Bad Faith By Escort ......................12

         b)  None of the Other Factors Support An Award of Terminating Sanctions Against Escort ...........................................................................................13

      3.  The Availability of Less Drastic Sanctions ................................................17

   C.  Monetary Sanctions are Not Justified Because Plaintiff Has No Evidence that Defendants Acted Willfully or that Relevant Evidence Was Spoliated ............................18

IV.   CONCLUSION .................................................................................................20

TABLE OF AUTHORITIES

Page(s)

C<small>ASES</small>

*Anheuser-Busch, Inc. v. Nat. Bev. Distrib.*,
    33 F.3d 337 ....................................................................................................... 12-14

*Centrifugal Force, Inc. v. Softnet Comm'n*,
    783 F.Supp.2d 736 (S.D.N.Y. 2011)....................................................................18

*Chambers v. Nasco, Inc.*,
    501 U.S. 32 (1991)................................................................................................10

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
    482 F.3d 1091 (9th Cir. 2007) ..............................................................................11

*Fjelstad v. Am. Honda Motor Co.*,
    762 F.2d 1334 (9th Cir. 1985) ..............................................................................10

*Henry v. Gill Indus., Inc.*,
    983 F.2d 943 (9th Cir. 1993) ................................................................................12

*In re Napster, Inc.*,
    462 F.Supp.2d at 1074 .........................................................................................17

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ..........................................................................10, 11

*Oleksy v. General Electric Co.*,
    Case No. 6 C 1245, 2014 WL 3820352 (N.D. Ill. Aug. 1, 2014) ...........................17

*Pettit v. Smith*,
    2014 WL 4425779 (D. Ariz. Sept. 9, 2014)..........................................................11

*Primus Auto Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644 (9th Cir. 1997) .................................................................. 11-14, 18

*Reinsdorf v. Skechers USA, Inc.*,
    296 F.R.D. 604 (C.D. Cal. 2013)......................................................................10, 15

*Scentsy, Inc. v. B.R. Chase, LLC*,
    2012 WL 4523112 (D. Idaho Oct. 2, 2012).........................................................7, 8

*Schmid v. Milwaukee Elec. Tool Corp.*,
    13 F.3d 76 (3rd Cir. 1994) ....................................................................................10

<u>STATUTES</u>

35 U.S.C. § 271(a) ....................................................................................................................8

<u>RULES</u>

Federal Rule 37(b)(2)..............................................................................................................17

Defendants Escort, Inc. and Beltronics USA, Inc. ("Escort") submit this response to Plaintiff's Motion for Sanctions Due to Spoliation of Evidence and Fraud filed on January 30, 2015 (Dkt. 221) ("Motion for Sanctions").

## I.      INTRODUCTION

Plaintiff's motion is based upon a flawed premise. The gist of Plaintiff's argument is that Escort has not maintained a separate physical device *loaded with a copy of each of the different software updates that it used over the years,* despite the fact that there was no justification for keeping physical copies of the devices and Plaintiff has what he needs to try his case. Far from presenting a case of spoliation, the record reveals that Escort has preserved and produced exactly what Plaintiff needs to proceed with his claim. While Escort did not obtain and set aside a separate physical device that was loaded with every single iteration of software code that it developed, maintaining such a collection of devices is entirely unnecessary and irrelevant to this litigation. To the extent Plaintiff truly believed it was relevant to have a sample of each revision to a product (Escort vigorously disagrees with this argument), he should have raised the issue with the Court in 2013, when he learned that Escort objected to his demand for production of samples instead of waiting until 2015 to file this motion.

Plaintiff's spoliation motion ignores the fact that Escort in fact has a sample of each *relevant* accused product.[1] And, to the extent Plaintiff wishes to test the functionality of a particular version that is not a *relevant* accused product (for example a physical sample of a foreign international version, which cannot be an accused device), Escort can manufacture a device using the same exact code that it utilized when such device was originally manufactured. Further, contrary to Plaintiff's suggestion, Escort is not aware of any way that the hex code could

---

[1] A *relevant* accused product is any product that is accused or that might affect the infringement analysis.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 1

be extracted from the main processor on any of the devices. Escort asked Mr. Fleming's counsel

if he was aware of a method to extract the code on January 23, 2015 and he had not responded.

This further confirms that the request for physical samples for the supposed purpose of extracting

code is a red herring. Thus, Plaintiff cannot show prejudice owing to Escort's failure to maintain

an archive of physical samples reflecting every hardware or software change to the products at

issue in this litigation.

Even if Plaintiff could show some legitimate need or reason for having a physical sample

of each of the hundred or more hardware/software combinations that may exist, the relief

requested by Plaintiff is improper. Plaintiff fails to show willfulness, a prerequisite to seeking

terminating sanctions or to shifting fees in the manner requested by Plaintiff. The lack of

willfulness is demonstrated by the fact that Plaintiff (1) did not define the accused products as

separate versions and subversions in his infringement contentions; (2) never requested production

of such devices in the prior trial; (3) waited over a year after filing this lawsuit to request physical

samples of devices; (4) did not ever move to compel in response to Escort's objection that it would

not agree to Plaintiff's request; and (5) delayed over 17 months after Escort objected to the request

to bring this motion. Finally, Plaintiff cannot establish prejudice or the other factors discussed

below, which are necessary to obtain the sanctions requested.

For the foregoing reasons, Escort respectfully requests that the Court deny Plaintiff's

request for sanctions.

## II.     BACKGROUND

### A.     Plaintiff Requested Production of Accused Infringing Products, Which He Defined in his Infringement Contentions as Passport 9500i; Passport 9500ix; Passport iQ; GX65; Pro500, Passport Max, and Passport Max2

In his most recent amended infringement contentions, attached hereto as Exhibit 1,

Plaintiff defines the following products as being "accused" and thus relevant: "Passport 9500i;

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO
SPOLIATION OF EVIDENCE AND FRAUD - 2

Passport 9500ix; Passport iQ; GX65; Pro500, Passport Max, and Passport Max2." Ex. 1 at 2. Notably, Escort possesses and has maintained a physical specimen of each of these seven (7) physical products that are accused in this case. Declaration of Chad Martin dated February  23, 2015 ("Martin Decl.") ¶ 4.

Through a request for production dated July 2013, Plaintiff requested "[a] physical sample of each Accused Infringing Product."  Dkt. 221-6. Based upon the infringement contentions served by Plaintiff, the only reasonable construction of this request was that Plaintiff was requesting a physical sample of each of the foregoing seven products, not a physical sample of *each* of the hundred or more hardware and software update combinations developed by Escort.

On August 26, 2013, Escort timely served an objection in response to the request, stating that the request was "overly broad and burdensome to the extent it seeks Escort to provide a physical sample of each Accused Infringing Product." Dkt. 221-7 at 25. Escort further stated that "Fleming may purchase such products on the open market." *Id*. Plaintiff did not move to compel or otherwise challenge Escort's objection. And Fleming did not file any papers with the Court seeking relief regarding the issue until January 2015 when he filed this motion. *See* Dkt. 221.

**B.     The Demand For Production of a Physical Sample of Every Possible Hardware and Software Update is Unnecessary Due to the Infringement Claims at Issue and is Inconsistent With the Parties' Prior Litigation**

In his motion, Plaintiff takes the position that Escort was required to preserve and produce a physical sample of every single iterative hardware and software combination for the seven accused products. Dkt. 221 at 2. If anything, this further supports the validity of Escort's August 2013 objection to Plaintiff's discovery request, as it reveals the overly broad and evolving nature of Plaintiff's position. Plaintiff references the versions listed on the product compatibility log as being representative of which physical devices Escort should have preserved

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 3

and produced in the litigation. *Id.* He also argues that the alleged failure to preserve a sample of every single device is devastating to his case because Escort made changes to the "boards/components" of the devices at issue. *Id.* at 12.

The notion that Escort would preserve a separate physical sample of each device listed on the product compatibility log is inconsistent with the manner in which Escort develops and produces new devices.  For example, just because a separate revision is listed on the product compatibility log does not mean that Escort actually produced a version of such device for sale. Declaration of Jeff Stevens dated February 23, 2015 ("Stevens Decl.") ¶¶ 4-5.; Martin Decl. ¶5.

In addition, the contention that Plaintiff needs a physical sample of every possible software or hardware revision is inconsistent with the language of Mr. Fleming's patents at issue. In particular, the claims for all three patents do not require any particular type of microprocessor or other hardware component. *See* Dkts. 3-1 at 8 of 10 to 10 of 10, 3-2 at 8 of 9 to 9 of 9, and 3-3 at 10 of 11 to 11 of 11. Furthermore, according to the specifications for the '038 Patent,

> The microprocessor, which may be **any** conventional single or multiple chip microprocessor or digital signal processor, is coupled to a program storage device. The program storage device may be **any** conventional storage memory device such as PROM, EPROM, EEPROM, ROM, SRAM, **or even** battery backed up DRAM.

Dkt. 3-1 at 5 of 10 (emphasis added). A substantively similar statement exists in the specifications for the '653 patent and in the reexamination of the '905 patent. Dkt. 3-2 at 6 of 9; Dkt. 3-3 at 8 of 11.

Thus, it is clear from the language of the patents that the question whether Escort implemented different "boards/components" in any device is not relevant to Plaintiff's claims and presents no basis for a finding of spoliation. Instead, the asserted patent claims at issue are directed towards the functionality of the device, which is dictated by the software, as opposed to specific types of hardware components.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 4

Finally, contrary to the implication urged in the motion, Fleming did not try *Fleming I* by proving that each hardware and software combination infringed on his patents. Instead, as the Court is aware, Fleming introduced into evidence very limited representative physical samples of the products he contended infringed on his patents. Fleming did not rely on revisions or any effect any revisions had on his infringement claims.

### C.    Product Samples Are Not Relevant Because They Cannot Be Decoded

Plaintiff claims that he needs a sample of each device so that he can evaluate whether Escort produced "falsified" code. *See, e.g.,* Dkt. 221 at 11-12, Dkt. 221-5 at Ex. 5 (attaching correspondence regarding production of devices). In fact, this appears to be the only potential purpose for Plaintiff's demand for individual physical samples for each of the various software updates, as he never asked for production of physical devices containing every update in *Fleming I* and did not pursue his request for physical samples in this litigation.

However, the fact is that the devices are engineered so that the main processor of each relevant accused device cannot be decoded, meaning they are designed so that the binary code running the main processors of the devices cannot be extracted even if one were to submit the device to inspection. Declaration of Steve Orr dated February 23, 2015 ("Orr Decl.") ¶ 3.[2] As with nearly all consumer electronics products sold to the public, this is done for a legitimate and important business purpose – to prevent or inhibit counterfeiting. Orr Decl. 3. For the same legitimate business reasons, the devices are designed so that they cannot be "reverse compiled,"

---

[2] Escort is not aware of any way to extract binary code from the main processor of any of the seven accused devices. Orr Decl. ¶¶ 4. Escort likewise does not presently have any ability to extract binary code from any of the other processors on the devices at issue. *Id*. There is, however, the potential technical ability to write code that could be installed into the USB processor for the GX65, 9500i, 9500ix, and the Pro 500 that could potentially allow for extraction of the binary code from the GPS processor, but not the main processor or any other processor. *Id*. Such a program would, however, alter the product at issue because it would require new software to be loaded onto the device. *Id*. Escort is not aware of any way to extract binary code from the Max, Max 2, or the iQ. *Id*.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 5

meaning that the binary code operating the devices cannot be extracted and reverse engineered to reveal the source code that resulted in the instructions to the device. *Id.*

To the extent Plaintiff disagrees with these contentions or believes that it can extract binary code without modifying the products at issue, Escort is willing to provide a sample product for Plaintiff's inspection, so that he may report back to the Court whether he was able to extract and make any use of such code from the device itself without effecting hardware or software modifications.[3]

### D.   Escort Timely Implemented a Litigation Hold in 2009 When Litigation Was Reasonably Contemplated with Plaintiff

Plaintiff correctly notes that Escort timely implemented a litigation hold in April 2009. Plaintiff does not argue that the timing of the hold was unreasonable, or that the scope of the hold was improper. *See* Dkt. 221 at 6. Rather, Plaintiff argues that Escort acted improperly by not maintaining a separate physical sample for each of the various software updates that have been considered or implemented over the years. *Id.* As discussed herein, there was no possible justification to separately set aside a physical sample for each of the hardware / software combinations across the seven accused devices, in view of the Plaintiff's claims.

As noted, Escort preserved samples of each of the *relevant* accused physical devices, as defined by Plaintiff in his infringement contention. Martin Decl. ¶¶ 4, 6. Escort does not, in the ordinary course of its business, set aside a separate physical sample of each product every time its software engineers implement a software update. Martin Decl. ¶ 5. Therefore, the very premise of Plaintiff's motion that Escort spoliated evidence simply because it did not retain a physical sample of every potential hardware and software combination is unsupported as Escort would not ordinarily maintain such an archive of products and there is no need for it to do so.

---

[3] As noted above, Escort asked Plaintiff if he was aware of a way to extract the binary code from the devices on January 23, 2015 and he has not responded.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 6

Further, as noted, Escort would not have set aside a physical sample of each revision listed on the product compatibility logs, as Escort did not manufacture a new physical device containing all of the noted revisions. Martin Decl. ¶ 5; Stevens Decl. ¶¶ 4-5.

Escort's system for designating significant changes to a product is to denote a change in the first two digits of the product's serial number. Martin Decl. ¶ 3. For the accused products at issue, there have been 13 such changes, reflecting, at most, 13 total relevant versions of the accused products. *Id.* Escort retains a physical sample of each of the relevant accused product versions and can make them available for inspection. *Id.* ¶ 4.

### III.    ARGUMENT

#### A.    Plaintiff's Spoliation Motion Fails Because Escort Properly Preserved All Relevant Evidence

"Spoliation occurs when a party destroys or alters evidence, or fails to preserve evidence for another party in pending or reasonably foreseeable litigation." *Scentsy, Inc. v. B.R. Chase, LLC*, 2012 WL 4523112, *6 (D. Idaho Oct. 2, 2012). "A party engages in spoliation as a matter of law if they had some notice that the documents were potentially relevant to litigation before they were destroyed." *Id.*

Thus, a prerequisite to a finding of spoliation is destruction of *potentially relevant* evidence or documentation. Plaintiff's motion for sanctions fails at this first step. As the Court is aware from the trial in the prior case (*Fleming I*), the relevant issue in this case is whether the functionality of the source code implemented by Escort in the seven accused products infringes on Plaintiff's patents. As noted, Plaintiff had no need for and did not try *Fleming I* by introducing into evidence physical samples of each hardware and software combination implemented by Escort. Rather, Plaintiff tried the case by comparing the asserted patent claims (which are directed towards the product functionality) to the functionality of the Escort products

as dictated by the relevant source code. And where necessary and appropriate, Plaintiff introduced into evidence relevant samples of each accused product, something he is fully capable of doing in this case.

The same protocol can and should apply here in *Fleming II* for the alleged infringement of Plaintiff's patents by the seven products at issue:  the 9500i, 9500ix, the GX65, the pro500, the Passport iQ, the MAX, and the MAX 2 detectors. Plaintiff concedes that he has product samples of (at the very minimum) the Pro 500 and the GX 65. Dkt. 221 at 3. Further, the 9500ix Spanish, Russia, International, and Asia versions were never made, sold, offered to sell, or imported by Escort in the United States, which makes those foreign versions irrelevant to this case Martin Decl. ¶ 6; 35 U.S.C. § 271(a) (imposing liability against one who "makes, uses, offers to sell, or sells any patented invention, within the United States").

Thus, of the twelve purported "products" in Plaintiff's table on page 14 of his brief, Plaintiff only has a need for (at most) five of the accused products—the 9500i, 9500ix, Passport iQ, MAX, and the MAX 2. Escort has in its possession and stands ready to produce a representative sample of one of each of these products to Plaintiff.  And as discussed above, Escort records material changes to hardware versions by denoting changes to the first two serial numbers of a particular product. Considering this designation for the accused products at issue, there are only 13 potential physical "versions" of the accused products that could even potentially be relevant for Plaintiff's consideration. Martin Decl. ¶ 3. Again, Escort has a representative sample of each of these 13 potential hardware versions in its possession.  *Id.* ¶ 4.

Of the accused products legitimately at issue in this case, there can be no contention that Escort despoiled these products because Escort retains possession of a physical sample of each relevant product model. Martin Decl. ¶¶ 4-6. Escort has also communicated its willingness to make an engineer available for deposition to discuss the versions and software changes to

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO
SPOLIATION OF EVIDENCE AND FRAUD - 8

Escort's products. Plaintiff has thus far not accepted that invitation. Declaration of J. Walter Sinclair dated February 23, 2015 ("Sinclair Decl.") ¶ 3. Thus, the basic premise of Plaintiff's motion—that he is unable to try his case owing to the lack of physical specimens of each allegedly infringing detector—is incorrect.

Escort debugs and updates the code on its products and releases the updates to consumers via the internet and other sources. Stevens Decl. ¶ 4. Thus, a product that was originally manufactured and shipped with a particular version of hex code could be updated multiple times over the life of the product. While Escort maintains (and has produced) or can recreate each version of software code (and the updates) that have been developed or released, it does not maintain a *physical* radar detector that has been loaded with each individual update every time new software is developed or released. *Id.*

Under Plaintiff's theory of spoliation, Escort was required to produce and preserve a separate physical sample of a device each time it developed a new software version even though representative physical samples of each accused product exist and are readily available to both sides. Plaintiff's position is rendered even more unreasonable when one considers that the device is engineered so that the source code cannot be decompiled and extracted from the physical devices and thus cannot be examined after it is loaded onto the device. Maintaining such an archive of physical products, each loaded with a separate software update, is entirely unnecessary as well as costly. This is true particularly when Escort has retained all the separate binary code versions and can load any particular software version onto a physical sample and produce it for whatever purpose Plaintiff requires in this case. Orr Decl. ¶ 5.

Given the foregoing, Plaintiff cannot credibly claim that Escort despoiled evidence. In fact, the basic premise of spoliation – that relevant evidence has been irretrievably destroyed – is inconsistent with the fact that Escort can readily manufacture any version of any accused device

that is at issue in this litigation and physical samples of each accused device are readily

available. For this reason, Plaintiff's motion for spoliation fails and should be denied.

**B.      Terminating Sanctions Requested by Plaintiff Are Not Justified In This Case Because There is No Evidence of Willful or Bad Faith Conduct by Escort**

**1.      The Court Should Exercise Restraint in Awarding Sanctions Under its Inherent Authority**

Under the law of the Ninth Circuit, "[t]here are two sources of authority under which a

district court can sanction a party who has despoiled evidence: the inherent power of federal

courts to levy sanctions in response to abusive litigation practices, and the availability of

sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit

discovery.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (quoting *Fjelstad v. Am.

Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985)). Here, as was the case in *Leon*, Plaintiff

does not identify a violation of a discovery order as the basis for his request for sanctions. *Leon*,

464 F.3d at 958. Thus, the only possible basis for an award of sanctions (evidentiary or

monetary) is the Court's inherent authority.

"The exercise of a court's inherent powers must be applied with 'restraint and discretion'

and only to the degree necessary to redress the abuse." *Reinsdorf v. Skechers USA, Inc.*, 296

F.R.D. 604, 626 (C.D. Cal. 2013) (quoting *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991)).

This "restraint and discretion" means that "courts should choose 'the least onerous sanction

corresponding to the willfulness of the destructive act and the prejudice suffered by the

vicitim[.]'" *Reinsdorf*, 296 F.R.D. at 626 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13

F.3d 76, 79 (3rd Cir. 1994)).

### 2. There is No Basis for an Award of Terminating Sanctions Against Escort as Requested By Plaintiff

While not styled as such in Plaintiff's motion, Plaintiff is seeking terminating sanctions against Escort because he asks the Court to direct a verdict in his favor on liability, leaving only the question of damages for trial. Dkt. 221 at 14. A directed verdict is akin to the most severe sanctions for spoliation of evidence, including dismissal and the striking of pleadings and affirmative defenses. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) ("A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe," and "[o]nly willfulness, bad faith, and fault justify terminating sanctions."); *Pettit v. Smith*, 2014 WL 4425779, at *4 (D. Ariz. Sept. 9, 2014) (recognizing that the harsh sanction of dismissal or a directed verdict is a case-dispositive, terminating sanction).

Because Plaintiff seeks an award of "evidentiary" sanctions, "in the form of a directed verdict of infringement on each despoiled product" (Dkt. 221 at 9-14), "a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper." *Leon*, 464 F.3d at 959. Similarly in *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997), the Ninth Circuit recognized that "[b]efore awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Id.* (quotation omitted). "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'" *Id.* (quotation omitted). The bad faith standard sets a "high threshold." *Id.*

And "[b]efore imposing the harsh sanction of dismissal, the district court must weigh several factors: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public

policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Anheuser-Busch, Inc. v. Nat. Bev. Distrib.*, 33 F.3d 337, 348 (quoting *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).

> **a)**     **There is No Evidence of Willfulness, Fault, or Bad Faith By Escort**

As noted, Plaintiff must demonstrate willfulness, fault, or bad faith by Escort to justify its request for terminating sanctions under the Court's inherent authority. *Primus Automotive Servs., Inc.*, 115 F.3d at 648-49. There is absolutely no evidence in the record to support such a finding on this issue. Plaintiff has no facts to show that Escort destroyed detectors, much less that it acted knowingly in doing so.

Any argument that Escort knew that Plaintiff wished it to retain a physical sample of every single iterative version of software its engineers developed for every single accused device is belied by the record. Plaintiff's infringement contention is based upon the accused products. *See* Exhibit 1. It does not spell out each software update and version change as separately defined "Accused Products." *Id.* Further, Plaintiff did not make such a request in the prior case; in fact, he tried the case using samples of each product, rather than offering into evidence physical samples of each iterative version of software running on each "Accused Product." Finally, Plaintiff delayed until July 2013, a total of 17 months after the case was filed to serve a discovery request seeking production of samples of the accused products. Dkt. 221-6. Even then, his actual request was for physical samples of the accused devices, not physical samples of every single revision and software updated pushed out over time. *Id* After receiving Escort's objection in August 2013 (Dkt. 221-7 at 25), Plaintiff waited until 2015 to file this motion.

The fact that Plaintiff's own infringement contentions do not separately define each software update and version should foreclose any argument that Escort acted willfully by failing

to preserve samples of each product containing every software update and hardware change over time. Plaintiff's delay undermines the argument that the information requested is essential to proving his case or that Escort should be charged with knowingly spoliating relevant evidence.

Yet, in an attempt to cast aspersions on Escort, Plaintiff relies heavily on the facts found by the Court regarding the entirely separate issue involving ESC17363. As the Court is aware, Escort and its prior counsel have already paid a significant price for that situation. Just because the Court determined Escort's prior counsel acted improperly with respect to ESC17363 does not mean (as Plaintiff argues) that Escort is culpable for spoliation in this context or that a finding of bad faith can be established through reference to those facts.

In sum, Plaintiff has no evidence to support the first factor relevant to an award of terminating sanctions as he lacks any evidence that Escort acted willfully by failing to retain a physical sample of the detectors. *See Primus Automotive Servs., Inc.*, 115 F.3d at 649 (reversing sanctions order against attorney where record lacked evidence to support finding of bad faith).

### b) None of the Other Factors Support An Award of Terminating Sanctions Against Escort

The Court must also consider and weigh other factors when faced with a request for terminating sanctions, including the public's interest in expeditious litigation, the Court's need to manage its docket, prejudice to the plaintiff, the public policy favoring disposition on the merits, and the availability of less drastic sanctions. *Anheuser-Busch, Inc.*, 33 F.3d at 348. Here, none of the factors support the harsh remedy requested by Plaintiff.

### (1) Public's Interest in Expeditious Resolution of Litigation

Plaintiff offers nothing to support a finding in his favor on this issue. To the contrary, by filing this motion, Plaintiff has delayed and complicated, rather than expedited, this litigation. Plaintiff filed his Complaint in February 2012, served interrogatories in August 2012, yet

delayed in serving a discovery request for production of product samples until July 2013. Dkt. 221-6. Escort timely objected to the request in August 2013. Dkt. 221-7. In January 2015, <u>approximately 17 months later</u>, and without ever filing a discovery motion or formally raising this purported discovery violation with the Court, Plaintiff filed a request seeking dismissal owing to the failure to produce samples of every possible hardware and software combination of various products, including products not even among those that are properly at issue. Through the delay, the public's interest in efficient resolution of the litigation has been thwarted.

### (2)      The Court's Need to Manage its Dockets

As with the first two factors, Plaintiff offers no facts to support a finding in his favor on this factor. As Plaintiff concedes, Escort timely served its discovery objection refusing Plaintiff's invitation to provide (at Escort's expense) a sample of each product that Plaintiff contends is infringing with its patents. Dkt. 221-7 at 38 (noting date of responses as August 26, 2013). Over a year later, Plaintiff raised this issue, apparently hoping to seize on what he perceives as a strategic opportunity resulting from the Court's prior order awarding monetary sanctions against Escort's prior counsel. This tactic does nothing to assist the Court with the need to manage its dockets. And nothing about Escort's failure to preserve physical samples of devices containing each iterative software device interferes with the Court's ability to manage its docket. To the contrary, judicial economy would be promoted by turning back to the merits instead of continuing to focus on claims of spoliation where none exists.

### (3)      Plaintiff Will Not Be Prejudiced By Escort's Failure to Provide Samples

The Court must also consider the prejudice, if any, to the party seeking sanctions. *Anheuser-Busch, Inc.*, 33 F.3d at 348. Plaintiff's claim of prejudice owing to Escort's supposed spoliation fails for multiple reasons.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 14

First, Plaintiff waited too long to raise the supposed concern about the devices. Plaintiff filed the case in February 2012. The trial in *Fleming I* concluded in July 2012. The following month, Plaintiff served interrogatories to Escort. Then Plaintiff delayed approximately 11 months until July 2013 to serve requests for production, including the request for production of product samples. Dkt. 221-6. Escort objected to Plaintiff's demand for production of product samples in August 2013. Dkt. 221-7.

Plaintiff waited until January 2015 to seek sanctions—nearly three years after the case was filed and six years after the first case was filed, without ever having filed a motion to compel or otherwise raising the issue with the Court. The fact that Plaintiff waited years to seek relief undermines his argument that he will be prejudiced owing to the supposed spoliation.  *See Reinsdorf*, 296 F.R.D. at 618 ("[T]he fact that Reinsdorf was aware of the scope of Skechers' productions but did not seek to compel production of product line sales data suggests that Reinsdorf did not believe such information was required to meet his burden under Polar Bear.").

Second, there is no possible basis for Plaintiff to claim prejudice because, as noted above, Plaintiff tried *Fleming I* without need for physical samples of each accused device loaded with every single iterative version code implemented by Escort. Further, if Plaintiff desired to he should be able to from purchase samples of each of the seven relevant accused products on the open market. Plaintiff should not claim prejudice where he could have – if he desired to – purchase samples of the relevant accused products.

Third, Plaintiff's claim of prejudice fails because Plaintiff has previously received, or Escort can reproduce the source, header, and binary codes for each of the versions of the devices at issue. *See e.g.* Orr Decl. ¶ 5. Plaintiff does not need a physical sample of each of the devices, loaded with each separate update to the code that Escort developed or implemented, to prosecute his infringement contentions. Rather, Plaintiff can compare whether (or not) the relevant portions

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 15

of the code in question infringe and, if so, whether there should be a remedy for such

infringement.

Finally, there cannot be any prejudice to Plaintiff because Escort remains willing and has

the technical ability to manufacture a sample of any version of any relevant accused product. Orr

Decl. ¶ 5. And Escort is willing to allow Plaintiff to depose one of its engineers in case he has

any questions about that process. Sinclair Decl. ¶ 4. Furthermore, there is no basis for concern

that suppliers and certain physical hardware may have changed between the time the devices

were initially sold and the present. While the configuration of the boards and memory may have

changed over time, the patents specifications and claims at issue expressly make clear that the

boards or memory used in the devices does not matter to the protection being claimed because

the protection is claimed with any kind of board or memory.

For these reasons, Plaintiff has not shown and cannot show any prejudice owing to the

alleged failure to retain a physical sample of each and every version of the products at issue

containing each and every version of the hex code that Escort has pushed out to consumers and

implemented over the years. Far from being prejudiced, Plaintiff could have raised the issue

sooner or purchased samples of the relevant accused products on the open market over the years.

(4)   The Public Policy Favoring Disposition of Cases on<br>Their Merits

The fourth factor—the public policy favoring disposition of cases on their merits—favors

Escort. Through its request for a directed verdict in Plaintiff's favor on liability, Plaintiff seeks to

foreclose a jury from deciding the merits of Plaintiff's infringement claims. The Court already

twice considered and rejected application of terminating sanctions when it ruled on the issues

surrounding the production of ESC17363 and, most recently, in connection with Plaintiff's

second motion for terminating sanctions. *See* Dkt. 231. Yet, Plaintiff seeks to revive that issue and cast aspersions on Escort through the latest motion.

For the reasons noted above, the public policy favoring disposition of cases on their merits should be honored here. Plaintiff has what he needs to pursue his infringement case against Escort. And to the extent Plaintiff demonstrates a need for a particular version of a particular product, Escort remains willing and able to recreate such sample for Plaintiff's inspection. What should not happen is to accept Plaintiff's invitation to terminate Escort's defenses to Plaintiff's claim. Plaintiff should not be allowed to extrapolate the ruling regarding ESC 17363 into a ruling foreclosing Escort from offering a defense to Plaintiff's claims.

### 3.    The Availability of Less Drastic Sanctions

Even if the Court were to conclude that Escort should have preserved a physical radar detector loaded with each software version considered across all the seven accused products (including physical samples of any device running an iterative device of the disputed software), less drastic sanctions than those requested by Plaintiff would be appropriate. *See In re Napster, Inc.*, 462 F.Supp.2d at 1074 (recognizing that where lesser sanctions would be effective, "a default sanction is inappropriate").

In *Oleksy v. General Electric Co.*, Case No. 6 C 1245, 2014 WL 3820352 (N.D. Ill. Aug. 1, 2014), the court considered whether to impose the sanction requested by the plaintiff, an adverse inference instruction under Federal Rule 37(b)(2). The court denied the plaintiff's requested sanction because there was no evidence that General Electric acted in bad faith. *Id.* *3. As an alternative and lesser sanction, however, the court ordered General Electric to recreate the allegedly spoliated source code. *Id.* *4 ("Given that GE has not preserved complete sequence of code between 2006 and 2009, it shall reconstitute or recreate the code at its own cost."); *see also*

*Centrifugal Force, Inc. v. Softnet Comm'n*, 783 F.Supp.2d 736, 745 (S.D.N.Y. 2011) (recognizing that source code could be decompiled from existing installation files).

To the extent the Court concludes that spoliation occurred—fiercely disputed by Escort—then the only appropriate sanction would be to order Escort to recreate a physical sample of the particular versions of the products that Plaintiff establishes are necessary to proceed with the litigation. *See Oleksy*, 2014 WL 3820352 at *4. This should not extend to the full range of the version of products listed on page 14 of Plaintiff's brief, as many of the products listed were never sold in the United States and thus are outside the ambit of this infringement action. *See* Martin Decl. ¶ 6. To the extent that the Court concludes physical reproduction of samples is appropriate, Escort requests that the Court order the parties to meet and confer regarding which samples, if any, the Plaintiff needs to proceed in the litigation and what limits should apply to Plaintiff's inspection of the samples generated by Plaintiff and Escort will produce them.

### C.    Monetary Sanctions are Not Justified Because Plaintiff Has No Evidence that Defendants Acted Willfully or that Relevant Evidence Was Spoliated

In addition to the terminating sanctions discussed above, Plaintiff also summarily requests "that he be made whole through an order compelling defendants to reimburse all of Mr. Fleming's associated costs and legal fees, as is customary in such situation." Dkt. 221 at 15. Plaintiff does not explain what he means by "all" but Escort presumes it means all fees and costs incurred in prosecuting the litigation by Plaintiff. As explained by the Court in *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d at 648-49, an explicit finding of bad faith "is especially critical when the court uses its inherent powers to engage in fee-shifting, as it did in this case." *See id.* ("[T]he narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad faith conduct or willful disobedience of a court's orders.").

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 18

Again, any argument that Escort has acted in bad faith by failing to preserve a physical sample of every combination of hardware and software updates rather than (which is reasonable) a physical sample of each *relevant* accused product is belied by the record. Far from acting in bad faith, the record shows that Escort has actively worked to preserve and produce the universe of information requested by Plaintiff, including the following:

1) Escort has produced or can replicate complete copies of all source code, header code, and hex code for all versions of the relevant accused products at issue;

2) Escort retains a sample of each relevant accused product or the potentially relevant 13 accused product versions within the seven accused products, and can produce such samples to Plaintiff for inspection at a mutually agreeable date and time and subject to limitations as are appropriate to ensure the integrity of the sample during inspection; and

3) Escort can recreate a physical sample of any version of any relevant accused product that Plaintiff needs to proceed with preparation of its case.

Thus, the very request that Plaintiff should receive an order awarding him all fees and costs incurred in this litigation is unfair and wholly inconsistent with the spirit of the adversarial system. There are absolutely no facts from which the Court could conclude that Escort acted in "bad faith," much less willfully or otherwise in an improper manner with respect to its decision not to preserve a separate sample of every single version of each relevant accused product bearing every single software update implemented by Escort over time.

Through this motion, Plaintiff seeks to extrapolate its "victory" obtained in connection with the Court's ruling on the ESC17363 (an issue that is separate from the issue under consideration with this motion) and obtain a windfall awarding him all fees and costs incurred in this litigation. Far from being "customary" as is urged by Plaintiff, the request for an award of all fees and costs is an extraordinary remedy, is improper and is unsupported by the record.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 19

Plaintiff has no evidence that Escort spoliated evidence, much less intentionally so, or that any prejudice could not be resolved through a lesser sanction such as an order requiring to recreate a sample of certain product versions. For these reasons, Escort respectfully requests that the Court deny Plaintiff's request for an award of fees and costs incurred.

### IV.    CONCLUSION

For the foregoing reasons, Escort requests that the Court deny Plaintiff's Motion for Sanctions.

DATED February 23, 2015

HOLLAND & HART LLP


By s/J. Walter Sinclair_____
   J. Walter Sinclair
   Timothy P. Getzoff

   Attorneys for Defendants
   Escort, Inc. and Beltronics USA, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of February, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Steven S. Schossberger                  sschossberger@hawleytroxell.com
Bradlee R. Frazer                       bfrazer@hawleytroxell.com
Michael S. Dowler                       mike@parklegal.com

*Attorneys for Plaintiff*

Brian P. Muething                       bmuething@kmklaw.com
Bryce James Yoder                       byoder@kmklaw.com
Keely E. Duke                           ked@dukescanlan.com
Rachael Anne Rowe                       rrowe@kmklaw.com
Robert Blaine White                     rbw@givenspursley.com

*Attorneys for Best Buy Co., Inc.; Amazon.com, Inc.; Hayneedle, Inc; Fry's Electronics; Herrington Catalog; Buy Radar Detectors, Inc.; Best Radar Detectors; ABT, Inc.; J&R Music and Computer World; Sears Holding Corp.; 1stRadarDetectors; Beach Camera/Buydig.com, Inc.; AM Merchandising, Inc.; Excel Distributing, Inc.; DBSouth, Inc.; Fulfillment Services, Inc.; Car Toys, Inc.; DAS Distributors, Inc.;*

/s. J. Walter Sinclair_____
of Holland & Hart LLP

7495426_6

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE AND FRAUD - 21