J. Walter Sinclair (ISB#2243)
E-mail: *jwsinclair@hollandhart.com*
Timothy P. Getzoff (*admitted pro hac vice*)
E-mail: *tgetzoff@hollandhart.com*
Brian C. Wonderlich (ISB#7758)
E-mail: *bcwonderlich@hollandhart.com*
HOLLAND & HART LLP
800 West Main Street, Suite 1750
Boise, ID 83702
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Attorneys for Defendants Escort, Inc. and Beltronics USA, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING, | Case No. 1:12-cv-0066-BLW |
| Plaintiff, | **DEFENDANTS' RESPONSE TO** |
| v. | **PLAINTIFF'S SECOND MOTION** |
| | **FOR SANCTIONS DUE TO** |
| ESCORT, INC., ET AL., | **SPOLIATION OF EVIDENCE** |
| | **(DKT. NO. 223)** |
| Defendants. | |

TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. BACKGROUND ..................................................................................................2

   A. It Is Undisputed That Hex Files Control How A Product Functions. ...................2

   B. Version 63 Was Developed From Version 62 To Address A Bug Related to the
      Display of Certain User Settings—A Function That Is Not Alleged to Infringe Any
      Patent-in-Suit................................................................................................3

   C. Escort Produced Source Code to Fleming and Explained How To Obtain Version
      63 From It. ..................................................................................................6

   D. The Source Code Escort Produced Allows Plaintiff To Obtain Source Code, Which
      Compiles Into Hex Code Identical to the Hex Code Installed In the Passport
      9500ix in 2012 and Still Operating It Today...................................................9

      1. Mr. Stevens' Compiling of Version 63............................................................9

      2. Mr. Ramey's Comparisons and Confirmation. ................................................9

III.   ARGUMENT ...................................................................................................10

   A. Plaintiff's Spoliation Motion Fails Because Version 63 Has Not Been Destroyed
      and Compiles and Functions In The Same Way It Did in 2012...........................11

   B. Terminating Sanctions Are Not Justified Because There is No Evidence of Willful
      or Bad Faith Conduct by Escort. ...................................................................12

      1. The Court Should Exercise Restraint in Awarding Sanctions Under its Inherent
         Authority.................................................................................................12

      2. There is No Basis for an Award of Terminating Sanctions Against Escort as
         Requested By Plaintiff. .............................................................................13

      3. The Availability of Less Drastic Sanctions. ..................................................18

   C. Monetary Sanctions are Not Justified Because Plaintiff Has No Evidence that
      Defendants Acted Willfully or that Relevant Evidence Was Spoliated.............................19

IV.   CONCLUSION ................................................................................................20

Defendants Escort, Inc. and Beltronics USA, Inc. ("Escort") respectfully submit this response to Plaintiff's Second Motion for Sanctions Due to Spoliation of Evidence filed on February 4, 2015 (Dkt. 223) ("Motion").

## I.     INTRODUCTION

Plaintiff's Motion is based upon the flawed premise that version 63 of Escort's source code has been destroyed. Yet, version 63 is easily obtained from the version 62 source code provided to Plaintiff, and when that source code is compiled, it is identical to the original version 63 source code compiled in mid-2012 that continues to operate Escort's Passport 9500ix radar detector. Escort explained this to Plaintiff when the source code was produced to him. There is no indication Plaintiff ever attempted to obtain the version 63 source code by following the instructions provided to him when the source code was produced, and he has declined to depose the engineer who developed the version 63 source code to obtain answers to any questions he might have regarding such a compilation.

The accuracy of the source code that can be obtained from the source code produced to Plaintiff is clearly demonstrated by comparing the version 63 hexadecimal code ("Hex File") installed in the Passport 9500ix in 2012 with a Hex File created using the source code produced to Plaintiff. To ensure the accuracy of the Hex File, Escort gathered the version 63 Hex File compiled in 2012 from two separate sources—Escort's production facility where the version 63 Hex File has remained unchanged since July 2012 and its website where the version 63 Hex File has remained unchanged since October 2012 (version 6.63) and December 2012 (version 7.63).

The engineer that developed version 63 (Jeff Stevens) and an independent expert (Mr. Tim Ramey) have each confirmed that the Hex File compiled from the source code produced to Plaintiff is identical to the version 63 Hex File sent to the production facility, and the version 63

Hex File on Escort's webserver.  Thus, there is no doubt that version 63 is available, is in

Plaintiff's possession, and was and still can be compiled into the version 63 Hex File matching

the file referenced on Escort's Product Compatibility Log.  This confirms that no information

was lost and that version 63 was not despoiled.

 For all these reasons and as further explained below, no spoliation has occurred.

Moreover, Plaintiff has failed to show any prejudice from being provided source code that

compiles and operates the Passport 9500ix just as it has since it was installed in 2012.

Consequently, Plaintiff has failed to demonstrate willfulness or bad faith by Escort and has done

nothing to justify the extreme remedies he seeks.

 The Motion is properly denied.

## II. BACKGROUND

### A. It Is Undisputed That Hex Files Control How A Product Functions.

 The Motion begins to unravel when the "tight interrelatedness" between source code and

binary code (also called Hex Files) is considered.  The following, taken from one of Plaintiff's

recent filings, explains that relationship in a way that is useful to understanding his Motion.[1]

> . . . Because microprocessors only operate on machine-readable
> code, the human-readable source code must be translated into
> machine-readable "binary code".  The process of translating
> (human-readable) source code files into (machine-readable) binary
> code files is performed by a "compiler/linker".[2]  Specifically, the
> compiler/linker receives one or more source code files and certain
> other "project files" (also created by the designer), compiles the
> files, and outputs a corresponding (machine-readable) binary code
> file.  This binary code file is then loaded into a product's memory,

---

[1] Escort does not agree with Plaintiff's description in its entirety.  However, the description is sufficient for present purposes.

[2] "The 'compiler/linker' is an off-the-shelf program specifically designed to compile source code (and its associated project files) into machine-readably binary code."  Dkt. 196, p. 6, n.1.

DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE (DKT. NO. 223) - PAGE 2

from which the product's microprocessor fetches it for execution and, thus, causes the product to operate as the designer intended.

**As shown, there is a tight interrelatedness between source code files, project files, and binary code files that makes each file critical to this case.  For example, while binary code files are not human-readable, it has value in terms of proving the authenticity of its corresponding human-readable source code files**.  For example, if there are questions about the authenticity of a source code file (as there are in this case), that source code file (and its associated project files) can be compiled to produce a binary file.  That resulting binary file then can be electronically compared to the binary file *actually* used by the accused product.  If there are differences between the two binary files, the source code file irrefutably was *not* the source code file that was compiled to form the binary file that was actually used in the accused product.  In other words, the source code file is not authentic.

Dkt. 196, p. 5-6 (Plaintiff's Motion to Compel and For Sanctions) (emphasis added); *see also*

Dkt. 192, p. 2-5 (Defendants' Opposition to Plaintiff's Second Motion for Terminating

Sanctions; ". . . it is therefore the Hex Files which directly cause Escort's devices to operate in a

particular way."; "It is these Hex Files . . . which are actually loaded into Escort's products . . .

.") (cited with approval by Plaintiff in Dkt. 196, p. 6).[3]

> **B.      Version 63 Was Developed From Version 62 To Address A Bug Related to the Display of Certain User Settings—A Function That Is Not Alleged to Infringe Any Patent-in-Suit.**

The Passport 9500ix includes a startup process, in which the detector displays the band

enable settings chosen by the user (which may differ from the factory defaults), such as whether

X band, K band and Laser detection is disabled.  Stevens Decl. ¶ 12.

On May 9, 2012, version 62 for the Passport 9500ix radar detectors was saved by Jeff

Stevens, a Senior Systems Engineer.  *Id.* ¶ 13.  This version was under test at Escort for possible

---

[3] Plaintiff cites "Dkt. No. 182" as Escort's opposition to Plaintiff's second motion for terminating sanctions.  This must be a typo as Dkt. 182 is Plaintiff's *motion*, while Dkt. 192 is Escort's opposition to Dkt. 182.

release. *Id.* During this testing, it was determined that the startup process of the detector was not performing properly. *Id.* Specifically, because two lines of the version 62 source code were transposed, the startup process did not display all of the information that was intended to be displayed. *Id.* Accordingly, sometime after May 9, 2012, Mr. Stevens corrected this mistake, and defined the resulting version as version 63. *Id.*

On July 13, 2012, the source code for the 9500ix detector was compiled to create version 63 Hex Files for the Passport 9500ix radar detector. *Id.* ¶ 14. Specifically, Mr. Stevens compiled a Hex File named 9500ix_main_v6_63.hex and a Hex File named 9500ix_main_v7_63.hex.[4] *Id.*

These Hex Files were provided to Chad Martin, an Escort engineering technician, to upload to Escort's webserver so that consumers could update their Passport 9500ix radar detectors via Escort's web site and publicly available "Detector Tools" PC application. *Id.* ¶ 15. Mr. Martin uploaded version 6_63 to Escort's website on October 26, 2012. Martin Decl. ¶ 2. The version 6_63 source code remains on Escort's web server with a file date of October 26, 2012. *Id.* ¶ 3. On December 10, 2012, Mr. Martin loaded version 7_63 to Escort's website. *Id.* ¶ 4. The version 7_63 source code remains on Escort's web server with a file date of December 10, 2012. *Id.* ¶ 5.

Also on July 13, 2012, Mr. Stevens combined the 9500ix_main_v6_63.hex and 9500ix_main_v7_63.hex files with a "bootloader", which is a 'fail safe' program designed to be the first program that runs in the main processor of a radar detector and causes it to run the operating code. Stevens Decl. ¶ 16.; Ramey Decl. ¶12. The Hex Files of version 63 combined

---

[4] The difference between these two files was that the 7_63 file included instructions for a red display, whereas the 6_63 file included instructions for a blue display. Stevens Decl. ¶ 14. A blue display must be driven harder for the same perceived brightness than is the case for a red display, which is why there are different instructions for blue vs. red displays. *Id.*

DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE (DKT. NO. 223) - PAGE 4

with the bootloader were saved in his computer with the names 9500ix_main_v6_63_b6.hex and 9500ix_main_v7_63_b6.hex ("_b6" referencing the bootloader).  *Id.*  On July 16, 2012, these files were sent to Escort's manufacturing site in Canada so they could be installed during production of Passport 9500ix radar detectors.  *Id.*; Resendes Decl. ¶¶ 2-5.

Escort maintains Product Compatibility Logs to track the Hex Files and other files utilized in each of its radar detectors.  Below is a portion of the Product Compatibility Log, produced at ESC 20882-20886, for the Passport 9500ix Radar Detector.

| T | 7/13/201 2 | ECN 2120709 **No-Ku** | 33055732 | Receiver | Main | 9500IX-T | 05M950-5H | 9500i_receiver_v5h.s19 | 9500ix_voice_v1_7.b in escort_audio_v19.he x | MB_9500_V5H_G.I NI |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Front End | | 05F95E-5D | 31K57V10.s19 | | MB_9500_V5H_G.m em |
| | | | | | | | | 9500ix_main_v6_63_b6.he x | | |
| | | | | | | | | 9500ix_usb_v4_7.hex | | |
| | | | | GPS | | | 05G950-2A | 9500ix_gps_v8_198_b6.he x | | |
| | | | | Display | | | 0030012-2 | | | |
| | | | | Switch | | | 05W95B-5C | | | |

Following compilation of the version 63 Hex Files, Mr. Stevens made changes to the source code files to define new models and new versions for foreign markets.  Stevens Decl. ¶ 17.  For example, he prepared code revisions to define a Spanish-language detector model, a European detector model, and a Russian detector model.  *Id.*  These various code revisions involved language changes on the display, and also required changes in the handling of marked locations and the strings used to describe marked locations, because there are types of locations relevant in foreign countries that are not defined or used in U.S. versions. *Id.*  None of these foreign language version detectors were manufactured or sold in the United States, rendering them irrelevant to this lawsuit.

After he completed these changes, Mr. Stevens realized that the foreign-specific functions he added, while not relevant to U.S. versions, involved changes to some code used by

U.S. versions of the Passport 9500ix. *Id.* ¶ 18. Specifically, he had changed code modules which defined types of marked locations used by both U.S. and foreign versions. *Id.* Because there had been such changes relevant to modules used by U.S. versions, after he completed these revisions, Mr. Stevens decided to designate the source code as U.S. version 64. *Id.*

> ### C.   Escort Produced Source Code to Fleming and Explained How To Obtain Version 63 From It.

Plaintiff contends that "defendants have vexaciously refused to address" the "whereabouts" of "code Version 63". Dkt. 223 at 6. To the contrary, Escort repeatedly explained the "whereabouts" of version 63 and how Plaintiff can obtain it from the source code produced.

On May 20, 2014, Plaintiff's counsel asked, in the 27th paragraph of his email of that day, "Please identify any and all other information relevant to this case that has not been saved." Declaration of Brett A. Schatz ("Schatz Decl.), Ex. A, p..3.

Escort's counsel responded on June 3, 2014:

> 27. We understand that version 63 of the main processor source code for the 9500ix product may not have been saved due to an oversight on the designer's part. For any versions that may not have been saved due to an oversight, we are investigating whether a copy can be located, and if so, we will produce it to you.

*Id.* Ex. B, p. 2.

Then, on June 20, 2014, Escort provided a thorough explanation of how Escort's source code is kept and offered to make all of its software files (source code, hex code, and other files) available for Plaintiff's inspection. *See Id.* Ex. C (p. 1-2, 5). On August 1, 2014, Escort made a similar offer, and by that time had proposed stipulation regarding the inspection. *See Id.* Ex. D. Plaintiff did not respond to these offers until almost two months later, on September 25, 2014, when he refused the offer. *See Id.* Ex. E, p. 2.

In response, on October 1, 2014, Escort agreed to produce discrete files and undertook the task of collecting its source code versions for the executable files in the Compatibility Log for every processor in every Accused Product.  *Id.* Ex. E, p. 1.

Over the next two months, Escort gathered and produced these files.  *Id.*  ¶ 7.  The first batch was produced on November 10, 2014 at ESC 022562.  *Id.* ¶ 7, Ex. F.  The next day, counsel for Escort sent an email regarding this source code, stating in particular:

> We have further provided additional informational content, in directories using the name MODIFICATIONS, to explain the proper manner of use of the common code base files to compile specific versions of reference.  If you wish to depose the programmers involved in the original preparation of this code or preparation of the informational content we have included, please provide us with a deposition notice as described in the preceding paragraph and we will identify an appropriate witness or witnesses.

*Id.* Ex. F, p.1, ¶ 2.

On November 21, 2014, Escort produced more source code at ESC 022563, which contained two items particularly pertinent to the present Motion: an archive file named "9500ix_main_vX_63.zip", which included the version 62 source code and a folder and file named "MODIFICATIONS" that specifically explained the changes needed to version 62 to make version 63, after which it would compile into the same version 63 Hex Files listed in the Compatibility Log that is used in Passport 9500ix product.  *Id.* ¶ 8.  That modifications subfolder also contained a main.c and main.h files that were created by Jeff Stevens by starting from the version 62 main.c and main.h files, and altering them in accordance with the instructions contained in the MODIFICATIONS.txt file.  *Id.*; Stevens Decl. ¶ 19. The accompanying letter referred back to the November 11th email discussion of the informational content included with the productions.  Schatz Decl. *Id.* ¶ 9, Ex. G.

On January 8, 2015, counsel for Escort sent Plaintiff's counsel an email regarding that

production and explaining:

> We previously informed you that as to some compiled code
> versions, before a backup occurred the version was modified to
> create a new version close in time to the original, and only that
> new version was saved by backup.  The versions that were saved
> by this process are close in time to the versions that were not
> saved, and they have been produced to you.  We produced versions
> that were saved close in time because those versions could be used
> to reconstruct the version that was not saved.  *In connection with
> this, Escort has also produced informational content, in directories
> or files using the name MODIFICATIONS, that specifically
> explains the changes or parameters to be used with the saved
> source, for it to compile into the hexadecimal files listed in the
> Compatibility Log that is used in products.*  Escort provided that
> informational content as a professional courtesy to help you
> understand its source code, and *it explains the manner in which
> particular versions from a common code base file can be compiled.*
> Our understanding is that any competent programmer should be
> able to understand the informational content provided.
>
> *. . . . Please let us know if you have any questions about the
> informational content provided to you in connection with Escort's
> productions, so we can assist you further.*

*Id.* Ex. I, p.1, 4th ¶ (emphasis added).

Finally, Escort's counsel stated, "If you wish to depose the programmers involved in the

original preparation of this code or preparation of the informational content we have included,

simply provide us with a deposition notice."  *Id.* Ex. I, p. 1, 5th ¶.

Instead of taking advantage of the information provided to him to obtain version 63 from

the source code, and instead of deposing the involved Escort programmers, Plaintiff filed this

Motion on February 4, 2015.  Dkt. 223.  Plaintiff's Motion makes no mention of any of the

efforts and offers Escort made that explained to him how to obtain version 63 from the source

code he had been provided.  *Id.*

**D.   The Source Code Escort Produced Allows Plaintiff To Obtain Source Code, Which Compiles Into Hex Code Identical to the Hex Code Installed In the Passport 9500ix in 2012 and Still Operating It Today.**

Escort believes that the source code and information produced to Plaintiff was sufficient to cure Plaintiff's apparent misunderstandings about version 63.  However, Escort nevertheless conducted its own internal review in order to confirm that the source code produced allows Plaintiff to obtain source code that compiles into version 63 Hex Files that are identical to the version 63 Hex File compiled in 2012.

**1.   Mr. Stevens' Compiling of Version 63.**

When Mr. Stevens was asked to provide source code for version 63 for production, he realized that he had not kept a copy of version 63 as it had been compiled on July 13, 2012, but instead, had made the minor changes described above (regarding supporting the foreign models) and saved it as version 64.  Stevens Decl. ¶¶ 18-19.  However, he did have a copy of version 62, and knew that two transposed lines of code produced an error in the startup process which he corrected prior to compiling version 63.  *Id.* ¶¶ 13, 19.  Mr. Stevens also confirmed that  the lines of code that corrected this error were included in the saved version 64.  *Id.* ¶ 19.

Accordingly, Mr. Stevens provided version 62 for production in this litigation, along with a "MODIFICATIONS" text file explaining how to correct the error in the startup process that was corrected in version 63, which was the only change needed so that the source code would produce the same Hex File as originally compiled for version 63 in 2012.  *Id.*  Version 62 and the MODIFICATIONS.txt file were produced to Plaintiff on November 21, 2014.  Schatz Decl. ¶ 8.

**2.   Mr. Ramey's Comparisons and Confirmation.**

In order to establish that the source code provided to Plaintiff can be compiled to produce a version 63 Hex File that is the same as the version 63 Hex File originally created in July 2012,

Escort retained a new expert in computer programming for this case, Mr. Tim Ramey, who undertook the following exercise. He first obtained the version 63 Hex Files available on Escort's website and those kept at Escort's production facility. Ramey Decl. ¶¶ 6, 7, 13. He then compared the two files and confirmed that they were identical, except for the discrete "bootloader" code[5] at the end of the Hex Files sent to the production facility. *Id*. ¶ 13.

He then obtained the version 62 source code produced to Plaintiff in this case and followed the instructions in the MODIFICATIONS.txt file provided to Plaintiff with that source code. *Id*. ¶¶ 5, 14. He then compiled those source code files, which created a Hex File. *Id*. ¶ 15. He then used a program to compare the version 63 Hex File he created to the version 63 Hex Files sent to Escort's production facility, and to the version on Escort's web server. *Id*. ¶¶ 16-17. In all cases, the version 63 software in these files were an exact, byte-for-byte match. *Id*.

Thus, there is no doubt that the version 63 source code was and still can be compiled into a version 63 Hex File matching the file referenced on the Product Compatibility Log. This confirms that no information was lost and that the version 63 source code was not despoiled.

## III.   ARGUMENT

Source code that compiles into the version 63 Hex Files can be obtained from the source code provided to Plaintiff and it compiles and functions identically to the version 63 source code compiled in mid-2012 and that continues to be used in the Passport 9500ix detector. Escort explained this to Plaintiff when the source code was produced to him. Thus, Plaintiff's contention that Escort despoiled version 63 is incorrect and unfounded and his Motion should be denied.

---

[5] Recall that the "bootloader" is a "program designed to be the first program that runs in the main processor of a radar detector and causes it to run the operating code." Stevens Decl. ¶ 16. The bootloader is loaded onto detectors at production and therefore is not included with the Hex Files placed on Escort's website to be downloaded onto previously purchased and in use detectors. *Id.*

**A.      Plaintiff's Spoliation Motion Fails Because Version 63 Has Not Been Destroyed and Compiles and Functions In The Same Way It Did in 2012.**

"Spoliation occurs when a party destroys or alters evidence, or fails to preserve evidence for another party in pending or reasonably foreseeable litigation." *Scentsy, Inc. v. B.R. Chase, LLC*, 2012 WL 4523112, *6 (D. Idaho Oct. 2, 2012). "A party engages in spoliation as a matter of law if they had some notice that the documents were potentially relevant to litigation before they were destroyed." *Id.*

Here, as explained above, source code that compiles into the version 63 Hex Files is readily obtainable in the form it existed in 2012, and exists in the source code previously produced to Plaintiff along with the "MODIFICATIONS.txt" file (also previously produced to Plaintiff) that explains the limited changes that were made.  Ramey Decl. ¶¶ 5-17 and Ex. B; Stevens ¶ 19; Schatz Decl. ¶ 8.  That version 63 source code compiles and functions identically to the version 63 source code compiled in mid-2012 and that continues to be used in the Passport 9500ix detector.  Ramey Decl. ¶ 17 Stevens ¶¶ 19-20.  Escort explained this to Plaintiff when the source code was produced to him.  *See* Schatz Decl. ¶¶ 708, Ex. F, p. 1, ¶ 2 (explaining the significance of the MODIFICATION.txt files), Ex. H (further explanation).  Yet, Plaintiff does not contend that he attempted to obtain version 63 from the source code produced, let alone that he was unable to.

The fact that source code that compiles the version 63 Hex Files is available from the source code produced to Plaintiff is clearly demonstrated by comparing the hexadecimal code ("Hex File") installed in the Passport 9500ix in 2012 with a Hex File created using the source code produced to Plaintiff.  Ramey Decl. ¶¶ 13-17; Stevens ¶¶ 19-20.  To ensure that the Hex File used for this test was accurate, Escort gathered the Version 63 Hex File compiled in 2012 from two separate sources—Escort's production facility where the version 63 Hex File has

remained unchanged since July 2012 and Escort's website where the version 63 Hex File has remained unchanged since October 2012 (version 6.63) and December 2012 (version 7.63). Ramey Decl. ¶¶ 6-7; Stevens ¶¶14-16; Martin Decl.; Resendes Decl.

The engineer that developed version 63 (Mr. Stevens) and an independent expert (Mr. Ramey) have each confirmed that the version 63 Hex File compiled from the source code produced to Plaintiff is identical to the version 63 Hex File sent to the production facility in 2012, and to the version 63 Hex File placed on Escort's webserver in 2012.  Ramey Decl. ¶¶ 16-17; Stevens ¶¶ 19-20.

Thus, there is no doubt that the source code produced to Plaintiff can be compiled into a version 63 Hex File matching the file referenced on the Product Compatibility Log.  This confirms that no information was lost and that the version 63 source code was not despoiled.

Plaintiff has failed to demonstrate spoliation.

**B.     Terminating Sanctions Are Not Justified Because There is No Evidence of Willful or Bad Faith Conduct by Escort.**

**1.     The Court Should Exercise Restraint in Awarding Sanctions Under its Inherent Authority.**

Under the law of the Ninth Circuit, "[t]here are two sources of authority under which a district court can sanction a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices, and the availability of sanctions under Rule 37 against a party who 'fails to obey an order to provide or permit discovery.'"  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (*quoting Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985)).  Here, as was the case in *Leon*, Plaintiff does not identify a violation of a discovery order as the basis for his request for sanctions. *Leon*,

464 F.3d at 958.  Thus, the only possible basis for an award of sanctions (evidentiary or monetary) is the Court's inherent authority.

"The exercise of a court's inherent powers must be applied with 'restraint and discretion' and only to the degree necessary to redress the abuse." *Reinsdorf v. Skechers USA, Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (*quoting Chambers v. Nasco, Inc.*, 501 U.S. 32, 45 (1991)). This "restraint and discretion" means that "courts should choose 'the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the vicitim[.]'" *Reinsdorf*, 296 F.R.D. at 626 (*quoting Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994)).

### 2. There is No Basis for an Award of Terminating Sanctions Against Escort as Requested By Plaintiff.

While not styled as such in Plaintiff's motion, Plaintiff is seeking terminating sanctions against Escort with respect to the Passport 9500ix because he asks the Court to direct a verdict in his favor on liability, leaving only the question of damages for trial.  Dkt. 223 at 12.  A directed verdict is akin to the most severe sanctions for spoliation of evidence, including dismissal and the striking of pleadings and affirmative defenses.  *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) ("A terminating sanction, whether default judgment against a defendant or dismissal of a plaintiff's action, is very severe," and "[o]nly willfulness, bad faith, and fault justify terminating sanctions."); *Pettit v. Smith*, 2014 WL 4425779, at *4 (D. Ariz. Sept. 9, 2014) (recognizing that the harsh sanction of dismissal or a directed verdict is a case-dispositive, terminating sanction).

Because Plaintiff seeks an award of sanctions, in the form of a "direct[ed] verdict of infringement as to the products subject to defendants' spoliation" (Dkt. 223 at 12), "a finding of 'willfulness, fault, or bad faith' is required for dismissal to be proper." *Leon*, 464 F.3d at 959.

Similarly in *Primus Auto Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997), the Ninth Circuit recognized that "[b]efore awarding sanctions under its inherent powers, however, the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.'" *Id.* (quotation omitted).  "A finding of bad faith is warranted where an attorney 'knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'"  *Id.* (quotation omitted).  The bad faith standard sets a "high threshold." *Id.*

"Before imposing the harsh sanction of dismissal, the district court must weigh several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Anheuser-Busch, Inc. v. Nat. Bev. Distrib.*, 33 F.3d 337, 348 (*quoting Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993)).

### a.    There is No Evidence of Willfulness, Fault, or Bad Faith By Escort.

As noted, Plaintiff must demonstrate willfulness, fault, or bad faith by Escort to justify its request for terminating sanctions under the Court's inherent authority.  *Primus Automotive Servs., Inc.*, 115 F.3d at 648-49.  There is absolutely no evidence in the record to support such a finding on this issue.  Plaintiff has no facts to show that Escort destroyed version 63, much less that it acted knowingly in doing so.

To the contrary, the record shows that version 63 has not been destroyed and that the source code produced to Plaintiff compiles into Hex Code identical to the Hex Code installed into the Passport 9500ix in 2012 and still operating it today.  Ramey Decl. ¶¶ 5-17; Stevens Decl. ¶¶ 13-19; Martin Decl.; Resendes Decl.  Escort explained to Plaintiff how he could obtain

version 63 from the source code he had in his possession. *See* Schatz Decl. ¶¶ 7-8, Ex. F, p. 1, (explaining the significance of the MODIFICATION.txt files), Ex. H (further explanation).

While it is unfortunate that Mr. Stevens did not save version 63 at the time, the changes he made to version 62 to arrive at version 63 were very minor and, more importantly, have nothing to do with the infringement issues in this case. Moreover, the fact remains that source code that compiles into the version 63 Hex Files can be obtained in their entirety from version 62, by simply following the instructions in the MODIFICATIONS.txt file provided to Plaintiff. Escort's efforts to obtain this source code and to explain to Plaintiff how to obtain it from the source code produced to him demonstrate how far Escort's conduct is from willful or bad faith.

In an attempt to cast aspersions on Escort, Plaintiff relies heavily on the facts found by the Court regarding the separate issue involving ESC17363. As the Court is aware, Escort and its prior counsel have already paid a significant price for that situation. Just because the Court determined Escort's prior counsel acted improperly with respect to ESC17363 does not mean (as Plaintiff argues) that Escort is culpable for spoliation in this context or that a finding of bad faith can be established through reference to those facts.

In sum, Plaintiff has no evidence to support the first factor relevant to an award of terminating sanctions as he lacks any evidence that Escort acted willfully. *See Primus Automotive Servs., Inc.*, 115 F.3d at 649 (reversing sanctions order against attorney where record lacked evidence to support finding of bad faith).

> **b.** **None of the Other Factors Support An Award of Terminating Sanctions Against Escort**

The Court must also consider and weigh other factors when faced with a request for terminating sanctions, including the public's interest in expeditious litigation, the Court's need to manage its docket, prejudice to the plaintiff, the public policy favoring disposition on the merits,

and the availability of less drastic sanctions.  *Anheuser-Busch, Inc.*, 33 F.3d at 348.  Here, none

of the factors support the harsh remedy requested by Plaintiff.

### (1)   Public's Interest in Expeditious Resolution of Litigation and the Court's Need to Manage Its Docket.

Plaintiff offers nothing to support a finding in his favor on either of these issues. To the

contrary, by filing this motion, Plaintiff has delayed and complicated, rather than expedited, this

litigation.  Escort provide him with instructions on how to obtain version 63 from the source

code he already had in his possession.  *See* Schatz Decl. ¶¶ 7-8, Ex. F, p.1, (explaining the

significance of the MODIFICATION.txt files), Ex. H (further explanation).   Escort also offered

to further assist and make its engineers available for deposition so Plaintiff could understand

exactly how Escort confirmed that the source code compiled into Hex Code identical to the Hex

Code installed into the Passport 9500ix in 2012 and that still operates its main processor today.

Instead of asking for further assistance or taking a deposition so he could confirm what

Escort told him, Plaintiff chose to file this Motion, which not only will take up the Court's time

unnecessarily, but is deterring Escort's new counsel from responding to Plaintiff's numerous

email inquiries, and is inhibiting both parties from proceeding with discovery and moving toward

resolution.

Through the filing of this Motion, Plaintiff is not advancing the public's interest in

efficient resolution of this litigation or the Court's need to manage its docket.

### (2)   Plaintiff Is Not Prejudiced by the Source Code Produced—It Functions Just As It Did in 2012.

The Court must also consider the prejudice, if any, to the party seeking sanctions.

*Anheuser-Busch, Inc.*, 33 F.3d at 348.  Plaintiff's claim of prejudice owing to Escort's supposed

spoliation fails for multiple reasons.

DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS DUE
TO SPOLIATION OF EVIDENCE (DKT. NO. 223) - PAGE 16

As explained above, the source code produced can be compiled into Hex Files identical to the production facility Hex Files and webserver Hex Files that operate the Passport 9500ix detector.  As both parties have laid out in prior pleadings, it is the Hex Files (or binary code) that directly causes Escort's devices to operate in a particular way.  *See* Dkt. 196, p. 5-6 (Plaintiff's brief explaining, "This binary code file . . . cause the product to operate as the designer intended"); Dkt. 192, p. 2-5 (Defendant's brief explaining, "it is therefore the Hex Files which directly cause Escort's devices to operate in a particular way.").

Under these circumstances, where Plaintiff seeks to prove that the way the Accused Products *function*, there can be no prejudice.  Escort has demonstrated that the source code it produced to Plaintiff compiles into Hex Files that are identical to the Hex Files that controlled the Passport 9500ix detector in 2012 and that controls it now.  *See* Ramey Decl. ¶¶ 15-17; Stevens Decl. ¶¶ 13-19.  In other words, there can be no prejudice where Escort has produced the source code that compiles into the Hex Files that has and continue to control how the Passport 9500ix functions.

Moreover, there can be no prejudice because Escort has explained to Mr. Fleming exactly how to obtain that source code to obtain version 63.  *See* Schatz Decl. ¶¶ 7-8, Ex. F, p.1, (explaining the significance of the MODIFICATION.txt files), Ex. H (further explanation).

Plaintiff has all the code he needs to present his case.  There is no prejudice.

### (3)  The Public Policy Favoring Disposition of Cases on Their Merits.

The fourth factor—the public policy favoring disposition of cases on their merits—favors Escort.  Through his request for a directed verdict in Plaintiff's favor on liability, Plaintiff seeks to foreclose a jury from deciding the merits of Plaintiff's infringement claims with respect to the Passport 9500ix detector.  The Court already twice considered and rejected application of

terminating sanctions when it ruled on the issues surrounding the production of ESC17363 and, most recently, in connection with Plaintiff's second motion for terminating sanctions.  *See* Dkt. 231.  Still, Plaintiff seeks to revive that issue and continue to cast aspersions on Escort through yet another motion.  Plaintiff should not be allowed to repeat arguments to extrapolate the ruling regarding ESC 17363 into a ruling foreclosing Escort from offering a defense.

For the reasons noted above, the public policy favoring disposition of cases on their merits should be honored here and Plaintiff's motion for directed verdict should be denied. Plaintiff has what he needs to pursue his infringement case against Escort—version 63 that compiles into the Hex Code that controls how the Passport 9500ix functions.

### 3.      The Availability of Less Drastic Sanctions.

Even if the Court were able to conclude that Escort spoliated version 63, less drastic sanctions than those requested by Plaintiff would be appropriate. *See In re Napster, Inc.*, 462 F.Supp.2d at 1074 (recognizing that where lesser sanctions would be effective, "a default sanction is inappropriate").

In *Oleksy v. General Electric Co.*, Case No. 6 C 1245, 2014 WL 3820352 (N.D. Ill. Aug. 1, 2014), the court considered whether to impose the sanction requested by the plaintiff, an adverse inference instruction under Federal Rule 37(b)(2).  The court denied the plaintiff's requested sanction because there was no evidence that General Electric acted in bad faith.  *Id.* *3. As an alternative and lesser sanction, however, the court ordered General Electric to recreate the allegedly spoliated source code.  *Id.* *4 ("Given that GE has not preserved complete sequence of code between 2006 and 2009, it shall reconstitute or recreate the code at its own cost."); *see also Centrifugal Force, Inc. v. Softnet Comm'n*, 783 F.Supp.2d 736, 745 (S.D.N.Y. 2011) (recognizing that source code could be decompiled from existing installation files).

DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE (DKT. NO. 223) - PAGE 18

To the extent the Court concludes that spoliation occurred—fiercely disputed by Escort—then the only appropriate sanction would be to order Escort to produce version 63 to Plaintiff. *See Oleksy*, 2014 WL 3820352 at *4.  As discussed, Escort has already explained to Plaintiff the small change to version 62 needed to obtain version 63.  And Escort has already produced source code to Plaintiff that compiles into the version 63 to Hex Files.  Stevens Decl. ¶¶ 5-17; Schatz Decl. ¶¶ 13-19; Schatz Decl. ¶ 8.

### C.   Monetary Sanctions are Not Justified Because Plaintiff Has No Evidence that Defendants Acted Willfully or that Relevant Evidence Was Spoliated

In addition to the terminating sanctions discussed above, Plaintiff also summarily requests "that he be made whole through an order compelling defendants to reimburse all of Mr. Fleming's associated costs and legal fees, as is customary in such situation."  Dkt. 223 at 13.  Plaintiff does not explain what he means by "all" but Escort presumes it means all fees and costs incurred in prosecuting the litigation by Plaintiff.  As explained by the Court in *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d at 648-49, an explicit finding of bad faith "is especially critical when the court uses its inherent powers to engage in fee-shifting, as it did in this case." *See id.* ("[T]he narrow exceptions to the American Rule effectively limit a court's inherent power to impose attorney's fees as a sanction to cases in which a litigant has engaged in bad faith conduct or willful disobedience of a court's orders.").

Far from acting in bad faith, the record shows that Escort has actively worked to preserve and produce the universe of information requested by Plaintiff, including the following:

1)  Escort has—prior to Plaintiff's filing of this motion—produced or can replicate complete copies of all source code, header code, and hex code for all versions of the relevant accused products at issue;

2)  Escort has—prior to Plaintiff's filing of this motion—produced the source code and specific instructions needed to obtain version 63 from the source code already in his possession;

3)  Escort has and stands willing and ready to again produce a standalone version of source code that compiles into the version 63 Hex Files if Plaintiff or the Court so desires; and

4)  Escort has—prior to Plaintiff's filing of this motion—offered to make its engineers available for deposition so Plaintiff can ask them about version 63.

Thus, the very request that Plaintiff should receive an order awarding him all fees and costs incurred in this litigation is unfair and wholly inconsistent with the spirit of the adversarial system.  There are absolutely no facts from which the Court could conclude that Escort acted in "bad faith," much less willfully or otherwise in an improper manner where Plaintiff has been provided with the necessary code and instructions on how to obtain version 63.

By this Motion, Plaintiff seeks, for at least the third time, to extrapolate his "victory" obtained in connection with the Court's ruling on the ESC17363 (an issue that is separate from the issue under consideration with this motion) and obtain a windfall awarding him all fees and costs incurred in this litigation.  Far from "customary", as he suggests, Plaintiff's request for an award of all fees and costs is an extraordinary remedy, improper and unsupported by the record.

Plaintiff has no evidence that Escort destroyed version 63, much less intentionally so, or that any prejudice could not be resolved through a lesser sanction such as an order requiring Escort to produce the source code.   As Escort has already done.

## IV.  CONCLUSION

For the foregoing reasons, Escort requests that the Court deny Plaintiff's Second Motion for Sanctions Due to Spoliation of Evidence (Dkt. 223).

DATED March 2, 2015

HOLLAND & HART LLP


By s/ J. Walter Sinclair _____
J. Walter Sinclair
Timothy P. Getzoff

Attorneys for Defendants
Escort, Inc. and Beltronics USA, Inc.

<h3 style="text-align:center">CERTIFICATE OF SERVICE</h3>

I HEREBY CERTIFY that on the 2nd day of March, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Steven S. Schossberger     sschossberger@hawleytroxell.com
Bradlee R. Frazer       bfrazer@hawleytroxell.com
Michael S. Dowler      mike@parklegal.com

*Attorneys for Plaintiff*

Brian P. Muething       bmuething@kmklaw.com
Bryce James Yoder      byoder@kmklaw.com
Keely E. Duke        ked@dukescanlan.com
Rachael Anne Rowe      rrowe@kmklaw.com
Robert Blaine White      rbw@givenspursley.com

*Attorneys for Best Buy Co., Inc.; Amazon.com, Inc.; Hayneedle, Inc; Fry's Electronics; Herrington Catalog; Buy Radar Detectors, Inc.; Best Radar Detectors; ABT, Inc.; J&R Music and Computer World; Sears Holding Corp.; 1stRadarDetectors; Beach Camera/Buydig.com, Inc.; AM Merchandising, Inc.; Excel Distributing, Inc.; DBSouth, Inc.; Fulfillment Services, Inc.; Car Toys, Inc.; DAS Distributors, Inc.;*

      s/J. Walter Sinclair _____
      of Holland & Hart LLP

7526700_3

DEFENDANTS' RESPONSE TO PLAINTIFF'S SECOND MOTION FOR SANCTIONS DUE TO SPOLIATION OF EVIDENCE (DKT. NO. 223) - PAGE 22