Michael S. Dowler
Park, Vaughan, Fleming & Dowler LLP
5847 San Felipe, Suite 1700
Houston, TX  77057
Telephone:  713.821.1540
Facsimile:  713.821.1401
Email:  mike@parklegal.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING, | ) Case No. 1:12-cv-0066-BLW |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) PLAINTIFF'S MOTION TO COMPEL |
| ESCORT INC., ET. AL, | ) ENFORCEMENT OF A COURT ORDER |
| | ) |
| Defendants. | ) |
| | ) |

Mr. Fleming hereby moves for an order compelling defendants to comply with the Court's order directing defendants to identify the "actual" code used by defendants' accused products.  (Dkt. No. 231, Order at pp. 7-8.)  Defendants have refused to comply, thereby necessitating this motion.

### FACTUAL BACKGROUND

The Court's Local Patent Rules set out a simple disclosure requirement for patent cases like this one.  Patentees must identify the products they are accusing of infringement, followed by the accused infringer's disclosure of the source code that actually operates those accused products.  (Dist Idaho Loc. Patent R. 3.1; 3.4(a); *see also,* Dkt. No. 178, Order at pp. 9-10 ("All of this could have been avoided if Escort had provided the source code that actually operated the Pro 500 as required by Local Rule 3.4(a)…").)  Despite the clarity and simplicity of these Rules as the Court acknowledged, defendants' disclosure of source code has been an unmitigated

disaster.   After years of discovery and various Court orders, we now know that defendants

disclosed code they knew was never used by any of their accused products in an effort to dupe

Mr. Fleming into believing they did not infringe.   Indeed, the Court specifically found that

defendants' source code disclosure was "fraudulent".  (Dkt. No. 208, Order at p. 4 ("This is just

the type of fraud that opens up all communications related to ESC17363 to discovery.").)

Despite the Court's fraud finding, defendants' obfuscation of the code that actually

operates their accused products continued, thereby forcing Mr. Fleming to file yet another

motion seeking an order compelling defendants to comply with their source code disclosure

obligations.  (Dkt. No. 196, Motion.)  That motion requested the following relief:

> Mr. Fleming requests an order compelling Escort to use *separate* bates numbers
> to identify the **actual** binary code file loaded into the main processor and the
> **actual** binary code file loaded into the GPS processor of each revision of each
> accused product.  If Escort does not possess the **actual** file (e.g., because it has
> been spoliated), it must say so.  Second, Mr. Fleming requests an order
> compelling Escort to use *separate* bates numbers to identify the source code files
> and project files that were **actually** used to compile—and thereby create—each
> previously identified binary code file.  If Escort does not possess the **actual**
> source code files and project files (e.g., because one has been spoliated), it must
> say so.  [chart omitted]  Mr. Fleming also requests an order compelling Escort to
> verify the accuracy of its answers by a sworn affirmation from one of its officers.

(*Id*. at p. 10 (emphasis in italics is original; emphasis in bold is added).)

The Court granted Mr. Fleming's motion, ruling as follows:

> Fleming has filed a motion to compel Escort to identify for each revision of each
> accused product the binary code, source code and project files **actually** loaded
> into the main processor and the GPS processor of each product.  Fleming has
> prepared a chart for Escort to complete by providing all of this information.  *See*
> *Fleming Brief (Dkt. No. 196)* at pp. 10-11 (containing Fleming's chart).  In its
> response brief, Escort states that it 'remains ready willing and able to work with
> [Fleming] to complete the chart set forth in his motion to compel . . . .' *See Escort*
> *Brief (Dkt. No. 210)* at p. 11.  The Court will therefore grant Fleming's motion
> and direct the parties to work together to complete the chart.

(Dkt. No. 231, Order at pp. 7-8 (emphasis added).)  The Court's order issued on February 19,

2015.  (*Id*.)  On March 31, 2015, defendants produced their source code chart.  (Exh. 1.)

The chart defendants produced does not comply with the Court's order because defendants have refused to identify the code files "*actually*" used by their accused products, as expressly requested by Mr. Fleming and ordered by the Court.  Accordingly, Mr. Fleming wrote to defendants explaining the issue as follows:

> Leaving aside for the moment the issue of the authenticity of the binary code files, defendants' chart fails to provide the source code files and project files that were *actually* used to compile—and thereby create—the binary code *actually* loaded into the accused products.  Both Mr. Fleming's motion and the Court's order referenced these "*actual*" files.  What you have given us are source and project files that *were not actually used* to compile the binary code actually loaded into the accused products.  As one example only, the binary code for the GX65, Revision J bears a 1/25/12 date (in the Product Compatibility Log), yet the source and project files cited in defendants' chart both were modified on 3/19/15.  It is axiomatic that code files created on 3/19/15 (*i.e.,* undoubtedly during the process of preparing defendants' code chart) are not the *actual* files used to compile the 1/25/12 binary code.  We all know the reason for this--defendants failed to preserve the actual files compiled to generate the binary code actually loaded into the accused products.  We also all know that defendants' engineers now have gone back and modified subsequent revisions of those source and project files in an effort to create source code files that will compile to the binary file that was actually loaded.  All of this is obvious from the circumstances and has been acknowledged in several of defendants' prior briefs in this case.  Indeed, your letter to us enclosing defendants' code chart acknowledges as much, stating:
>
>> For your information, Escort's software engineers Jeff Stevens and Steve Orr have compared the produced files listed on the Chart with the files produced from Escort's manufacturing facility and confirmed their accuracy.  In other words, Escort engineers compiled each of the produced source code files, compared them with the binary code files from the manufacturing facility, and confirmed that the files match, thus confirming that the produced source code is identical to what was originally compiled and installed onto the commercial devices.
>
> The emphasized portion of your statement is not true.  Both Mr. Orr and Mr. Stevens will tell you that.  Indeed, Mr. Orr has testified as such in this case.  Specifically, as both gentlemen will agree (and as Mr. Orr has testified), there could be an infinite number of differences between two code files and yet they could still compile to the same file.  (*See also,* Dkt. No. 243.)
>
> We are going to litigate defendants' compliance with the Court's order and the veracity of your representations to us if we cannot resolve them with you first.  To do that, we need defendants to comply with the Court's order to "identify for each

revision of each accused product the binary code, source code and project files ***actually*** loaded into the main processor and the GPS processor of each product". (Dkt. No. 231, Order at p. 7.)  If those files no longer exist, defendants must say so.  We also need defendants to verify the accuracy of its answers by a sworn affirmation from one of its officers.

(Exh. 2, party correspondence.)

Defendants responded by refusing to supplement their source code disclosure to identify the ***actual*** code files used by their accused products.  In doing so, defendants ignored the substance of Mr. Fleming's letter, ignored the referenced averments by Mr. Orr, and maintained its position that "a recreated version of a source code file" constitutes the "actual" source code file.  (Exh. 3, party correspondence.)  Defendants also conspicuously ignored Mr. Fleming's request for one of its officers to swear to the veracity of defendants' disclosure.  (*Id*.)

## ARGUMENT

This is not a complicated issue.  Mr. Fleming simply wants either (1) the "***actual***" code files used by the accused products or (2) defendants' acknowledgment that those "***actual***" code files are not available.  (*See* Dkt. No. 178, Order at pp. 9-10 ("All of this could have been avoided if Escort had provided the source code that ***actually*** operated the Pro 500 as required by Local Rule 3.4(a)…") (emphasis added).)  The code files for the accused products ultimately are going to be introduced as evidence in this case, and at least for foundational evidentiary reasons everyone needs to know whether or not we are dealing with the "***actual***" code files used with those products.  If not, the parties can litigate the authenticity, hearsay, and otherwise admissible nature of code files that are not the "***actual***" code files used by the accused products.  But, in order to do that, we first need to know whether or not we are dealing with "***actual***" code files, which is ***exactly*** what the Court ordered when compelling defendants to identify their code files:

Fleming has filed a motion to compel Escort to identify for each revision of each accused product the binary code, source code and project files ***actually*** loaded into the main processor and the GPS processor of each product.  Fleming has

> prepared a chart for Escort to complete by providing all of *this* information.  *See Fleming Brief (Dkt. No. 196)* at pp. 10-11 (containing Fleming's chart).  In its response brief, Escort states that it 'remains ready willing and able to work with [Fleming] to complete the chart set forth in his motion to compel . . . .'  *See Escort Brief (Dkt. No. 210)* at p. 11.  The Court will therefore grant Fleming's motion and direct the parties to work together to complete the chart.

(Dkt. No. 231, Order at pp. 7-8 (emphasis added); *see also* Dkt. No. 178, Order at pp. 9-10 ("All of this could have been avoided if Escort had provided the source code that *actually* operated the Pro 500 as required by Local Rule 3.4(a)…") (emphasis added).)

Nor are the facts in dispute.  Taking the example Mr. Fleming provided in his correspondence, defendants cannot and will not dispute that the binary code for the GX65, Revision J bears a 1/25/12 date (in the Product Compatibility Log for that product).  This means the "*actual*" code for that product was complete by that date.  (*See e.g.,* Dkt. No. 228, Defendants' Response Brief at p. 16.)  Nevertheless, as defendants also cannot and will not dispute, the code for that product, as identified in defendants' code chart, bears a 3/19/15 "modified" date.  In other words, defendants modified the code 12 days before identifying it in their chart and producing it to Mr. Fleming.  Again, this is not rocket science.  It is axiomatic that the modified code file is not the "*actual*" code file since the code was modified at least once between 1/25/12 and 3/19/15.

Defendants also cannot and will not dispute the reason for at least some of the modifications.  As the Court has acknowledged, it is not unusual for a company to modify its code after the code has been implemented in a product.  (Dkt. No. 231, Order at p. 4.)  The company may have many legitimate reasons for doing so, including avoiding infringement (*id*.), removing "bugs" from its operation, or simply improving its operation.  In at least some cases, that is what defendants did with their code.  For example, after defendants completed the code for the GX65, Revision J on 1/25/12, they modified that code.  While there is nothing wrong

with that (assuming it was not for a fraudulent reason as the Court found regarding ESC17363), it does give rise to the present issue between the parties.

Specifically, defendants will not deny that they failed to preserve the "*actual*" code files as they existed on 1/25/12.  Instead, they "wrote over them" in the process of modifying the code, just like Mr. Fleming wrote over the original draft of this motion while editing it.  In an all out effort to avoid simply admitting that, defendants admit they recently (for purposes of this case) took the modified code and tried to re-modify it so that it supposedly operates the same as the original, actual code files.  Whether defendants' modifications suffice to produce code that is admissible in this case is an issue the parties can and will litigate in the future.  For now, however, Mr. Fleming is simply seeking to establish the facts, *i.e.,* whether defendants possess the *actual* code files used with the accused products, not code files recently modified or transformed to allegedly represent the *actual* code files.

## CONCLUSION

For the foregoing reasons, Mr. Fleming requests an order compelling defendants to complete their code chart as originally sought and ordered, namely:

> an order compelling Escort to use *separate* bates numbers to identify the *actual* binary code file loaded into the main processor and the *actual* binary code file loaded into the GPS processor of each revision of each accused product.  <u>If Escort does not possess the *actual* file, it must say so.</u>  Second, Mr. Fleming requests an order compelling Escort to use *separate* bates numbers to identify the source code files and project files that were *actually* used to compile—and thereby create—each previously identified binary code file.  <u>If Escort does not possess the *actual* source code files and project files, it must say so.  Mr. Fleming also requests an order compelling Escort to verify the accuracy of its answers by a sworn affirmation from one of its officers.</u>

April 9, 2015                           Respectfully Submitted

                              _____/s/_____
                              Michael S. Dowler
                              Park, Vaughan, Fleming & Dowler, LLP

5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540
(713) 821-1401 (facsimile)

Attorneys for Plaintiff Hoyt A. Fleming

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 9th day of April 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Bradlee R. Frazer<br>Hawley Troxell Ennis & Hawley LLP<br>877 Main Street, Suite 1000<br>Boise, ID 83702 | Bryce J. Yoder<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202 |
| Steven F. Schossberger<br>Hawley Troxell Ennis & Hawley LLP<br>877 Main Street, Suite 1000<br>Boise, ID 83702 | Rachael A. Rowe<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202 |
| Brian P. Muething<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202 | Keely E. Duke<br>Duke Scanlan Hall PLLC<br>1087 W. River Street, Suite 300<br>Boise, ID 83702 |
| J. Walter Sinclair<br>Holland & Hart LLP<br>800 West Main Street, Suite 1750<br>Boise, ID 83702 | Robert B. White<br>Givens Pursley LLP<br>601 West Bannock Street<br>Boise, ID 83702 |
| Timothy P. Getzoff<br>Holland & Hart LLP<br>800 West Main Street, Suite 1750<br>Boise, ID 83702 | |

/s/

Michael S. Dowler