Michael S. Dowler
Park, Vaughan, Fleming & Dowler LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
Telephone: 713.821.1540
Facsimile: 713.821.1401
Email: mike@parklegal.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING,<br><br>Plaintiff,<br>v.<br><br>ESCORT INC., ET. AL,<br><br>Defendants. | Case No. 1:12-cv-0066-BLW<br><br>PLAINTIFF'S RENEWED MOTION FOR TERMINATING SANCTIONS |

**INTRODUCTION**

Mr. Fleming hereby renews his motion for terminating sanctions. In response to Mr. Fleming's original motion (Dkt. No. 144), the Court found that defendants and defense counsel fraudulently advanced evidence they knew falsely described the operation of their accused products. (Dkt. No. 178, Order at pp. 1-13; Dkt. No. 208, Order at pp. 3-6.) Nevertheless, the Court indicated it was unwilling at the time to award terminating sanctions unless additional discovery (subsequently presented by Mr. Fleming in a renewed motion) shows that the fraudulently advanced evidence was not created in the "normal course of product development" but instead was "fabricated" for litigation purposes.

Mr. Fleming now has conducted that additional discovery, and what it shows is sickening. The evidence shows defendants and counsel created and implemented a self-described "strategy" to dupe Mr. Fleming, the Court, and the jury by modifying the source code

used by their accused products just prior to producing it. Here is how defendants' chief source code engineer described it in an email exchange between outside counsel, defendants' officers, and defendants' other source code engineers:

> Brett - We will have to review the strategy for modifying the C sources (not attached) before producing these to Fleming. In the prior update, you had me substitute in strings like "GRID METHOD" in place of "GeometricAnalysisMethod".

The purpose of defendants' "strategy" obviously had nothing to do with the "normal course of product development" since the code changes were perpetrated immediately prior to producing the code to Mr. Fleming. Defendants' chief source code engineer even described the fabrications as "needed to support one of the arguments they will be making in the next trial".

> Brett has asked that we use the alternate name (using 'GRID') as it appears in that correspondence because the alternate name is needed to support one of the arguments they will be making in the next trial.

And, that is exactly what happened. The evidence shows defendants implemented their "strategy" by citing the exact fabricated lines of code only days later in their pleadings and other contentions, expressly touting the secreted fabrications as giving rise to their non-infringement defense for every accused product.

The depravity of defendants' and counsel's willingness to destroy the sanctity of the judicial process by fabricating evidence is shocking and unprecedented. In such circumstances the Ninth Circuit recently held that a case must be terminated when the district court must apply "law to lies". That is the case here, where defendants and counsel secretly carried out a self-described "strategy" of fabricating their source code just before producing it and relying on the fabrications for their non-infringement defenses. Indeed, as other courts across the nation also have ruled, the courthouse doors are not open to a party so open, prone, and actively engaged in dishonesty that the prospect of substantial justice is jeopardized. Because that is the situation here, this case should be terminated in Mr. Fleming's favor.

**PROCEDURAL BACKGROUND**

Mr. Fleming filed a first motion for terminating sanctions because he discovered—as the Court expressly found—that defendants and defense counsel fraudulently advanced evidence in their pleadings, discovery responses, Local Rule disclosures, and correspondence, which they knew falsely described the operation of their accused products. (Dkt. No. 178, Order at pp. 1-13.) The following is an excerpt from the Court's fraud findings:

> Taking Escort at its word, the following is undisputed: (1) In March of 2013, Escort cited specific lines of source code from ESC17363 in its First Amended Answer and Counterclaim as a defense to infringement; (2) In May of 2013, Escort filed Non-Infringement Contentions – pursuant to Local Rule 3.4 that requires production of the source code operating the accused devices – citing ESC17363 as a defense to infringement and produced a physical copy of the source code to Fleming; (3) Escort's counsel represented to Fleming's counsel that all the source code had been produced; (4) Escort failed to explain in its production of ESC17363 that the source code was not being currently used in any Escort accused device being sold commercially, and that Escort only hoped to use it commercially – or some portion of it – in the future; (5) ESC17363 in its entirety has never been used in any commercially produced Escort product and was only used during tests of the 9500ix product; (6) Some lines of source code contained in ESC17363 eventually were used in commercial products by January of 2014 (and perhaps as early as November of 2013).
>
> The Court will assume the truth of Escort's representations that it did not fabricate ESC17363, and that it intended to eventually use it to operate Escort's accused devices. To find otherwise would require an evidentiary hearing following discovery. <u>While discovery may reveal fabrication – and support a renewed motion by Fleming at that time – the Court cannot now find, on the basis of this record, that Escort has fabricated the source code contained in ESC17363.</u>
>
> However, assuming ESC17363 was not fabricated does not resolve this motion in Escort's favor. Even with this assumption, Escort's production of ESC17363 was misleading and caused Fleming to waste considerable resources holding Escort to account.
>
> Escort's production was misleading because it represented that ESC17363 was the current operating source code for the Pro 500 even though Escort was not using ESC17363 in the Pro 500. At the same time, Escort's counsel represented to Fleming's counsel that all the source code had been produced, when in fact that was not true. This constitutes misleading conduct by Escort's counsel.

> * * * * * * * * * * * * *
>
> In this case, Escort's counsel represented that ESC17363 operated Escort's accused devices knowing that ESC17363 did not operate any accused device. This false representation was beyond reckless and was made in bad faith because Escort's counsel knew it was not true. The Court will therefore award attorney fees as sanctions under both § 1927 and the Court's inherent power. Thus, the Court will grant Fleming's motion for sanctions. Fleming asks the Court to go further and enter judgment against Escort, but the Court finds that more limited sanctions are the appropriate remedy. Fleming also seeks an order compelling Escort to show cause why they should not be sanctioned. <u>The Court's award of attorney fees is a sufficient sanction at this stage of the proceedings. If discovery reveals that source code was fabricated, as Fleming alleges, the Court will allow Fleming to renew its motion for an order to show cause.</u>

(Dkt. No. 178, Order at pp. 8-11 (emphasis added).)

Mr. Fleming pursued the Court's invitation to take additional discovery to show this case should be terminated due to defendants' fabrication of evidence. Specifically, Mr. Fleming filed a motion to compel (pursuant to the crime-fraud exception) seeking defendants' production of all privileged information relating to ESC17363. (Dkt. No. 183.) The Court granted the motion, holding as follows:

> In an earlier filed decision, the Court found that Escort and its defense counsel – Gregory Ahrens and Brett Schatz – knowingly misled Fleming, warranting a sanction of attorney fees. *See Memorandum Decision (Dkt. No. 178).* Specifically, they falsely claimed that the source code identified as ESC17363 was the current operating source code for Escort's commercially sold products and that it provided a complete defense to Fleming's infringement charges.
>
> * * * * * * * * * * * * *
>
> The Court has already found by a preponderance of the evidence that Escort falsely claimed that (1) the source code found in ESC17363 was the current operating source code for Escort's commercially sold products; (2) ESC17363 provided a complete defense to Fleming's infringement challenges; and (3) Escort had produced all the source code. This is just the type of fraud that opens up all communications related to ESC17363 to discovery. Those communications are discoverable because Escort's false claims raise a substantial question – not yet answered – whether ESC17363 was a complete fabrication. <u>While Escort eventually conceded that ESC17363 was never a current operating code for any product, Escort claimed that it created that source code in the normal course of</u>

> product development. But that claim is naturally called into question by the fraudulent way that Escort portrayed ESC17363 as a complete defense. Fleming intends to test Escort's representations – made in sworn statements submitted to the Court – by examining all of Escort's communications regarding ESC17363. If ESC17363 was a complete fabrication, that would raise a substantial question as to whether other source codes submitted by Escort as a defense to the infringement charges were similarly fabricated. Under these circumstances, Fleming has the right to outright disclosure of all communications related to ESC17363.

(Dkt. No. 208, Order at pp. 1-5 (emphasis added).)

The Court's order compelling defendants' production issued on January 9, 2015. (Dkt. No. 208, Order.) Defendants avoided the Court's order for as long as possible, which required several conferences with Mr. Metcalf to finally obtain the first production of any responsive documents more than four months later. While issues remain regarding the completeness of defendants' production, the documents produced show that counsel and defendants fabricated ESC17363 by altering it in numerous and substantial ways *immediately* prior to identifying and relying on it in their pleadings, disclosures, and discovery responses as the foundational premise for all their non-infringement defenses in this case.

More specifically, defendants' documents show ESC17363 was not developed in the normal course of defendants' product development and—in fact—was fabricated through the following sequence of events:

(1) counsel requested and received (from defendants) certain product source code so that counsel could draft defendants' amended defense/counterclaim of non-infringement;

(2) the next day counsel delivered the received code to his litigation paralegal for production as ESC17363;

(3) the next day counsel and defendants had an "extended telephone conference" regarding changes they proposed making to the code that would support a non-infringement defense/counterclaim;

(4) over the next five days defendants made 109 changes to the code and

delivered that now "litigation-ready" code to counsel;

(5) the next day counsel delivered the "litigation-ready" code to his paralegal for production as ESC17363*, i.e.,* as a replacement for the real/other "business" code he had delivered for production 7 days earlier;

(6) six days later defendants filed their amended answer/counterclaims expressly relying on the 109 changes as the basis for all their non-infringement contentions;

(7) as the Court found and as defendants now admit, ESC17363 was *never* used in any commercial product;

(8) in fact, none of the 109 changes defendants and counsel made to ESC17363 has ever been implemented in any version of any code used in any commercial product; and

(9) a subsequent email between defense counsel and defendants' officers and engineers expressly references and confirms defendants' diabolical plan to dupe Mr. Fleming, the Court, and the jury with fabricated code, stating: "We will have to review the strategy for modifying the C sources [*i.e.,* source code] before producing these to Fleming."

Defendants' sickening "strategy" of fabricating evidence is corroborated below in step-by-step fashion by the documents defendants' produced in response to the Court's order compelling their production.

**FACTUAL BACKGROUND**

The facts germane to defendants' "strategy" for fabricating evidence begin on March 5, 2012 when defendants filed their original answer and counterclaim. (Dkt. No. 8.) That answer/counterclaim was so vague and otherwise devoid of factual support that Mr. Fleming responded by filing a Rule 12(b) motion to dismiss. (Dkt. No. 18.) The Court granted Mr. Fleming's motion one year later on March 6, 2013 and gave defendants 21 days to amend their pleading to identify the factual support for, among other things, their non-infringement defense and counterclaim. (Dkt. No. 31, Order at p. 7 ("Fleming is entitled to an explanation of these defenses that includes specific allegations. The Court will give Escort the same opportunity [21

days] to redraft these affirmative defenses that it gave with respect to the counterclaims.”).)

The amended pleading defendants filed 21 days later (on March 27, 2013) is the pleading in which defendants first fraudulently advanced the ESC17363 source code as a complete defense to all their infringement. Recall the Court’s prior holding in that regard:

> Taking Escort at its word, the following is undisputed: (1) In March of 2013, Escort cited specific lines of source code from ESC17363 in its First Amended Answer and Counterclaim as a defense to infringement; (2) In May of 2013, Escort filed Non-Infringement Contentions – pursuant to Local Rule 3.4 that requires production of the source code operating the accused devices – citing ESC17363 as a defense to infringement and produced a physical copy of the source code to Fleming; (3) Escort’s counsel represented to Fleming’s counsel that all the source code had been produced; (4) Escort failed to explain in its production of ESC17363 that the source code was not being currently used in any Escort accused device being sold commercially, and that Escort only hoped to use it commercially – or some portion of it – in the future; (5) ESC17363 in its entirety has never been used in any commercially produced Escort product and was only used during tests of the 9500ix product; (6) Some lines of source code contained in ESC17363 eventually were used in commercial products by January of 2014 (and perhaps as early as November of 2013).

(Dkt. No. 178, Order at p. 8.)

Mr. Fleming now has discovered that during the 21 days the Court gave defendants to amend their pleadings*, i.e.,* between the Court’s March 6, 2013 Order and defendants’ March 27, 2013 amended pleading, defendants and counsel implemented their self-described “strategy” of fabricating ESC17363. Indeed, the facts show defendants possessed a “business” version of ESC17363 they allegedly were developing for commercial purposes and a “litigation” version they fabricated for use in their amended pleading and elsewhere throughout this case.

Specifically, the facts show that after defendants lost the *Fleming I* case in July 2012, they sought to redesign their source code so their products arguably would no longer infringe. It is undisputed that defendants referred to this code as their “revised” code. Accordingly, as documented by the email exchange below, shortly after the Court’s March 6, 2013 order compelling more detailed pleadings, defense counsel (Mr. Brett Schatz and Mr. Tom

Humphrey)[1] had a telephone conference with defendants' source code engineer (Mr. Orr)[2], after which they requested that Mr. Orr send them defendants' "revised" code.

From: Brett Schatz [bschatz@whe-law.com]
Sent: Wednesday, March 13, 2013 10:11 AM
To: Steve Orr
Cc: Tom Humphrey
Subject: Revised Source Code

Steve,

As a follow up to our call last week, when you are able, please send to me the native version of the revised source code.

Thanks,
Brett

Brett A. Schatz, Esq.
Partner
[email_sig_logo]<http://www.whe-law.com/>
Wood Herron & Evans LLP
2700 Carew Tower | 441 Vine Street | Cincinnati, Ohio 45202-2917
P: 513-241-2324 | F: 513-241-6234

(Exh. 1, at ESC017363_028195.) Counsel, of course, needed the code in order to substantiate the factual basis for the non-infringement contentions defendants intended to add to their amended answer/counterclaim, as the Court had ordered several days earlier. (Dkt. No. 31, Order at p. 7.) Mr. Orr complied by delivering (via email) the revised code to counsel that same day. (Exh. 1 at ESC017363_028193-94.) The next day, Mr. Schatz forwarded (via email) the revised code to his secretary/paralegal (Ms. Freeman) and instructed her to prepare it for production as ESC17363.

---

[1] Mr. Greg Ahrens, as the lead attorney directing the defense, is also copied throughout the correspondence relating to defendants/counsel fabricating evidence.

[2] The Court will recall that Mr. Orr was defendants' primary witness during the *Fleming I* trial. Mr. Kuhn, an officer for defendants, also is copied throughout the correspondence relating to defendants/counsel fabricating evidence.

**To:** Anita Freeman[afreeman@whe-law.com]
**From:** Brett Schatz
**Sent:** Thur 3/14/2013 5:27:53 PM
**Importance:** Normal
**Subject:** FW: Revised Source Code
Source C File for GPS Processor.zip
Line Number Relating to Fleming Redesign.xls

Anita,

The "Line Number...." document is simply for the file.

The "Source C file..." has in it a source code file - this will need to be prepared for production (it should be ESC 17363).

Thanks,
Brett

(Exh. 1, at ESC017363_028193.)

Defendants and counsel then got together and decided the revised code did not suit their "legal response", so they instituted their self-described "strategy" (corroborated below) of fabricating the code. Specifically, the very next day (March 15, 2013) after Mr. Schatz gave the "business" version of the code to his paralegal to produce as ESC17363, counsel and defendants had an "extended telephone conference", after which Mr. Orr "[m]odif[ied] the source code based on Brett's [Mr. Schatz's] requests". Mr. Schatz's and Mr. Orr's time records show this sickening and shocking event is exactly what happened.

Orr Timesheet

3/15/2013 Escort/Fleming: Teleconference with Brett Schatz to review GPS architecture and relationship to legal response he is preparing in Fleming lawsuit. Then review the C source code and associated labeling. Modify source code based on Brett's requests.

Schatz Timesheet

03/15/13 BAS Continued review of revised source code; prepare non-infringement arguments based on revisions to source code; extended telephone conference with Mr. Orr regarding revised source code.

(Exh. 2, ESC017363_000531 (Orr timesheet); Exh. 3, ESC17363_001031 (Schatz timesheet).)

This fabrication entailed Mr. Orr making 109 changes to the code at Mr. Schatz's request. We know this for three reasons. First, Mr. Orr sent an email (reproduced below) to Mr. Schatz three business days later on the evening of March 20, 2013, wherein he describes making "109" changes to the code at Mr. Schatz's request.

**To:** Brett Schatz[bschatz@whe-law.com]
**From:** Steve Orr
**Sent:** Wed 3/20/2013 8:57:09 PM
**Importance:** Normal
**Subject:** Update to Escort GPS source file "gpsExpanded.c" with "GRID_METHOD" as compiler switch to enable/disable heading reception and use
gpsExpanded.c

Brett-

In addition to the change you requested, I changed a function name from "AllowMarkerReportViaGeometry" to "AllowMarkerReportViaGridMethod". The resulting line number changes are:

7230
7370
7397

I also changed a variable name from "GeometricQualifier" to the name "GridQualifier." Lines that changed are:

7217
7242
7243
16970

Now variations on the word geometry are all gone with exception to line 6199. -Hope you don't mind that one.

There were 109 lines containing the string "Geometric".

Steve

(Exh. 4, ESC017363_028317.) Second, Mr. Orr's timesheets (reproduced below) show he spent the day of March 20, 2013 modifying the code pursuant to Mr. Schatz's request, which culminated in him sending the fabricated files to Mr. Schatz as source code files "8.241 & 24.241", which defendants will not dispute correlate to code Version 241, also know as the version of ESC17363 that defendants ultimately used for purposes of this case.

| Orr Timesheet | 3/20/2013 | Escort/Fleming: Review issues with Brett Schatz and modify source file to incorporate compiler switches using "Grid Method" based on his requests, sending updated source file 8.241 & 24.241 back to Brett |
|---|---|---|

(Exh. 2, ESC017363_000531.) Third, Mr. Fleming has compared the "business" version of code Mr. Schatz first gave his litigation paralegal to produce as ESC17363 on March 14, 2013 with the "litigation" version of code Mr. Orr fabricated and was actually produced as ESC17363. Mr. Fleming has confirmed that the fabrication effort resulted in changing 116 lines of the code. (Exh. 5, Declaration of Hoyt A. Fleming at ¶¶ 1-7.)

With the "litigation" version now fully fabricated and ready, the very next day (March 21, 2013) Mr. Schatz forwarded it to his paralegal for production as a replacement to the "business" version he sent her one week earlier.

**To:** Anita Freeman[afreeman@whe-law.com]
**From:** Brett Schatz
**Sent:** Thur 3/21/2013 11:37:28 AM
**Importance:** Normal
**Subject:** FW: Update to Escort GPS source file "gpsExpanded.c" with "GRID_METHOD" as compiler switch to enable/disable heading reception and use
gpsExpanded.c

Anita,

Finally. This is the version of source code that will need to be prepared for production (in native format, with an "AEO" designation). This is for the ESC 258LT3 case.

Thanks,
Brett

(Exh. 4, ESC017363_028317.) Mr. Fleming has compared this "litigation" code file to the code file defendants produced as ESC17363 and has confirmed they are the same. (Exh. 5, Declaration of Hoyt A. Fleming at ¶¶ 9-10.) In other words, there is no dispute that the code defendants and counsel fabricated is the same code defendants ultimately produced as ESC17363.

Six days later, defendants filed their amended answer and counterclaims (Dkt. No. 35), which—as the Court expressly found—fraudulently relied on ESC17363 as the code that actually operated their accused products. (Dkt. Nos. 178 and 208, Orders.)[3] It defies explanation as to

[3] Contrary to defendants' prior (false) averments, but consistent with the Court's findings, additional email correspondence between defense counsel Mr. Schatz, Mr. Humphrey, and Mr. Ahrens shows that on the *exact same* day defendants' filed their amended answer/counterclaim (March 27, 2013), counsel expressly acknowledged among one another that none of the "revised" code (*i.e.,* the code prior to the 109 revisions) had ever been commercially implemented in any accused product. (Exh. 7, ESC017363_028374.) (The falsified code obviously had never been commercially implemented since it was fabricated only days earlier.) The fact that defendants (through counsel) expressly averred the *exact* opposite in their amended answer/counterclaim on the *exact same* day is a falsehood so sickening and repugnant that it alone (aside from the falsification of evidence) warrants this case being terminated in Mr. Fleming's favor.

how defendants possibly could have believed it was appropriate to rely on code they had modified only days earlier and, therefore, obviously had never been used in any product. Moreover, Mr. Fleming has confirmed that 97 of the lines of source code defendants specifically and expressly relied on in their amended answer/counterclaim correspond exactly to changes counsel and defendants made to the code. (Exh. 5, Declaration of Hoyt A. Fleming at ¶ 8.) In other words, the fabrications formed the *exact* basis for defendants' non-infringement defense/counterclaim.

Subsequent additional facts further show that the changes defendants and counsel made to the code in March of 2013 were part of a larger litigation-inspired "***strategy***" to fabricate defendants' code before producing it to Mr. Fleming. For example, an April 11, 2013 email between Mr. Orr and another one of defendants' source code designers (Mr. Stevens) shows that the changes Mr. Schatz ("Brett") and Mr. Orr ("Steve") made to fabricate the code were made because the changes were "needed to support one of the arguments they will be making in the next trial".

**From:** Steve Orr [skorr@escortinc.com]
**Sent:** Thursday, April 17, 2014 4:47 PM
**To:** Brett Schatz; Greg Ahrens; jstevens; Tom Humphrey
**Subject:** FW: Update to Escort GPS source file "gpsExpanded.c" with "GRID_METHOD" as compiler switch to enable/disable heading reception and use (EXAMPLE #3)

EXAMPLE #3: This was sent to Jeff on 4/11/13 and discusses Brett's request for naming compiler reference names.

---

From: Steve Orr
Sent: Thursday, April 11, 2013 1:57 PM
To: jstevens
Subject: FW: Update to Escort GPS source file "gpsExpanded.c" with "GRID_METHOD" as compiler switch to enable/disable heading reception and use

Jeff-

We were discussing the Fleming problem yesterday. If the M5 product is to be sold overseas, the changes we discussed are not necessary. There is a compiler switch in the version I sent you that determines whether these changes are to be implemented, and this would be turned on or off depending on whether you intend to create a US or non-US product.

The switch name is discussed in the email to Brett below. Brett has asked that we use the alternate name (using 'GRID') as it appears in that correspondence because the alternate name is needed to support one of the arguments they will be making in the next trial.

Steve

(Exh. 6, ESC017363_001319.)[4] Next, in perhaps the most shocking admission of all, in an email exchange several months later between counsel (Mr. Humphrey and Mr. Schatz) and defendants' various decision-makers[5], Mr. Orr expressly discusses defendants' "***strategy***" of modifying their source code before producing it to Mr. Fleming, and he further references previously implementing that "strategy" in connection with "the prior update", *i.e.,* the changes defendants made to ESC17363 immediately before relying on it in March 2013 for their amended pleadings. Here is what Mr. Orr subsequently told the outside and inside brain-trust for defendants in October 2013:

> Brett - We will have to review the strategy for modifying the C sources (not attached) before producing these to Fleming. In the prior update, you had me substitute in strings like "GRID METHOD" in place of "GeometricAnalysisMethod".

(Exh. 8, ESC017363_029934.) Thus, fabricating defendants' code prior to producing it to Mr. Fleming was not a one-time transgression in connection with ESC17363—it was an integral part of defendants' "***strategy***" for litigating this case.

## ARGUMENT

The issue here—as the Court previously identified it—is whether defendants created ESC17363 "in the normal course of product development" or whether it was "fabricated".

> While Escort eventually conceded that ESC17363 was never a current operating code for any product, Escort claimed that it created that source code in the normal course of product development. But that claim is naturally called into question by the fraudulent way that Escort portrayed ESC17363 as a complete defense.

(Dkt. No. 208, Order at pp. 4-5.)

---

[4] Once again note Mr. Humphrey's and Mr. Ahrens' involvement.

[5] Defendants' representatives included in the email are: Mr. Coomer (a company officer); Mr. Kuhn (a company officer); Mr. Stevens (a company source code designer); Mr. Martin (a company source code designer), and Mr. Orr. (Exh. 8, ESC017363_029934.) Thus, defendants' and counsel's "strategy" of fabricating their evidence was known and acknowledged at the highest possible levels within defendants' organizations.

> While discovery may reveal fabrication – and support a renewed motion by Fleming at that time – the Court cannot now find, on the basis of this record, that Escort has fabricated the source code contained in ESC17363.

(Dkt. No. 178, Order at pp. 8-11.) The admissions contained in defendants' documents irrefutably show ESC17363 was not created in the normal course of product development but was fabricated as part of defendants' admitted "strategy" of modifying its code just before producing it to Mr. Fleming.

The facts could not be more straightforward, devastating, or disturbing. As shown above, defendants' creation and production of ESC17363 had nothing to do its "normal course of product development". The facts show that in preparation for drafting defendants' amended defenses/counterclaims in response to the Court's March 6, 2013 order, defense counsel asked for and received (on March 13, 2013) certain of defendants' product code. (Exh. 1, at ESC017363_028195 ("please send to me the native version of the revised source code".) <u>This is the code that defendants arguably created in the normal course of product development. Indeed, counsel immediately sent that code to his paralegal for production as ESC17363. (Exh. 1, at ESC017363_028193.) But, defendants never produced or relied on that code.</u>

Instead, defendants and counsel engaged (the next day) in what Mr. Schatz described as an "extended telephone conference with Mr. Orr regarding revised source code" (Exh. 3, ESC17363_001031) and what Mr. Orr simultaneously described as a "telephone conference with Brett Schatz to review GPS architecture and relationship to legal response he is preparing in Fleming lawsuit" (Exh. 2, ESC17363_000531). Mr. Orr further described the actions he took in response to his discussion with Mr. Schatz as "[m]odify source code based on Brett's requests" and "[r]eview issues with Brett Schatz and modify source file to incorporate compiler switches using 'Grid Method' based on his requests…". (Exh. 2, ESC17363_000531.) In a stunning

reference to and acknowledgment of their sinister activities, Mr. Orr later referred to their complicit actions as constituting part of defendants' "strategy for modifying the [source code] before producing [it] to Fleming". Here is exactly what Mr. Orr said:

> Brett - We will have to review the strategy for modifying the C sources (not attached) before producing these to Fleming. In the prior update, you had me substitute in strings like "GRID METHOD" in place of "GeometricAnalysisMethod".

(Exh. 8, ESC017363_029934.)

Note that—as the Court already correctly held—Mr. Orr's reference to "substitut[ing] in strings like 'GRID METHOD'" correlate *exactly* to the fabrications Mr. Orr made to ESC17363 and to the portions of ESC17363 defendants expressly relied on for non-infringement purposes a few days later in their amended answer/counterclaim.

> Fleming had identified the source code that ran the Pro 500 from, among other material, (1) Escort's First Amended Answer and Counterclaim and (2) Escort's Non- Infringement Contentions. Escort's First Amended Answer and Counterclaim, filed on March 27, 2013, cites specific lines of source code that incorporate a technique known as 'grid matching' that allegedly differentiated Escort's products from Fleming's patented inventions. *See First Amended Answer and Counterclaim (Dkt. No. 35)* at pp. 15-18.")

(Dkt. No. 178, Order at p. 3; *see also,* Exh. 5, Declaration of Hoyt A. Fleming at ¶ 8 (confirming that defendants' non-infringement contentions correlate exactly to the fabricated changes).)

With the 109 changes made and their "strategy" of creating "litigation code" complete, Mr. Schatz then sent the fabricated version of ESC17363 to his paralegal as a substitute for the "business" code he previously sent her (Exh. 4) a few days earlier, and he signed defendants' amended answer/counterclaim pursuant to Fed. R. Civ. P. 11 (Dkt. No. 35), thereby culminating in one of the most sinister affronts to the judicial system imaginable.

**ADDITIONAL CASE PRECEDENT**

The Court is aware that it has the authority to terminate this case in light of Escort's repeated fraud and fabrication of evidence. (*See* Dkt. No. 144, Plaintiff's Motion For

Terminating Sanctions at pp. 15-17; Dkt. No. 151, Plaintiff's Reply In Support Of His Motion For Terminating Sanctions at p. 10.) Mr. Fleming will not belabor the issue, other than to point out a Ninth Circuit case he recently came across that the Court might find interesting.

In *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, the Ninth Circuit affirmed a district court's decision to terminate a case due to a party's persistent willfulness, bad faith, and fault. 482 F.3d 1091 (9th Cir. 2007). As the Ninth Circuit held:

> 'There is no point to a lawsuit, if it merely applies law to lies.' The most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.' [Defendant's] 'pattern of deception and discovery abuse made it impossible for the district court to conduct another trial with any reasonable assurance that the truth would be available….'
>
> 'Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate.' This was just such a case. The district court did its duty, and fairly exercised its discretion in order to secure a just resolution of the dispute.

*Id*. at 1097 (quoting *Valley Eng'rs v. Electric Eng'g Co.,* 158 F.3d 1051 (9th Cir. 1988) and *Anheuser-Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337 (9th Cir. 1995).

In the present case, defendants' admitted "strategy" included modifying source code just before producing it to Mr. Fleming. These modifications included changing the names of compiler directives, variables, functions, and even removing comments important to understanding the operation of the code. (Exh. 5, Declaration of Hoyt A. Fleming at ¶ 8.) The purpose and sinister nature of these changes is admitted: "to support arguments [defendants'] will be making in the next trial." (Exh. 6, ESC017363_001319.) Thus, defendants did not merely get caught committing a single instance of fraud (as the Court found) or fabricating ESC17363 (as this motion shows), they purposefully implemented a self-described "strategy" of fabricating evidence in an effort to change the outcome of this case. No court should tolerate or

keep its doors open to a party and counsel willing to implement such a "strategy".

**CONCLUSION**

There now can be no dispute that defendants' self-described "strategy" of fabricating evidence constitutes one of the most egregious attacks on the integrity of the adversarial process imaginable. Nor can it be disputed that this "strategy" of fabricating evidence has irrevocably infected the entirety of this case since its inception and ruined 3+ years of Mr. Fleming's litigation efforts. Thus, unless this Court grants this motion and rules that defendants willfully infringe Mr. Fleming's patents (thereby making defendants' source code irrelevant to this case) the Court will only continue applying "law to lies".

Mr. Fleming further submits that these circumstances demand a remedy *beyond* a mere finding that defendants infringe and that their infringement is willful, *i.e.,* the two allegations defendants sought to avoid based upon their falsehoods and fabricated evidence. The precedent set by courts across the country demonstrates courts do not tolerate parties who trample the ideals upon which they were formed or the public's knowledge that a courthouse is a place where those ideals are inviolate. *See e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32-34, 44-50 (1991); *Leon v. IDX Systems Corp.,* 464 F.3d 951, 958-61 (9th Cir. 2006); *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007); *Pope v. Fed. Express Corp.,* 974 F.2d 982, 984 (8th Cir. 1992); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1118 (1st Cir. 1989); *Jimenez v. Madison Area Tech. Coll.,* 321 F.3d 652, 657 (7th Cir. 2003). Simply put, parties that seek to undermine the judicial system in the systematic, sickening pattern of deceit, deception, and corruption presented here do not warrant access to its halls of justice.

In accord with these cases and the irrefutable facts, Mr. Fleming requests that defendants be held to willfully infringe his patents. In addition, Mr. Fleming requests that this case be

terminated in his favor in all respects, that he be awarded all damages and remedies sought, that defendants and counsel be jointly and severally required to pay Mr. Fleming all of his fees and costs, and that all sums awarded be secured by a bond pending any appeal of the Court's order.

June 30, 2015

Respectfully Submitted

/s/

Michael S. Dowler
Park, Vaughan, Fleming & Dowler, LLP
5847 San Felipe, Suite 1700
Houston, TX 77057
(713) 821-1540
(713) 821-1401 (facsimile)

Attorneys for Plaintiff Hoyt A. Fleming

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of June 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing. To the extent any of the foregoing was filed under seal, I have contacted counsel for the party claiming that certain information contained herein should be sealed and sought permission to serve the other following parties or counsel. To the extent permission was granted, I hereby certify that such other parties or counsel were served by email as follows:

| | |
|---|---|
| Gregory F. Ahrens<br>Wood, Herron & Evans, L.L.P.<br>441 Vine Street, 2700 Carew Tower<br>Cincinnati, Ohio 45202-2917 | Bryce J. Yoder<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202 |
| Brett A. Schatz<br>Wood, Herron & Evans, L.L.P.<br>441 Vine Street, 2700 Carew Tower<br>Cincinnati, Ohio 45202-2917 | Rachael A Rowe<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202 |
| Bradlee R. Frazer<br>Hawley Troxell Ennis & Hawley LLP<br>877 Main Street, Suite 1000<br>Boise, ID 83702 | Keely E. Duke<br>Duke Scanlan Hall PLLC<br>1087 W. River Street, Suite 300<br>Boise, ID 83702 |
| Steven F. Schossberger<br>Hawley Troxell Ennis & Hawley LLP<br>877 Main Street, Suite 1000<br>Boise, ID 83702 | Robert B. White<br>Givens Pursley LLP<br>601 West Bannock Street<br>Boise, ID 83702 |
| Brian P. Muething<br>Keating Muething & Klekamp PLL<br>One East 4th Street, Suite 1400<br>Cincinnati, OH 45202 | Terry C. Copple<br>Davidson, Copple, Copple & Copple<br>199 N Capitol Blvd., Ste. 600<br>Boise, ID 83702 |

/s/
Michael S. Dowler