IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HOYT A. FLEMING, | |
| Plaintiff, | Case No.  1:12-CV-066-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| ESCORT, INC., et al., | |
| Defendants. | |

## INTRODUCTION

The Court has before it two motions filed by Fleming claiming that Escort has spoliated evidence relevant to this litigation.  The motions are fully briefed and at issue. For the reasons expressed below, the Court will grant both motions in part.

## ANALYSIS

### Fleming's Motion for Sanctions for Spoliation of Radar Detectors

In the motion now before the Court, Fleming claims that Escort failed to retain certain radar detectors operated by specific source code revisions that were challenged by Fleming as infringing his patents.  Fleming alleges that Escort has committed spoliation and that the Court should direct a verdict for Fleming on his infringement claims for each of the detectors that is missing.  To resolve this motion, it is necessary to review the background of this litigation.

In an earlier-filed action (*Fleming I*), Fleming claimed that defendant Escort manufactured and sold radar detectors that infringed Fleming's '038 and '653 patents.  A

jury found that Escort had infringed a number of claims of both patents, and awarded Fleming $750,000. *See Special Verdict Form (Dkt. No. 304) in Fleming v. Escort CV-09-105-BLW*. Specifically the jury found that certain claims of Fleming's patents were infringed by the following Escort products: GX65, Passport 9500i, Passport 9500ix, and Passport IQ. After finding that Escort's then-attorneys (who have since withdrawn) were guilty of vexatious conduct, and finding that Fleming was entitled to pre- and post-judgment interest, the Court increased the award to $1,454,404.56 and entered a final Judgment. *See Amended Judgment (Dkt. No. 417)*. On appeal, the Federal Circuit affirmed the jury verdict. *See Fleming v Escort,* 774 F.3d 1371 (Fed.Cir. 2014).

In February of 2012, Fleming filed this action (*Fleming II*) against Escort and twenty of its distributors claiming that the radar detectors they sold infringed Fleming's '038 and '653 patents, along with a third patent that was not litigated in the earlier case, the '905 patent. The accused products in this case are the GX65, the Pro 500, the Passport 9500i, the Passport iQ, the Passport 9500ix, the Passport Max, and the Passport Max 2.

On January 9, 2015, the Court awarded $341,649 in sanctions to Fleming after finding that Escort and its prior attorneys (who have since withdrawn) falsely claimed that certain source code – labeled ESC17363 – containing non-infringing features was the source code used in Escort's allegedly infringing products. *See Memorandum Decision & Judgment (Dkt. Nos. 208 & 209)*. Escort's false claim was an attempt to mislead Fleming, requiring him to waste substantial time and effort to reveal the fraud.

**Memorandum Decision & Order – Page 2**

With the award of $341,649, the Court compensated Fleming for the fees and costs he incurred.

On September 4, 2015, the Court awarded an additional $51,461 in sanctions to Fleming after finding that Escort and its prior attorneys once again produced source code in discovery in a vexatious manner intended to cause Fleming to waste time and effort. *See Memorandum Decision and Order (Dkt. No. 303).* Moreover, the Court held that Escort spoliated evidence of source code labeled ESC 18692, although the Court held that Fleming was not prejudiced because the relevant hex code had been maintained and would allow Fleming to test the functionality of the radar detectors. *Id.*

Fleming now argues that Escort has spoliated further evidence, specifically the physical radar detectors that Fleming has alleged infringe his patents. Fleming alleges that while Escort retained some detectors with hardware modifications but failed to retain those with software modifications.

Escort produced and sold various versions of the seven allegedly infringing products in this case. When a version contained what Escort felt was a "significant" hardware modification, Escort would save a physical sample of that version of radar detector. *See Martin Declaration (Dkt. No. 234-2)* at ¶3-4. Escort has retained a physical sample of 13 of these products. *Id.* at ¶4.

While Escort retained those detectors with "significant" hardware modifications, it did not retain a detector with each source code revision. The following table shows the source code revisions for which Escort has no retained product:

| Product | Source Code Revisions |
|---------|----------------------|
| 9500ix Red | A, B, C, D, E, F, G, H, I, K, and L |
| 9500ix | N, O, P, Q, R, S, T, U, V, W, X, Y, Z, and AA |
| GX65 | G, I, J, K, and L, and M |
| GX65 No Ku | B |
| Pro500 | A and C |
| Passport iQ | B, C, E, and F |
| MAX | B, C, D, F, G, H, and I |
| MAX 2 | A, B, and C |

Fleming argues that Escort's failure to retain a separate radar detector with each source code revision makes it impossible for him to demonstrate how the radar detector works, and consequently makes it impossible for him to prove infringement. Escort responds that it had no duty to retain copies of the detectors and that, in any event, it can re-create the missing detectors.[1]

Fleming has the burden of establishing spoliation by demonstrating that Escort destroyed documents or other items and had "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Ryan v. Editions Ltd. West, Inc*., 786 F.3d 754, 766 (9th Cir. 2015). Spoliation of evidence "raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung*, 888 F.Supp.2d 976, 998 (N.D.Cal.2012). The finding of spoliation shifts the burden of proof "to the guilty party to show that no prejudice resulted from the spoliation" because that

---

[1] Fleming's table originally included international products that Escort argued were never sold in the United States and thus are not at issue in this case. Fleming did not rebut that argument, and hence the Court has removed those revisions from the table. Escort has also argued that not every source code revision was actually marketed, but Escort has not identified any specific revision in this table that is improperly listed.

**Memorandum Decision & Order – Page 4**

party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *Id.* The Court must determine if Escort committed spoliation and, if so, whether prejudice to Fleming results.

If Escort disposed of the radar detectors before it had notice that they were relevant to this litigation, it would have a defense to Fleming's spoliation charge. *See Performance Chevrolet Inc. v. Market Scan Information Systems, Inc.,* 2008 WEL 4726432 (9th Cir. 2008 (unpublished disposition). But Escort makes no claim that it is entitled to this defense.

Escort does raise various arguments that it had no obligation to retain detectors with these source code revisions, but the arguments are specious: Escort itself relies on the revisions in its non-infringement contentions. *See, e.g., Exhibit 15 (Dkt. No. 241-3).* There, Escort identifies certain lines of source code contained in these revisions to argue that it did not infringe Fleming's patents. *See, e.g., Exhibit 15 (Dkt. No. 241-3).* In essence, Escort now claims that although the source code revisions are important enough to protect it from infringement, Fleming is not entitled to test Escort's claims by evaluating the radar detectors that contained those revisions. To state that argument is to refute it.

While Escort downplays the importance of having an actual physical radar detector running the hex code, Escort itself used the operation of a radar detector to argue that it was not trying to deceive Fleming. In a recently issued decision, the Court adopted Escort's argument that the actual operation of a radar detector so clearly depicted a directional arrow that Escort could not have been trying to deceive Fleming into

believing that source code provided by Escort in discovery – that did not display the arrow – was used to operate that product.  *See Memorandum Decision (Dkt. No. 303)* at p. 6.  Thus, Escort is seeking to deny Fleming the very benefits it received from an evaluation of a radar detector running the code.

Not only Escort but also the Court relied upon the appearance and operation of the physical detectors.  In finding questions of fact over whether the GX65 was the same product as the Pro 500, the Court relied on the physical differences between the products.  *See Memorandum Decision (Dkt. No. 138)* at pp. 3-4.  In a separate decision, the Court found important physical differences between the 9500ix in *Fleming I* and the "new" version of the 9500ix in *Fleming II.  See Memorandum Decision (Dkt. No. 178)* at pp. 23-24.  Thus, the operations of the physical detectors has been important to both Escort and the Court, and Escort's attempt to minimize their importance must be rejected.[2]

For all of these reasons, the Court finds that Escort has committed spoliation by failing to retain a physical version of the radar detector using each source code revision noted in the table above.  The burden now shifts to Escort to show a lack of prejudice.

Escort argues that Fleming is not prejudiced because Escort "has retained all the separate [hex] code versions and can load any particular software version into a physical

---

[2] Escort argues that it would be burdensome and costly to preserve a sample of each detector with each software revision.  Indeed, a similar argument was the driving force behind the amendment to Rule 37(e), taking effect later this year, recognizing the high cost of preserving electronically stored information and requiring bad faith before a sanction like an adverse jury instruction could be imposed.  But assuming that preserving the detectors would impose a heavy burden, Escort should have contacted Fleming to work out the logistics rather than send Fleming on the fools' errand of trying to purchase detectors from the market place, an issue that will be discussed further below.

**Memorandum Decision & Order – Page 6**

sample and produce it for whatever purpose [Fleming] requires in this case." *See Defense Brief (Dkt. No. 234)* at p. 9.  This would appear at first glance to alleviate any prejudice. After all, if Escort can recreate that which was spoliated, there should be no prejudice. *See Oleksy v. General Electric Co.,* 2014 WL 3820352 (N.D.Ill. Aug. 1, 2014) (ordering defendant to recreate source code that it failed to preserve).

But there is a flaw in Escort's analysis.  Escort's re-creation of the missing detectors requires the Court and Fleming to trust Escort – to trust that the re-created detectors operate as the originals did, and that the hex code is the same as that loaded into the originals.

Yet Escort has done nothing to earn that trust.  Consequently, if the Court allows Escort to re-create the detectors, Fleming is necessarily compelled to engage in a substantial effort to verify the authenticity of the re-created radar detectors.  This will be a difficult task because some of the boards and components used in the originals are no longer available.  That effort will likely include numerous depositions and the hiring of an expert to conduct a verification analysis, among other things.

Thus, Escort's argument that any prejudice to Fleming is alleviated because it can re-create the missing detectors is specious – Fleming will be prejudiced by being forced to engage in a substantial and expensive verification process.  Even ordering Escort to pay those expenses will not relieve Fleming from the prejudice of having to undertake the immense time and effort involved in the verification process.  Because the prejudice is profound even if Escort re-creates the missing detectors, the Court finds that Escort has not carried its burden of showing a lack of prejudice to Fleming.

**Memorandum Decision & Order – Page 7**

Having held that Fleming has carried its burden of proving spoliation, and that Escort has failed to carry its burden of a lack of prejudice, the Court now turns to the remedy issue. Fleming seeks a finding that for each revision for each product in the table above, Escort has infringed Fleming's patents.

Upon a finding of spoliation, the Court has "discretion to impose sanctions pursuant to its inherent power." *Ryan,* 786 F.3d at 766. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

If the Court granted Fleming's request it would be granting a directed verdict that 48 versions of 8 different product models infringed Fleming's patents. That is a severe remedy in this case where Escort has maintained the hex codes and has committed to re-creating all the missing radar detectors. The Court must consider whether there is a "lesser sanction that will avoid substantial unfairness to the opposing party." *Apple,* 888 F.Supp2d at 992. Given the direction to use its inherent authority with "restraint and discretion," the Court finds that sanctions other than a directed verdict would be more appropriate in this case.

One of those sanctions involves instructing the jury about the spoliation and the adverse inference that arises from it. This Court has "broad discretionary power" to admit evidence of the spoliation and "permit a jury to draw an adverse inference from the spoliation against the party . . . responsible for that behavior." *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993). This jury instruction is not predicated on a finding that

the party spoliating the evidence acted in bad faith – it is enough that the party had notice that the material was of "potential relevance to the litigation." *Id.*

The analysis behind the adverse inference jury instruction was explained in *Akiona v. U.S.*, 938 F.2d 158, 161 (9th Cir.1991).  There, the Ninth Circuit quoted with approval then-Judge Breyer's opinion in *Nation-Wide Check Corp. v. Forest Hills Distributors*, 692 F.2d 214, 218 (1st Cir.1982), identifying two reasons why the trier of fact should be permitted to draw an adverse inference from the destruction of a relevant piece of evidence.  The first reason is evidentiary: When a party destroys evidence, knowing that it is relevant to pending litigation, we presume that that party is "more likely to have been threatened" by that evidence than is a party who preserves that evidence.  The second reason is "prophylactic and punitive": Permitting the factfinder to draw an adverse inference from the destruction of evidence deters the destruction of evidence and provides an incentive to preserve carefully relevant evidence.  *Akiona*, 938 F.2d at 161 (citing *Nation-Wide*, 692 F.2d at 218).

That analysis applies with equal force in this case. The Court will accordingly order that the jury shall be instructed that Escort spoliated evidence and that it may draw an adverse inference against Escort from that conduct.

As an additional sanction under its inherent powers, the Court may award sanctions in the form of attorneys' fees against a party or counsel who acts "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir.2006).  This includes the authority to impose monetary sanctions in the

amount of extra discovery costs caused by spoliation, including the cost of the sanctions motion. *Id.*

In determining whether Escort acted in bad faith in disposing of the radar detectors, the Court may consider its history in this case. *In re Walsh,* 711 F.3d 1120, 1129 n. 45 (9th Cir. 2013). That history, as discussed in detail above, demonstrates that Escort has pursued a strategy of wearing Fleming down through vexatious conduct in discovery.

Confronted with a consistent pattern of malfeasance, the Ninth Circuit has rejected claims of mistake or a lack of intent to obstruct. *See Lahiri v. Universal Music and Video Distribution Corp.,* 606 F.3d 1216, 1221 (9th Cir. 2010) (relying on the "history of this litigation" to reject counsel's claim of "mistake" and affirm finding that he acted in bad faith). Escort's history similarly disposes of its excuses in this case. Here, Escort failed to maintain the radar detectors despite knowing of their relevance to this litigation – Escort knew of their relevance because it relied on the separate revisions in the source code operating those detectors to defend itself from Fleming's charges in this case. Despite knowing of their relevance, Escort disposed of them and then responded to Fleming's request to produce all detectors by directing Fleming to "purchase such products on the open market." *See Exhibit 7 (Dkt. No. 221-7).*

When that response is placed in context, Escort essentially told Fleming to "go chase your tail." Escort made it impossible for Fleming to buy each source code revision of its products on the open market, because Escort did not even reveal the revisions until 7 months *after* it told Fleming to go to market. *See Exhibit 7 (Dkt. No. 221-7) & Exhibit*

**Memorandum Decision & Order – Page 10**

*8 (Dkt. No. 221-8).*  Moreover, even after Escort finally revealed the various revisions, Fleming had to buy the product *and deconstruct it* to determine which revision it contained.  And even then, many of the detectors sold in the past were modified so they no longer were operated by the original source code, as Escort admits.  *See E-mail (Dkt. No. 221-5).*  Escort knew all of this when it directed Fleming to buy the detectors on the market.

Escort's entire course of conduct, viewed in light of its history in this case, convinces the Court that Escort acted in bad faith in disposing of the radar detectors. Hence, the Court will award monetary sanctions in addition to the jury instruction sanction discussed above.  The full list of sanctions is set forth below:

1. The jury shall be instructed that Escort spoliated evidence and that it may draw an adverse inference against Escort from that conduct;
2. Escort shall immediately manufacture the missing radar detectors with the source code revisions contained in the table above;
3. Escort shall pay the attorney fees and costs incurred by Fleming in bringing this motion and all accompanying exhibits and filings;
4. Escort shall pay the attorney fees and costs incurred by Fleming to verify the authenticity of the re-created radar detectors.  This will include all costs and fees incurred in taking depositions and conducting other discovery in the verification process.
5. Escort shall pay any expert fees incurred by Fleming to verify the authenticity of Escort's re-creation of the missing radar detectors;
6. The Court may consider further sanctions if the verification process reveals information that so requires.

**<u>Fleming's Motion for Sanctions for Spoliation of Source Code Version 63</u>**

In this motion, Fleming argues that Escort spoliated source code labeled Version 63, and seeks a finding of infringement concerning the product that source code operated, the 9500ix.  The source code Version 63, when transformed into hex code, operates the

**Memorandum Decision & Order – Page 11**

9500ix radar detector.  The Court has previously explained the difference between source code and hex code and will not repeat that discussion here.  *See Memorandum Decision (Dkt. No. 303).*

There is no doubt that Version 63 has been, from the very date of its creation, relevant to this litigation.  Fleming filed this lawsuit in February of 2012 and named the 9500ix as one of the infringing products.  Escort's engineer Jeff Stevens created Version 63 to operate the 9500ix in July of 2012, about 5 months after this lawsuit was filed.  *See Stevens Declaration (Dkt. No. 239-3)* at ¶¶ 19.  Because Escort was on notice that the 9500ix was accused of infringing Fleming's patents, and because software is the obvious key to an infringement action against products operated by software, Escort had a clear duty to retain Version 63.[3]  *Ryan,* 786 F.3d at 766.

Version 63, as originally compiled by Stevens, no longer exists.  Stevens explains that he failed to keep a copy of Version 63, but is able to re-create it because he recalls what changes he made to Version 62 to create Version 63.  Specifically, he recalls having start-up problems with Version 62 because two lines of source code were transposed.  After correcting these two lines, Stevens defined the new version as Version 63.  In his own words, Stevens explains that

> I was asked to provide source code for version 63 for production in this litigation. In responding that request, I realized that I had not kept a copy of version 63 as it had been compiled on July 13, 2012, but instead, had changed

---

[3] Early in this litigation, the Court dismissed products fully litigated in *Fleming I* – including the 9500ix – but expressly limited its holding to "those infringing devices that have been litigated" in *Fleming I.  See Memorandum Decision (Dkt. No. 61)* at p. 8.  It is undisputed that the 9500ix detector operated by the source code Version 63 was not litigated in *Fleming I.*  Thus, the Court's opinion has no impact on Escort's duty under Local Rule 3.4 to produce Version 63, and Escort does not argue to the contrary.

**Memorandum Decision & Order – Page 12**

that version and saved it as version 64 due to the subsequent revisions to support foreign models. However, I did have a copy of version 62, and I was able to recall the error in the startup process which I had corrected prior to compiling version 63. Also, the lines of code that corrected this error were included in the saved version 64. Accordingly, I provided version 62 for production in this litigation, along with a text file with the name MODIFICATIONS.txt explaining how to correct the error in the startup process that was corrected in version 63, which was the only change needed so that the source code would produce the same hex file as I originally compiled for version 63 on July 13, 2012.

*See Stevens Declaration (Dkt. No. 239-3)* at ¶ 19.  Because there is no dispute over the relevance of Version 63 to this litigation, and no dispute that the original version no longer exists, the Court finds that Escort has committed spoliation of Version 63.

Spoliation of evidence "raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung*, 888 F.Supp.2d 976, 998 (N.D.Cal.2012). The finding of spoliation shifts the burden of proof "to the guilty party to show that no prejudice resulted from the spoliation" because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *Id.* Escort must carry the burden of showing that Fleming is not prejudiced by the loss of Version 63.

At this point, the facts are similar to those resolved by the Court regarding source code Version 2.46 contained in ESC 18692. *See Memorandum Decision (Dkt. No. 303)* at pp. 8-10.  There, although Escort spoliated the original source code Version 2.46, it had retained the original hex code Version 2.46.  Escort, after a long delay, told Fleming how to re-create the source code Version 2.46.  When this re-created source code was

compiled into hex code and compared with the original retained hex code by an independent expert Timothy Ramey, the two hex codes were identical.  This identity between the original hex code and the re-created hex code convinced the Court that the functionality of the alleged infringing devices was not affected by the spoliation of the original source code.  Because functionality is the key to infringement, the Court found that Escort had carried its burden of showing no prejudice.  *Id.*

The present case presents similar facts.  Escort has retained the original hex code for Version 63, and provided it to Ramey.  Escort also provided source code Version 62 to Ramey.  Ramey changed the two lines of source code on Version 62 to re-create Version 63, and then compiled it into hex code.  He then compared the two hex code versions and found them identical – that is, he found that the hex code from the original retained Version 63 was identical to the hex code compiled from the re-created source code Version 63.  *See Ramey Declaration (Dkt. No. 239-4).*  Once again, it appears that the functionality of the challenged products is not affected by the spoliation of the original source code.  Thus, the Court finds that Escort has carried its burden of showing a lack of prejudice.

This does not, however, exonerate Escort entirely.  Although the Court refuses to grant Fleming's request for a finding of infringement, the Court does find that Escort has once again committed vexatious conduct in discovery warranting an award of fees and costs.

There can be no dispute that Escort had a duty under Local Rule 3.4 to produce source code Version 63 on the date it was created in July of 2012.  But despite having

this duty, Escort was silent.  It was not until January of 2014, that Escort produced its

Product Compatibility Logs showing that Version 63 operated the 9500ix.  Having

learned for the first time that Version 63 operated the 9500ix, Fleming requested that

source code.  On June 3, 2014, Escort's then-counsel Brett Schatz revealed for the first

time that "[w]e understand that version 63 . . . for the 9500ix product may not have been

saved due to an oversight on the designer's part."  *See Exhibit B to Declaration of Schatz*

*(Dkt. No. 239-8)*.  But Schatz's letter contained nothing further – specifically, it contained

no explanation as to how Escort intended to correct its spoliation.  Fleming had to wait

another additional 6 months – until November 11, 2014 – to receive Escort's explanation

that Fleming could alter two source code lines on Version 62 to create Version 63.

In other words, despite having an obligation in July of 2012 to produce Version

63, Escort provided no explanation whatsoever until May of 2014, and failed to provide a

full explanation until November 2014, a delay of about 28 months.  There is no excuse

for this delay.  It is so egregious that it constitutes bad faith and vexatious conduct,

warranting a sanction of attorney fees and costs.  The Court will therefore grant

Fleming's motion to the extent it seeks its fees and costs for preparing this motion and all

accompanying filings.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for sanctions

due to spoliation of evidence (docket no. 221) is GRANTED IN PART AND DENIED

IN PART.  It is granted to the extent it seeks a finding that Escort spoliated the radar

detector products containing the source code revisions set forth in the table above, and further granted to the extent it seeks the following sanctions, which shall be imposed on Escort:

1. The jury shall be instructed that Escort spoliated evidence and that it may draw an adverse inference against Escort from that conduct;
2. Escort shall immediately manufacture the missing radar detectors with the source code revisions contained in the table above;
3. Escort shall pay the attorney fees and costs incurred by Fleming in bringing this motion and all accompanying exhibits and filings;
4. Escort shall pay the attorney fees and costs incurred by Fleming to verify the authenticity of the re-created radar detectors.  This will include all costs and fees incurred in taking depositions and conducting other discovery in the verification process.
5. Escort shall pay any expert fees incurred by Fleming to verify the authenticity of Escort's re-creation of the missing radar detectors;
6. The Court may consider further sanctions if the verification process reveals information that so requires.

It is denied in all other respects.

IT IS FURTHER ORDERED, that the second motion for sanctions due to spoliation of evidence (docket no. 223) is GRANTED IN PART AND DENIED IN PART.  It is granted to the extent it seeks a finding that Escort spoliated source code Version 63 and has committed bad faith and vexatious conduct warranting an award of fees and costs to Fleming for preparing this motion and all associated documents.  It is denied in all further respects.

IT IS FURTHER ORDERED, that Fleming shall submit to the Court a petition for its fees and costs awarded herein.  For those fees and costs awarded but not yet incurred, such as those to be incurred during the verification process, Fleming shall submit a petition for their award at the appropriate time after they have been incurred.

**Memorandum Decision & Order – Page 16**

DATED: September 22, 2015



_____
B. Lynn Winmill
Chief Judge
United States District Court